ACCEPTED
03-15-00591-CV
7769797
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/10/2015 3:15:09 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00591-CV**

| | |
|---|---|
| In the Third Court of Appeals<br>Austin, Texas | FILED IN<br>3rd COURT OF APPEALS<br>AUSTIN, TEXAS<br>11/10/2015 3:15:09 PM<br>JEFFREY D. KYLE<br>Clerk |

THE CITY OF AUSTIN FIREFIGHTERS AND POLICE OFFICERS'
CIVIL SERVICE COMMISSION, DIRECTOR MARK WASHINGTON, CHIEF
ARTURO ACEVEDO AND THE CITY OF AUSTIN, TEXAS,
Defendants – Appellants

v.

WILLIAM M. STEWART, Plaintiff - Appellee

Appeal from Cause No. D-1-GN-13-003351
98th Judicial District Court of Travis County, Texas

## BRIEF OF APPELLANT

Anne L. Morgan, Interim City Attorney
Meghan L. Riley, Chief, Litigation
Chris Edwards, Assistant City Attorney
State Bar No. 00789276
City of Austin-Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone: (512) 974-2419
Facsimile: (512) 974-1311
chris.edwards@austintexas.gov

**COUNSEL FOR DEFENDANT - APPELLANT**

# IDENTITY OF PARTIES AND COUNSEL

**Defendants - Appellants**
The City of Austin Firefighters and Police Officers' Civil Service Commission,
Director Mark Washington, Chief Arturo Acevedo & the City of Austin, Texas

**Plaintiff - Appellee**
William M. Stewart

**Counsel for Defendant – Appellant**
Chris Edwards
Assistant City Attorney
State Bar No. 00789276
City of Austin - Law Department
P.O. Box 1546
Austin, Texas  78767-1546
Telephone:  (512) 974-2419
Facsimile:   (512) 974-1311
chris.edwards@austintexas.gov

**Counsel for Plaintiff - Appellee**
Grant Goodwin
State Bar No. 00787567
400 W. 14th Street, Suite 100
Austin, Texas 78701
Telephone:  (512) 495-9111
Facsimile:   (512) 495-9301
grant.goodwin@cleat.org

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**......................................................... ii

**TABLE OF CONTENTS** ......................................................................... iii, iv

**INDEX OF AUTHORITIES** ..................................................................... v, vi

**RECORD REFERENCES** ............................................................................1

**STATEMENT OF THE CASE**.....................................................................1

**ORAL ARGUMENT IS NOT REQUESTED** ...............................................2

**ISSUES PRESENTED**................................................................................2

I.  The district court erred when it denied the plea to the jurisdiction because the court lacked subject matter jurisdiction based on lack of standing for failure to exhaust administrative remedies. ...................................2

II.  The district court erred when it denied the plea to the jurisdiction because governmental immunity is not waived under the Civil Service Act or Texas Uniform Declaratory Judgments Act.........................................................3

III.  The district court erred when it did not dismiss Chief of Police Art Acevedo against whom all claims were abandoned. ...................................................3

**STATEMENT OF FACTS**...........................................................................3

A.  The facts are not in dispute..........................................................................3

B.  Officer Discipline is pursuant to the Meet and Confer Agreement and Chapter 143 ............................................................................................6

**SUMMARY OF THE ARGUMENT** ..........................................................8

**ARGUMENT** ...............................................................................................8

A.  The Rules of Statutory Construction do not support Stewart's interpretation of Chapter 143 or the M&C Agreement.......................................................9

iii

B.   Stewart lacked standing and the district court lacked jurisdiction because administrative remedies were not exhausted. ..................................................10

      1.   *The district court lacked jurisdiction over claims for reinstatement, back pay and lost benefits.* ................................11

      2.   *The district court lacked jurisdiction to void the Agreed Temporary Suspension.* ...........................................................13

C.   The district court lacked jurisdiction over claims for which governmental immunity is not waived. ...........................................................................17

      1.   *Immunity bars claims against the City for back pay and lost benefits.* .....................................................................................18

      2.   *Immunity bars claims against Director Washington for acts which are not ministerial.* ......................................................19

D.   The district court lacked jurisdiction because all claims against the Chief of Police were abandoned ...............................................................................22

**CONCLUSION AND PRAYER** ...........................................................................23

**CERTIFICATE OF SERVICE** ........................................................................25

**CERTIFICATE OF COMPLIANCE** ...............................................................26

**APPENDIX** ........................................................................................................27

# INDEX OF AUTHORITIES

**Cases**

*Beacon Nat'l Ins. v. Montemayor*,
86 S.W.3d 260 (Tex.App.—Austin 2002, no pet.) ...............................................17

*Brown v. Nero*,
2015 WL 5666172 (Tex.App.—Austin 2015) ................................................ 12, 18

*Cf. Summers v. Keebler Co.*,
133 Fed. App'x. 249 (6th Cir. 2005) ...................................................................15

*Chenault v. Phillips*,
914 S.W.2d 140 (Tex. 1996) ......................................................................... 9, 16

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ........................................................................ 19, 20

*Firefighters' and Police Officers' Civil Service Com'n of City of Houston v.
Ceazer*, 725 S.W.2d 431 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd
n.r.e.) ..................................................................................................................22

*Galbraith Eng'g Consultants, Inc. v. Pochucha*,
290 S.W.3d 863 (Tex. 2009) ................................................................................9

*Hamilton v. Mark Washington, et al.*,
2014 WL 7458988 (Tex.App.—Austin 2014). 9, 10, 11, 12, 13, 14, 17, 18, 19, 20

*Howsam v. Dean Witter Reynolds, Inc.*,
123 S.Ct. 588 (2002) .........................................................................................19

*In re Crow-Billingsley Air Park, Ltd.*,
98 S.W.3d 178 (Tex. 2003) .................................................................................22

*Marks v. St. Luke's Episcopal Hosp.*,
319 S.W.3d 658 (Tex. 2010) .......................................................................... 9, 10

*Mata v. City of San Antonio*,
2012 WL 1364594 (Tex.App.—San Antonio 2012) ............................... 10, 14, 15

v

*Tex. Dep't of Transp. v. Sefzik*,
   355 S.W.3d 618 (Tex. 2011) (per curiam)................................................18

*Texas Parks & Wildlife Dep't v. Sawyer Trust*,
   354 S.W.3d 384 (Tex. 2011)......................................................................18

*Wichita Falls State Hosp. v. Taylor*,
   106 S.W.3d 692 (Tex. 2003)......................................................................17

**Statutes**

*Tex.Civ.Prac.&Rem.Code* §37.001, et. seq. .......................................2, 8

*Tex.Gov'tCode* §24.011 ............................................................ 2, 8, 22

*Tex.Gov'tCode* §311.021 ..................................................................9

*Tex.Loc.Gov'tCode* §143.010 ..................................................... 7, 16

*Tex.Loc.Gov'tCode* §143.015 ................................................ 11, 12, 17

*Tex.Loc.Gov'tCode* §143.015(a)..........................................................8

*Tex.Loc.Gov'tCode* §143.015(b)........................................................17

*Tex. Loc.Gov'tCode* §143.051-.057........................................................11

*Tex.Loc.Gov'tCode* §143.052(b)..........................................................3

*Tex.Loc.Gov'tCode* §143.052(g)................................................ 4, 6, 21

*Tex.Loc.Gov'tCode* §143.053 ...................................................... 3, 11

*Tex.Loc.Gov'tCode* §143.057 ..............................................................7

*Tex.Loc.Gov'tCode* §143.057(a)..........................................................7

*Tex.Loc.Gov'tCode* §143.306(a)..........................................................6

*Tex.Loc.Gov'tCode* §143.307 ..............................................................6

No. 03-15-00591-CV

In the Third Court of Appeals
Austin, Texas

THE CITY OF AUSTIN FIREFIGHTERS AND POLICE OFFICERS'
CIVIL SERVICE COMMISSION, DIRECTOR MARK WASHINGTON, CHIEF
ARTURO ACEVEDO AND THE CITY OF AUSTIN, TEXAS,
Defendants – Appellants

v.

WILLIAM M. STEWART, Plaintiff - Appellee

Appeal from Cause No. D-1-GN-13-003351
98th Judicial District Court of Travis County, Texas

**BRIEF OF APPELLANT**

TO THE COURT OF APPEALS FOR THE THIRD DISTRICT:

**RECORD REFERENCES**

Clerk's Record. Citations to the Clerk's Record will be to "CR" with the page number following, e.g., "CR 7."

Appendix. References to materials included in the Appellant's Appendix are referred to as "AA" with the page number following, e.g., "AA 1."

**STATEMENT OF THE CASE**

William Stewart sued in district court over his dismissal from the Austin

1

Police Department seeking declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code requesting reinstatement, back pay and lost benefits, as well as mandamus under Texas Government Code §24.011 requesting a hearing before a hearing examiner, pursuant to Chapter 143 of the Texas Local Government Code. CR 22-28. The City of Austin, Mark Washington, Arturo Acevedo, and the City of Austin Firefighters' and Police Officers' Civil Service Commission ("Appellants"), filed a plea to the jurisdiction seeking dismissal because failure to exhaust administrative remedies, and governmental immunity deprived the district court of subject matter jurisdiction. CR 29-93.

At the conclusion of the August 2, 2015 hearing, the district court took the plea to the jurisdiction under advisement. On September 1, 2015, the Honorable Orlinda Naranjo denied the Plea to the Jurisdiction without specifying any grounds. CR 102, AA1.

## ORAL ARGUMENT IS NOT REQUESTED

Oral argument is not necessary because this Court has already decided the central issues, that failure to exhaust administrative remedies, and governmental immunity deprive a district court of subject matter jurisdiction.

## ISSUES PRESENTED

I.      The district court erred when it denied the plea to the jurisdiction because the court lacked subject matter jurisdiction based on lack of

2

standing for failure to exhaust administrative remedies.

II. The district court erred when it denied the plea to the jurisdiction because governmental immunity is not waived under the Civil Service Act or Texas Uniform Declaratory Judgments Act.

III. The district court erred when it did not dismiss Chief of Police Art Acevedo against whom all claims were abandoned.

## STATEMENT OF FACTS

A. <u>The facts are not in dispute.</u>

On August 24, 2012, former police officer William Stewart's ("Stewart") chain of command unanimously recommended his indefinite suspension from the Austin Police Department ("APD") to the Chief of Police for violation of civil service rules set forth in Chapter 143 of the Texas Local Government Code. CR 47-48, AA2. "An indefinite suspension is equivalent to dismissal from the department." *Tex.Loc.Gov'tCode*, §143.052(b). CR 30, AA2. Only the Chief of Police has authority to dismiss a police officer.

Stewart had the option to deny the charges and file an appeal of his discipline with the Civil Service Commission (the "Commission") under Chapter 143, but he chose not to. *Id.*, §143.053. CR 30, AA2. Instead, represented by the Austin Police Association ("APA"), the union which represents police officers, and an attorney with the Combined Law Enforcement Associations of Texas

3

("CLEAT"), which represents police officers and associations, Stewart chose to waive his Chapter 143 appeal rights. *Id.*, §143.052(g). CR 30, AA2. On September 13, 2012, Stewart chose to voluntarily enter into a sixty-day Agreed Temporary Suspension with Chief of Police Art Acevedo ("Chief Acevedo"). CR 50-53. The Agreement included the term and condition that the agreed suspension was a "Last Chance Agreement." CR 52-53. A one-year probationary period began after Stewart completed his sixty-day suspension (the effective date of the probationary period was November 12, 2012 through November 12, 2013). CR 50-53. By entering into this Agreement with Chief Acevedo, Stewart expressly acknowledged that he was being suspended for violating the civil service rules cited in the Agreed Temporary Suspension. CR 30. Stewart signed the Agreed Temporary Suspension, including the additional terms and conditions therein, acknowledging that if he committed the same or similar act for which he was temporarily suspended during his one-year probation he would be indefinitely suspended. CR 53. Specifically, Stewart agreed as follows:

> TO WHOM IT MAY CONCERN:
>
> I acknowledge receipt of the above and foregoing memorandum of agreed temporary suspension and I understand that by entering into this disciplinary agreement the Chief foregoes his right to indefinitely suspend me for the conduct described above and that agreeing to the suspension, **I have no right to appeal** this disciplinary action or the additional terms and conditions cited herein, to the Civil Service Commission, to the District Court, or to an Independent Third Party Hearing Examiner. [emphasis added]

4

During his one-year probationary period, on July 30, 2013 Chief Acevedo indefinitely suspended Stewart pursuant to the Agreed Temporary Suspension for violating the Last Chance Agreement by committing the same or similar act for which he was temporarily suspended. CR 55-61. Despite having agreed to the Last Chance Agreement knowingly waiving appeal, on August 2, 2013, Stewart filed a notice of appeal of his indefinite suspension with the Civil Service Director to appeal to a hearing examiner complaining that he did not violate the terms of his Last Chance Agreement because (1) the misconduct did not occur, or (2) it was not the same or similar act of misconduct that led to his indefinite suspension, and (3) the Last Chance Agreement was not signed by the Austin Police Association. CR 63-64.

On August 7th, Civil Service Director Mark Washington ("Director Washington") rejected Stewart's appeal for failure to invoke the jurisdiction of the Civil Service Commission (the "Commission"). CR 66-67. Specifically, Director Washington wrote as follows:

> In order for the Civil Service Commission or an Independent Third Party Hearing Examiner to determine whether an appeal is subject to arbitration, the jurisdiction of the Commission must be lawfully invoked. Under the Authority of the Meet and Confer Agreement Stewart entered into a Sixty-Day Agreed Suspension and expressly waived his right to appeal this indefinite suspension to the Commission, a Hearing Examiner, and to District Court. Consequently, the Commission does not have jurisdiction to act upon this appeal and no further steps will be taken to process this appeal.

5

B.    Officer Discipline is pursuant to the Meet and Confer Agreement and Chapter 143.

The City and the APA entered into a Meet and Confer Agreement ("M&C Agreement") recognizing the APA as the sole and exclusive bargaining agent for police officers employed by the City pursuant to Chapter 143. *Agreement Between the City of Austin and the Austin Police Association*, Article 3.  CR 69-81, AA3. The M&C Agreement endorses the Texas meet and confer statute, Municipal Service for Firefighters and Police Officers (the "Civil Service Act"). *Tex.Loc.Gov'tCode*, Chapter 143.  CR 83-89, AA2.  The M&C Agreement is "binding on the public employer, the association, and the fire fighters or police officers covered by the agreement." *Id.*, §143.306(a).  CR 32, AA2.

Under the M&C Agreement, Article 18 Disciplinary Actions, Demotions and Appeals, controls discipline of police officers.  CR 70-77.  In the event of a conflict between the statute and the M&C Agreement, pursuant to statute the M&C Agreement preempts and supersedes Chapter 143.  Art 18., Sec. 17; *Id.*, §143.307. CR 32, AA2-3.  Article 18, Section 3, Mutually Agreed Temporary Suspensions of Sixteen (16) to Ninety (90) Days, mirrors the language of Chapter 143.  CR 86, AA2.

> §143.052(g). If offered by the department head, the fire fighter or police officer may agree in writing to voluntarily accept, with no right of appeal, a suspension of 16 to 90 calendar days for violation of a civil service rule.

6

Article 18, Section 7, Last Chance Agreement, is a contractual provision mutually agreed upon by the City and the APA that expressly authorizes Chief Acevedo to offer a Last Chance Agreement as an alternative to indefinite suspension. CR 73-74, AA3.

> a) . . . the Police Chief may offer the officer, as an alternative to indefinite suspension, the opportunity to enter into a last chance agreement . . .
> (3) The officer will agree to a probationary period not to exceed one (1) year, with the additional requirement that if, during the probationary period, the officer commits the same or a similar act of misconduct, the officer will be indefinitely suspended without right of appeal.

The Civil Service Act prescribes administrative remedies to appeal disciplinary actions. Chapter 143, Subchapter D. Disciplinary Actions. CR 85-89, AA2. The deadline for appeals is ten days. *Id.*, §143.010 ("police officer need only file an appeal with the commission within 10 days after the date the action occurred"). CR 33, AA2. A police officer appealing discipline may elect to be heard by the Civil Service Commission, or a hearing examiner. *Id.*, §143.057, AA2. CR 88-89. If a "police officer elects to appeal to a hearing examiner, the person waives all rights to appeal to a district court," except on limited grounds not applicable here. *Id.*, §143.057(a), AA2. CR 88. Stewart's August 2, 2013 notice of appeal elected to have his appeal heard by a hearing examiner, instead of the Commission. CR 63-64. Only decisions of the Commission are appealable to district court: *Id.* CR 33, AA2.

7

§143.015(a) If a firefighter or police officer is dissatisfied with any commission decision, the firefighter or police officer may file a petition in district court asking that the decision be set aside. The petition must be filed within 10 days after the date [of] the final commission decision . . .

There is no Commission decision to appeal to district court in this case. CR 33.

## SUMMARY OF THE ARGUMENT

The district court lacked subject matter jurisdiction over Stewart's suit for declaratory relief seeking reinstatement, back pay and lost benefits, or to mandamus a hearing before a hearing examiner based on failure to exhaust administrative remedies, and because governmental immunity is not waived under the Civil Service Act, or the Texas Uniform Declaratory Judgments Act.

## ARGUMENT

Stewart sought reinstatement, back pay and lost benefits, requesting declarations under the Texas Uniform Declaratory Judgments Act ("UDJA"), Civ.Prac.&Rem.Code, §37.001, et. seq., and mandamus under Tex. Gov't Code, §24.011, specifically (a) a declaration that his Last Chance Agreement is void, (2) a declaration that Director Washington's refusal to forward his appeal to the American Arbitration Association[1] was *ultra vires*, and (3) to mandamus Director Washington to forward his appeal to a hearing examiner, pursuant to Chapter 143, the Civil Service Act.

---

[1] If the parties do not agree on the selection of a hearing examiner, they may request a list of seven qualified neutral hearing examiners from the American Arbitration Association.

8

The Court lacks subject matter jurisdiction (1) to grant a claim for reinstatement, back pay and lost benefits or declare the Last Chance Agreement void based on failure to exhaust administrative remedies under the M&C Agreement and Chapter 143, (2) to declare that refusal to forward the appeal was an *ultra vires* act because immunity is not waived under Chapter 143 or the UDJA, or (3) to mandamus appeal to a hearing examiner because neither the M&C Agreement nor Chapter 143 confer jurisdiction on hearing examiners to hear an appeal of an indefinite suspension pursuant to a Last Chance Agreement which expressly waived all appeal rights. CR 34-35. The UDJA is "not a grant of jurisdiction, but merely a procedural device for deciding cases already within a court's jurisdiction." *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). CR 35.

A.   The Rules of Statutory Construction do not support Stewart's interpretation of Chapter 143 or the M&C Agreement.

In enacting a statute, it is presumed that the entire statute is intended to be effective, and a just and reasonable result is intended. *Tex.Gov'tCode*, §311.021. CR 35. Under the rules of statutory construction, the primary concern is the express statutory language. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). CR 35. Courts apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Marks v. St. Luke's*

9

*Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). CR 35. Lst year, this Court found that courts must also "construe the [M&C] Agreement." *Hamilton v. Mark Washington, et al.,* 2014 WL 7458988 *3 (Tex.App.—Austin 2014) (denial of appeal of indefinite suspension of police officer). "We examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. We do not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire agreement." *Hamilton*, at *3. (internal citations omitted) In another case seeking to interpret a collective bargaining agreement ("CBA"), that appellate court found that "[w]e do not agree with [plaintiff's] interpretation of the CBA and its interaction with the Local Government Code. The CBA is unambiguous. (holding language that can be given certain or definite legal meaning is unambiguous)." *Mata v. City of San Antonio*, 2012 WL 1364594 *3 (Tex.App.—San Antonio 2012. (internal citations omitted) CR 35. Similarly, in this case the M&C Agreement is unambiguous authorizing Agreed Temporary Suspensions from which "there shall be no appeal," with a "Last Chance Agreement" "as an alternative to indefinite suspension," consistent with Chapter 143. *M&C Agreement*, Article 18, Secs. 3 & 7. CR 70-74, AA3.

B.    <u>Stewart lacked standing and the district court lacked jurisdiction because administrative remedies were not exhausted.</u>

First, the "Civil Service Act outlines the disciplinary process by which a municipality may suspend an officer and the procedure for the appeal of a

10

suspension. See *Tex. Loc. Gov't Code* §143.051-.057." *Hamilton*, at *4. Second, the M&C Agreement outlines mandatory grievance procedures for complaints about violations of the M&C Agreement. Under both the Civil Service Act and the M&C Agreement, the district court lacked subject matter jurisdiction based on lack of standing because administrative remedies were not exhausted.

1. *The district court lacked jurisdiction over claims for reinstatement, back pay and lost benefits.*

The district court lacked jurisdiction over Stewart's claim for reinstatement under Chapter 143 because the statute gives the Civil Service Commission exclusive jurisdiction over such claims. *Tex.Loc.Gov'tCode*, §143.053(e)(3), AA2. "When the legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute." *Hamilton*, at *6. ("[T]he sole authority to make the initial decision to uphold the suspension or reverse it and grant reinstatement is afforded the official making the decision at the Commission level"). Accordingly, "the district court lacked jurisdiction over [plaintiff's] claim for reinstatement because the Commission has exclusive jurisdiction over such claims." *Hamilton*, at *6.

Stewart asserts that the trial court has jurisdiction under Section 143.015 Appeal of Commission Decision to District Court. CR 23. However, last year this Court concluded that "[b]ecause the Commission determined that Hamilton has failed to invoke its jurisdiction, it did not hold a hearing or refer the appeal to a

11

hearing examiner. Consequently, Hamilton's suit is not an appeal of a decision of the Commission or a hearing examiner, and there is no Commission decision for the trial court to consider de novo nor any basis for awarding relief under section 143.015." *Hamilton*, at *5. CR 37. Just as in *Hamilton*, there is no Commission decision in this case, depriving the district court of subject matter jurisdiction. CR 37. More recently, this Court concluded that because the officer "has not exhausted all of her administrative remedies, neither we nor the trial court have jurisdiction to order that she be reinstated with back pay and benefits." *Brown v. Nero,* 2015 WL 5666172 *3 (Tex.App.—Austin 2015), citing *Hamilton,* at *10.

"When the administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision, and if the party has not met the exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss the claims without prejudice to refiling." *Hamilton*, at *6. "Because [plaintiff's] appeal was rejected, there has been no initial determination in this dispute at the Commission level, and [plaintiff] has not exhausted his administrative remedies. We therefore conclude that the district court lacked subject matter jurisdiction over [plaintiff's] request for reinstatement and did not err in granting the City's plea." *Hamilton*, at *6. Similarly, Director Washington rejected Stewart's appeal in this case. It was error to deny the City's plea because failure to exhaust the mandatory administrative remedies in Chapter

12

143 deprived the district court of jurisdiction. CR 37.

        2.     *The district court lacked jurisdiction to void the Agreed Temporary Suspension.*

The district court not only lacked subject matter jurisdiction for failure to exhaust administrative remedies under Chapter 143, but also for failure to exhaust administrative remedies under the M&C Agreement grievance procedures. CR 36, AA3. This Court has already found that *both* administrative remedies must be exhausted to confer jurisdiction. *Hamilton,* at \*10 ("we agree with the City that Hamilton lacked standing to sue for breach of contract because he failed to exhaust the administrative remedies required by the Agreement.) *Hamilton*, at \*10. CR 36. Stewart's purported request for declarations under the UDJA, are actually breach of contract claims because they allege breach of the M&C Agreement whose mandatory grievance procedures he failed to pursue as required by the Civil Service Act. CR 78-81. *M&C Agreement*, Article 20, Grievance Procedures, AA3. *Hamilton*, at \*9 ("Hamilton's final claim is one for breach of contract based on alleged violations of his rights under the Agreement." "Hamilton lacked standing to sue for breach of contract because he failed to exhaust his administrative remedies under the Civil Service Act, an issue we have already resolved in the City's favor"). "Here, the Agreement similarly provides that a grievance may be filed by any individual officer to whom the Agreement applies." *Hamilton*, at \*10 ("Hamilton was an active APD officer, not belonging to any of

13

the excluded categories, who was covered by the Agreement and bound by its grievance procedure.") *Hamilton,* at *10.

The M&C Agreement outlines mandatory grievance procedures for complaints about violations of the M&C Agreement ("a 'grievance' is defined as any dispute, claim, or complaint involving the interpretation, application, or alleged violation of any provision of this Agreement"). CR 36, AA3. Stewart sought a declaration that his Agreed Temporary Suspension is void because (a) it does not comply with the M&C Agreement, (b) the APA was not a party, and (c) an arbitrator should determine whether he violated his Last Chance Agreement. CR 24. Although represented by the APA and a CLEAT attorney, Stewart requested no changes to the terms of the Last Chance Agreement. *Mata*, at *1 (the union and plaintiff "asked for a few changes in the terms of the agreement, which the City made"). If Stewart believed that a hearing examiner must determine if the conduct is the same or similar, and the failure to do so constitutes a violation of the *M&C Agreement*, he was required to file a contract grievance within thirty (30) days after he knew or should have known of the facts giving rise to the grievance. M&C Agreement, Article 20. CR 78-81, AA3. No contract grievance was ever filed. It was error to deny the City's plea because failure to exhaust the mandatory administrative remedies in the M&C Agreement deprived the district court of jurisdiction.

14

Moreover, voiding the Last Chance Agreement would result in Stewart's termination on September 13, 2012 because it was in lieu of indefinite suspension. CR 40. "If the last chance agreement is void, then Mata's first indefinite suspension remains in place." *Mata*, at *5. "The Act's ten-day period to appeal a suspension would bar Mata's untimely appeal from the original indefinite suspension." *Mata*, at *5 ("Without signing the last chance agreement in the first place . . . she would have been justifiably terminated. Her signing of the last chance agreement saved her from being terminated.)" *Mata*, n.2, citing *Cf. Summers v. Keebler Co.*, 133 Fed. App'x. 249, 252 (6th Cir. 2005).

APD has a history of entering into Last Chance Agreements. CR 38. *Mata*, at *5 ("there is a history of settlement agreements . . . the record shows that the execution of a last chance agreement was not contrary to the CBA"). Stewart signed the Last Chance Agreement without taking issue with any terms. *Mata*, at *1 ("neither questioned the legality of nor argued that the last chance agreement violated the terms" of the M&C Agreement). In the last fifteen years of APD Last Chance Agreements, the APA has never signed, has never requested to sign, and has never filed a grievance under the M&C Agreement grievance procedures complaining that the APD was not a signatory. CR 91-93. *Mata*, at *1 (plaintiff, the police chief, and "one witness signed the last chance agreement, [police union] did not.") In the last fifteen years, the only legal challenge to a Last Chance

15

Agreement was denied. *Tony Smith v. Hubert Arturo "Art" Acevedo, et al.,* Case No. A-09-CA-620-S, U.S. District Court, Western District, Austin Division, Sept. 20, 2010 ("of particular importance to Plaintiff's defamation claim here, was a 2005 agreed 60-day suspension . . . Plaintiff signed the memo on April 20, 2005, acknowledging both receipt and his understanding that he forfeited his right to appeal in return for the Chief not exercising his right to terminate Plaintiff for the described conduct"). Stewart is attempting to challenge the process in his 2012 Agreed Temporary Suspension through the vehicle of his 2013 non-appealable indefinite suspension, because he failed to appeal his temporary suspension within the ten days mandated by Chapter 143 remedies. *Tex.Loc.Gov'tCode*, §143.010, AA2. ("Defendants point out, and the Court agrees, Plaintiff's claims relating to his 2005 discipline are time-barred. Plaintiff is attempting to challenge the process he received in 2005 through the vehicle of the 2008 memo." "If Plaintiff wished to complain about the process he received in 2005, he should have done so"). Similarly, Stewart should have complained about the 2012 Agreed Temporary Suspension at that time. CR 38.

The UDJA is "not a grant of jurisdiction, but merely a procedural device for deciding cases already within a court's jurisdiction." *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). Stewart cannot enlarge the court's jurisdiction by reframing his breach of contract claim as a UDJA claim. CR 40. Further, "a

16

declaratory judgment action will not lie to provide redundant remedies," in this case Chapter 143 remedies. *Beacon Nat'l Ins. v. Montemayor*, 86 S.W.3d 260, 267 (Tex.App.—Austin 2002, no pet.). Finally, the plain language of the M&C Agreement expressly authorizes Last Chance Agreements, does not require the APA sign as a party, and does not require that an arbitrator determine whether the act was the same or a similar act. CR 40. It was error to deny the City's plea because failure to exhaust the administrative remedies in the M&C Agreement deprived the district court of jurisdiction. CR 37.

C.    The district court lacked jurisdiction over claims for which governmental immunity is not waived.

Governmental immunity protects political subdivisions of the State, including cities, absent express waiver. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). CR 40. "The Civil Service Act provides a limited waiver of governmental immunity from suit for appeal of a Commission decision to district court. See *Tex.Loc.Gov'tCode* §143.015. For a suit to proceed against a governmental unit under a statute [that waives immunity], the court must first look to the terms of the Act to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope'." *Hamilton*, at *3. CR 40. Stewart's "requests for declaratory and mandamus relief and his purported 'appeal' of the Commission's 'decision' do not fall within the waiver of immunity granted in section 143.015(b), and the district

17

court did not have jurisdiction over [plaintiff's] claims under the Civil Service Act." *Hamilton*, at *5. CR 40. The UDJA waives immunity for certain claims; however, it is not a general waiver of immunity. *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). CR 40. The UDJA "does not waive immunity against claims seeking a declaration of the claimant's statutory rights. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam)." The UDJA waives governmental immunity only when the plaintiff seeks a declaration challenging the constitutionality or validity of a statute or ordinance. The UDJA waives immunity for those claims only because section 37.006(b) calls for the joinder of the governmental entity as a party when the validity of its statute or ordinance is challenged. *Sefzik*, 355 S.W.3d at n.3 (immunity from suit is not waived for a UDJA action in which "a plaintiff seeks a declaration of his or her rights under a statute or other law.")

> 1. *Immunity bars claims against the City for back pay and lost benefits.*

As this Court has held, a claim for reinstatement, back pay and lost benefits is jurisdictionally barred because "neither [the appellate court] nor the trial court have jurisdiction to order that [Stewart] be reinstated with back pay and benefits," the Commission having sole authority to make that decision. *Brown,* at *3 (affirming plea to the jurisdiction on request for "reinstatement with back pay and benefits"). Additionally, "if the sole purpose of a declaration is to obtain a money

18

judgment, immunity is not waived." *Hamilton*, at *5, citing *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). CR 41. "[D]eclaratory and mandamus claims for back pay and lost benefits seek retrospective monetary compensation for salary and benefits of which he was deprived by the City's alleged wrongful actions . . . and are therefore claims for money damages that implicate governmental immunity . . . we agree with the City that governmental immunity is not waived and the district court did not err in granting the City's plea to the jurisdiction as to those claims." *Hamilton*, at *7. CR 41.

2.    *Immunity bars claims against Director Washington for acts which are not ministerial.*

Stewart seeks a declaratory judgment, granting "referral to a third party arbitrator on the prerequisite issue of same or similar conduct," alleging "procedural arbitrability" citing to *Howsam*. CR 24. However, in that case the U. S. Supreme Court reaffirmed that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 123 S.Ct. 588, 591 (2002). CR 41. In this case, there is no contractual provision in the M&C Agreement to submit either a Last Chance Agreement, or a non-appealable indefinite suspension pursuant to a Last Chance Agreement to arbitration; therefore, forwarding the appeal was not a ministerial act.

Stewart complains of rejection of his appeal by Director Washington

19

asserting the "ultra vires exception to governmental immunity applies to Director Washington's failure to perform a purely ministerial act because he acted outside of his official capacity or without legal authority." CR 26. "Suits against governmental officials alleging that they 'acted without legal authority or failed to perform a purely ministerial act' and seeking to compel the officials 'to comply with statutory or constitutional provisions' fall within the 'ultra vires' exception to governmental immunity because they 'do not attempt to exert control over the state –they attempt to reassert the control of the state.' *Id*. Generally, however, only prospective relief is available. Thus, although governmental immunity protects a city from lawsuits for retrospective money damages, a request for prospective injunctive or mandamus relief from illegal or unauthorized acts may be pursued under the UDJA against the appropriate officials in their official capacities." *Hamilton*, at *5. (internal citations omitted), citing *Heinrich*, 284 S.W.3d at 372. CR 42.

Stewart alleges that he "did not waive his civil service right to an appeal to an independent third-party hearing examiner on the issue of whether the alleged conduct occurred and if so, whether the conduct was the same or similar in nature to the conduct complained of in the previous suspension to invoke the terms of the last chance agreement/probation." CR 27. By the plain language of the Agreement, Stewart **expressly waived "all right to appeal this disciplinary**

**action, including the additional terms and conditions cited herein."** [emphasis added] CR 53. Furthermore, under the Civil Service Act, the Chief of Police has the sole statutory authority to determine if an officer has violated civil service rules, and if so, has the sole authority to impose disciplinary action. CR 43. A Hearing Examiner conducts an appellate review only, and has no statutory or contractual authority to make the initial contractual determination. CR 43.

Director Washington complied with the language of the Agreed Temporary Suspension, the M&C Agreement, and the Civil Service Act when he rejected Stewart's appeal, none of which authorize appeal of "Last Chance Agreements." *Tex.Loc.Gov'tCode*, §143.052(g). CR 43, AA2. The mandatory language of the M&C Agreement expressly bars appeals of Last Chance Agreements. (**"there shall be no appeal"**) [emphasis added]. *M&C Agreement*, Article 18, Sec. 3. Because there was no right to appeal, Director Washington had a ministerial duty *not* to forward Stewart's appeal to a Hearing Examiner. CR 43.

The M&C Agreement supersedes Chapter 143 in the event of a conflict. *M&C Agreement*, Article 18, Sec. 7. CR 43, AA3. Stewart points to no grant of authority under which a hearing examiner has jurisdiction to hear an appeal of a Last Chance Agreement, the terms and conditions cited therein, or a non-appealable indefinite suspension pursuant to a Last Chance Agreement. CR 43. Because there is a contractual prohibition for this appeal, Director Washington not

21

only had no jurisdiction to act upon the appeal, he was contractually prohibited from doing so. CR 43. It would have been *ultra vires* to forward an appeal barred by the M&C Agreement to an arbitrator. Accordingly, Stewart's claim against Director Washington does not fall within the *ultra vires* exception to immunity. CR 43.

Stewart seeks a writ of mandamus to forward his appeal to an independent third-party hearing examiner pursuant to Texas Government Code §24.011. CR 24. Mandamus is an extraordinary remedy available only in limited circumstances to correct a clear abuse of discretion or the violation of a duty imposed by law when the relator has no adequate remedy by appeal. *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 279 (Tex. 2003). CR 43. "Before being entitled to the issuance of a writ of mandamus, a petitioner must establish both a clear right to such relief and a clear duty on the part of the Commission to act." *Firefighters' and Police Officers' Civil Service Com'n of City of Houston v. Ceazer,* 725 S.W.2d 431, 433 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). CR 44. A hearing examiner lacks jurisdiction to hear Stewart's appeal because neither the M&C Agreement nor Chapter 143 authorize appeal of a non-appealable indefinite suspension pursuant to a Last Chance Agreement waiving all appeal rights. CR 44.

D.   The district court lacked jurisdiction because all claims against the Chief of
     Police were abandoned.

Stewart abandoned all claims against Chief Acevedo. The wrongful

termination and retaliation claims asserted in both his Original Petition and First Amended Petition were deleted from the Second Amended Petition. CR 23-28. The plea to the jurisdiction sought dismissal of Chief Acevedo because no facts were pled, and no claims were asserted against him. CR 34. Stewart's response to the plea did not dispute that all claims against Chief Acevedo were abandoned. CR 94-101. Accordingly, the district court lacked subject matter jurisdiction and Chief Acevedo should have been dismissed.

## CONCLUSION AND PRAYER

An appeal of whether misconduct occurred, or was the same or similar act of misconduct, in fact appeals the merits of disciplinary action, which nullifies Last Chance Agreements. Stewart's self-serving interpretation of his waiver of all appeal rights argues that he merely entered into a "second-to-the-last-chance agreement," allowing him a "last, last chance" before a hearing examiner which he expressly waived. Such a construction would make a nullity of Last Chance Agreements, the intent of the APA and the City in the M&C Agreement, as well as the Texas Legislature in enacting the Civil Service Act which expressly supersedes Chapter 143 with the M&C Agreement. Accepting Stewart's argument, every police officer will enter into a "Last Chance Agreement" to avoid dismissal, knowing that the only consequence will be a "last, last chance" and appeal to a hearing examiner. Chapter 143 and the M&C Agreement do not allow such an

23

absurd result. The true consequence will be that the Chief of Police will no longer offer Last Chance Agreements if rendered meaningless, and police officers will no longer have an opportunity to prove themselves, and save their law enforcement careers.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, Interim City Attorney
MEGHAN L. RILEY, Chief, Litigation

/s/     Chris Edwards
CHRIS EDWARDS
Assistant City Attorney
State Bar No. 00789276
City of Austin-Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone:  (512) 974-2419
Facsimile:   (512) 974-1311
chris.edwards@austintexas.gov

**COUNSEL FOR DEFENDANTS - APPELLANTS**

24

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing on all parties, or their attorneys of record, in compliance with the Appellate Rules of Civil Procedure, this 9th day of November, 2015.

Grant Goodwin
State Bar No. 00787567
400 W. 14th Street, Suite 100
Austin, Texas 78701
Telephone: (512) 495-9111
Facsimile: (512) 495-9301
grant.goodwin@cleat.org

**Counsel for Plaintiff - Appellee**


/s/ Chris Edwards
CHRIS EDWARDS
Counsel for Defendants – Appellants

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Tex. R. of App. P. 9.4(i)(2)(B) because this brief contains 5418 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Chris Edwards
CHRIS EDWARDS
Counsel for Defendants – Appellees

**APPENDIX**

TAB

1      Order Denying Defendants' Plea to the Jurisdiction, Remanding for Further Proceedings, and Staying Proceedings Before the Court.

2      *Texas Local Government Code*, Chapter 143.

3      Agreement Between the City of Austin and the Austin Police Association ("Meet and Confer Agreement").

# APPENDIX 1

## NO. D-1-GN-13-003351

| | | |
|---|---|---|
| WILLIAM M. STEWART,<br>Plaintiff | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§<br>§ | |
| THE CITY OF AUSTIN<br>FIREFIGHTERS' AND POLICE<br>OFFICERS' CIVIL SERVICE<br>COMMISSION, DIRECTOR MARK<br>WASHINGTON, CHIEF ARTURO<br>ACEVEDO, AND THE CITY OF<br>AUSTIN, TEXAS,<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 98th JUDICIAL DISTRICT<br><br><br><br>TRAVIS COUNTY, TEXAS |

Filed in The District Court
of Travis County, Texas
At _____ SEP - 1 2015 _____ M.
Velva L. Price, District Clerk

### ORDER DENYING DEFENDANTS' PLEA TO THE JURISDICTION, REMANDING FOR FURTHER PROCEEDINGS, AND STAYING PROCEEDINGS BEFORE THE COURT

On July 27, 2015, the Defendants' Plea to the Jurisdiction came to be heard, and after reading the Plea, hearing the arguments, reviewing the applicable case law, and considering the same, the Court finds as follows:

1. The Court ORDERS that Defendants' Plea to the Jurisdiction is DENIED;

2. The Court FURTHER ORDERS that the case be REMANDED to the City of Austin so that a third-party hearing examiner can address the issue of "same or similar act of misconduct" pursuant to Loc. Gov. Code Sec. 143.057; and

3. The Court FURTHER ORDERS that all further actions before the Court be STAYED pending resolution of the administrative grievance process.

Therefore, it is ORDERED, ADJUDGED AND DECREED that Defendants' Plea to the Jurisdiction is DENIED, the case is REMANDED to the City of Austin for further proceedings, and all actions before the Court are STAYED pending resolution of the administrative grievance process.

SIGNED on this the _____1_____ day of September, 2015.

Judge Orlinda L. Naranjo

# APPENDIX 2

TITLE 5. MATTERS AFFECTING PUBLIC OFFICERS AND EMPLOYEES

SUBTITLE A. MUNICIPAL OFFICERS AND EMPLOYEES

CHAPTER 143.  MUNICIPAL CIVIL SERVICE FOR FIREFIGHTERS AND POLICE

OFFICERS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 143.001.  PURPOSE. (a)  The purpose of this chapter is to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants.

(b)  The members of the Fire Fighters' and Police Officers' Civil Service Commission shall administer this chapter in accordance with this purpose.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.002.  MUNICIPALITIES COVERED BY CHAPTER. (a)  This chapter applies only to a municipality:

(1)  that:

(A)  has a population of 10,000 or more;

(B)  has a paid fire department or police department; and

(C)  has voted to adopt this chapter or the law codified by this chapter; or

(2)  whose election to adopt this chapter and whose acts subsequent to that election were validated by the law enacted by House Bill 822, Acts of the 73rd Legislature, Regular Session, 1993.

(b)  Population under Subsection (a)(1) is determined by the most recent:

(1)  federal decennial census; or

(2)  annual population estimate provided by the state demographer under Chapter 468, Government Code, if that estimate is more recent than the most recent federal decennial census.

(c)  If this chapter applies to a municipality as provided by Subsection (a), the application of this chapter to the municipality

is not affected if the municipality's population changes and the municipality no longer meets the population requirement of Subsection (a)(1).

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1993, 73rd Leg., ch. 576, Sec. 1, eff. Aug. 30, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 212 (H.B. 1913), Sec. 1, eff. May 27, 2005.

Acts 2005, 79th Leg., Ch. 1163 (H.B. 3409), Sec. 1, eff. June 18, 2005.


Sec. 143.003.  DEFINITIONS.  In this chapter:

(1)  "Commission" means the Fire Fighters' and Police Officers' Civil Service Commission.

(2)  "Department head" means the chief or head of a fire or police department or that person's equivalent, regardless of the name or title used.

(3)  "Director" means the director of fire fighters' and police officers' civil service.

(4)  "Fire fighter" means a member of a fire department who was appointed in substantial compliance with this chapter or who is entitled to civil service status under Section 143.005 or 143.084.  The term:

(A)  applies only to an employee of a fire department whose position requires substantial knowledge of fire fighting and who has met the requirements for certification by the Texas Commission on Fire Protection under Chapter 419, Government Code, including an employee who performs:

(i)  fire suppression;

(ii)  fire prevention;

(iii)  fire training;

(iv)  fire safety education;

(v)  fire maintenance;

(vi)  fire communications;

(vii)  fire medical emergency technology;

(viii)  fire photography;

(ix)  fire administration; or

(x)  fire arson investigation; and

(B)  does not apply to a secretary, clerk, budget analyst, custodial engineer, or other administrative employee.

(5)  "Police officer" means a member of a police department or other peace officer who was appointed in substantial compliance with this chapter or who is entitled to civil service status under Section 143.005, 143.084, or 143.103.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2001, 77th Leg., ch. 498, Sec. 1, eff. Sept. 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 738 (H.B. 2640), Sec. 1, eff. September 1, 2005.


Sec. 143.004.  ELECTION TO ADOPT OR REPEAL CHAPTER.  (a)  A municipality may hold an election to adopt or repeal this chapter as provided by this section.

(b)  If the governing body of the municipality receives a petition requesting an election that is signed by a number of qualified voters of the municipality equal to at least 10 percent of the number of voters who voted in the most recent municipal election, the governing body shall order an election submitting to the voters the question of whether this chapter should be adopted. The election must be held on the first authorized uniform election date prescribed by Chapter 41, Election Code, that occurs after the petition is filed and that allows sufficient time to comply with other requirements of law.

(c)  The ballot shall be printed to provide for voting for or against the proposition:  "Adoption of the fire fighters' and police officers' civil service law."  However, this chapter may be adopted to apply only to the fire or police department, and in that case, the ballot shall be printed to reflect the department that would be covered by this chapter.  If a majority of the votes received in the election are in favor of adoption of this chapter, the governing body shall implement this chapter.

(d)  If an election is held under Subsection (b), a petition for a subsequent election to be held under that subsection may not be filed for at least one year after the date the previous election

3

was held.  To be valid, a petition for a subsequent election must contain the signatures of a number of qualified voters of the municipality equal to at least 20 percent of the number of voters who voted in the most recent municipal election.  Any subsequent election must be held at the next general municipal election that occurs after the petition is filed.

(e)  If the governing body of a municipality that has operated under this chapter for at least one year receives a petition requesting an election to repeal this chapter that is signed by at least 10 percent of the qualified voters of the municipality, the governing body shall order an election submitting to the voters the question on whether this chapter should be repealed.  If a majority of the qualified voters vote to repeal this chapter, this chapter is void in that municipality.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.005.  STATUS OF EMPLOYEES IF CHAPTER ADOPTED.  (a) Each fire fighter or police officer serving in a municipality that adopts this chapter and who has been in the service of the municipality for more than six months at the time this chapter is adopted and who is entitled to civil service classification has the status of a civil service employee and is not required to take a competitive examination to remain in the position the person occupies at the time of the adoption.

(b)  In a municipality that adopts this chapter, an employee of the fire department whose primary duties are to provide emergency medical services for the municipality is considered to be a fire fighter who is a member of the fire department performing fire medical emergency technology, entitled to civil service protection, and covered by this chapter.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Amended by:

Acts 2005, 79th Leg., Ch. 1034 (H.B. 1126), Sec. 7, eff. September 1, 2005.


Text of section as added by Acts 2005, 79th Leg., R.S., Ch. 129 (H.B. 263), Sec. 1

4

For text of section as added by Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 1, see other Sec. 143.0051.

Sec. 143.0051. STATUS OF EMPLOYEES IN CERTAIN FIRE DEPARTMENTS. (a) This section applies only to a fire department employee employed by a municipality with a population of 220,000 or more. This section does not apply to a fire department employee employed by a municipality:

(1) that has adopted Chapter 174; or

(2) to which Subchapter H or I applies.

(b) Notwithstanding any other provision of this chapter, a previously non-classified fire department employee who serves in a position described by Section 143.003(4)(B), (D), (G), or (J) has the status of a civil service employee and is not required to take a competitive examination to remain in the employee's position if:

(1) the employee was appointed to that position on or before May 1, 2005, and was serving in that position on the date described by Subsection (c); and

(2) the municipality's governing body by ordinance amends the municipality's existing classification of fire department employees to include the employee's position as provided by Section 143.021.

(c) The civil service status of an employee to which Subsection (b) applies is effective on the date that the ordinance amending the municipality's classification system to include the employee's position takes effect.

(d) A fire department employee who has civil service status under Subsection (b) may be promoted only:

(1) by competitive examination in accordance with the competitive civil service procedures prescribed in this chapter; and

(2) within the employee's existing division.

(e) A fire department employee who has civil service status under Subsection (b) may not:

(1) supervise or evaluate classified civil service personnel assigned to fire suppression or emergency medical operations; or

(2) laterally transfer to fire suppression or

5

emergency medical operations.

(f)  If a fire department employee who has civil service status under Subsection (b) leaves the employee's position for any reason, a person selected to fill that position must be selected in accordance with the competitive civil service procedures prescribed in this chapter.

Added by Acts 2005, 79th Leg., Ch. 129 (H.B. 263), Sec. 1, eff. May 24, 2005.


Text of section as added by Acts 2005, 79th Leg., R.S., Ch. 869 (S.B. 1050), Sec. 1

For text of section as added by Acts 2005, 79th Leg., Ch. 129 (H.B. 263), Sec. 1, see other Sec. 143.0051.

Sec.  143.0051.  STATUS  OF  EMPLOYEES  IN  CERTAIN  FIRE DEPARTMENTS.  (a)  This section applies only to a fire department employee employed by a municipality with a population of 150,000 or more and with a governing body of five or fewer members.

(b)  Notwithstanding any other provision of this chapter, a previously nonclassified fire department employee who serves in a position described by Section 143.003(4)(B), (D), (G), or (J) has the status of a civil service employee and is not required to take a competitive examination to remain in the employee's position if:

(1)  the employee was appointed to that position on or before May 1, 2005, and was serving in that position on the date described by Subsection (c); and

(2)  the municipality's governing body by ordinance amends the municipality's existing classification of fire department employees to include the employee's position as provided by Section 143.021.

(c)  The civil service status of an employee to which Subsection (b) applies is effective on the date that the ordinance amending the municipality's classification system to include the employee's position takes effect.

(d)  A fire department employee who has civil service status under Subsection (b) may be promoted only:

(1)  by competitive examination in accordance with the competitive civil service procedures prescribed in this chapter;

6

and

(2)  within the employee's existing division.

(e)  A fire department employee who has civil service status under Subsection (b) may not:

(1)  supervise or evaluate classified civil service personnel assigned to fire suppression or emergency medical operations; or

(2)  laterally transfer to fire suppression or emergency medical operations.

(f)  If a fire department employee who has civil service status under Subsection (b) leaves the employee's position for any reason, a person selected to fill that position must be selected in accordance with the competitive civil service procedures prescribed in this chapter.

Added by Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 1, eff. September 1, 2005.


Sec.  143.0052.  FEE FOR EMERGENCY MEDICAL SERVICES. (a)  This section applies only to a municipality that:

(1)  has a population of more than 220,000 and less than 250,000;

(2)  is located in a county in which another municipality that has a population of more than one million is predominately located; and

(3)  whose emergency medical services are administered by a fire department.

(b)  By resolution of its governing body, a municipality may establish a monthly fee for the costs of emergency medical services, including salary and overtime related to medical personnel.  This fee is applicable to each and every customer served by a municipal water account and may be collected in conjunction with the bill for water services.

(c)  A municipality acting under this section supersedes any authority established under Chapter 286, Health and Safety Code.

Added by Acts 2009, 81st Leg., R.S., Ch. 1415 (S.B. 1896), Sec. 1, eff. September 1, 2009.

Amended by:

Acts 2011, 82nd Leg., R.S., Ch. 1163 (H.B. 2702), Sec. 69, eff. September 1, 2011.

Sec. 143.006. IMPLEMENTATION: COMMISSION. (a) On adoption of this chapter, the Fire Fighters' and Police Officers' Civil Service Commission is established in the municipality. The chief executive of the municipality shall appoint the members of the commission within 60 days after the date this chapter is adopted. Within 30 days after the date the municipality's first full fiscal year begins after the date of the adoption election, the governing body of the municipality shall implement this chapter.

(b) The commission consists of three members appointed by the municipality's chief executive and confirmed by the governing body of the municipality. Members serve staggered three-year terms with the term of one member expiring each year. If a vacancy occurs or if an appointee fails to qualify within 10 days after the date of appointment, the chief executive shall appoint a person to serve for the remainder of the unexpired term in the same manner as the original appointment.

(c) A person appointed to the commission must:

(1) be of good moral character;

(2) be a United States citizen;

(3) be a resident of the municipality who has resided in the municipality for more than three years;

(4) be over 25 years of age; and

(5) not have held a public office within the preceding three years.

(c-1) Notwithstanding Subsection (c)(5), the municipality's chief executive may reappoint a commission member to consecutive terms. A commission member may not be reappointed to more than a third consecutive term unless the member's reappointment to a fourth or subsequent consecutive term is confirmed by a two-thirds majority of all the members of the municipality's governing body.

(c-2) Subsection (c)(5) does not prohibit the municipality's chief executive from appointing a former commission member to the commission if the only public office held by the

former member within the preceding three years is membership on:

(1)  the commission; or

(2)  the commission and the municipality's civil service board for employees other than police officers and firefighters through a joint appointment to the commission and board.

(c-3)  Subsections (c-1) and (c-2) do not apply to a municipality with a population of 1.5 million or more.

(d)  In making initial appointments, the chief executive shall designate one member to serve a one-year term, one member to serve a two-year term, and one member to serve a three-year term. If a municipality has a civil service commission immediately before this chapter takes effect in that municipality, that civil service commission shall continue as the commission established by this section and shall administer the civil service system as prescribed by this chapter.  As the terms of the members of the previously existing commission expire, the chief executive shall appoint members as prescribed by this section.  If necessary to create staggered terms as prescribed by this section, the chief executive shall appoint the initial members, required to be appointed under this chapter, to serve terms of less than three years.

(e)  Initial members shall elect a chairman and a vice-chairman within 10 days after the date all members have qualified.  Each January, the members shall elect a chairman and a vice-chairman.

(f)  The governing body of the municipality shall provide to the commission adequate and suitable office space in which to conduct business.

(g)  The chief executive of a municipality commits an offense if the chief executive knowingly or intentionally fails to appoint the initial members of the commission within the 60-day period prescribed by Subsection (a). An offense under this subsection is a misdemeanor punishable by a fine of not less than $100 or more than $200.  Each day after the 60-day period that the chief executive knowingly or intentionally fails to make a required appointment constitutes a separate offense.

(h)  The chief executive of a municipality or a municipal

official commits an offense if the person knowingly or intentionally refuses to implement this chapter or attempts to obstruct the enforcement of this chapter. An offense under this subsection is a misdemeanor punishable by a fine of not less than $100 or more than $200.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Amended by:

Acts 2005, 79th Leg., Ch. 475 (H.B. 150), Sec. 1, eff. June 17, 2005.


Sec. 143.007. REMOVAL OF COMMISSION MEMBER. (a) If at a meeting held for that purpose the governing body of the municipality finds that a commission member is guilty of misconduct in office, the governing body may remove the member. The member may request that the meeting be held as an open hearing in accordance with Chapter 551, Government Code.

(b) If a commission member is indicted or charged by information with a criminal offense involving moral turpitude, the member shall be automatically suspended from office until the disposition of the charge. Unless the member pleads guilty or is found to be guilty, the member shall resume office at the time of disposition of the charge.

(c) The governing body may appoint a substitute commission member during a period of suspension. If a member pleads guilty to or is found to be guilty of a criminal offense involving moral turpitude, the governing body shall appoint a replacement commission member to serve the remainder of the disqualified member's term of office.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(82), eff. Sept. 1, 1995.


Sec. 143.008. ADOPTION AND PUBLICATION OF RULES. (a) A commission shall adopt rules necessary for the proper conduct of commission business.

(b) The commission may not adopt a rule permitting the appointment or employment of a person who is:

(1) without good moral character;

10

(2)  physically or mentally unfit;  or

(3)  incompetent to discharge the duties of the appointment or employment.

(c)  The commission shall adopt rules that prescribe cause for removal or suspension of a fire fighter or police officer.  The rules must comply with the grounds for removal prescribed by Section 143.051.

(d)  The commission shall publish each rule it adopts and each classification and seniority list for the fire and police departments.  The rules and lists shall be made available on demand. A rule is considered to be adopted and sufficiently published if the commission adopts the rule by majority vote and causes the rule to be written, typewritten, or printed.  Publication in a newspaper is not required and the governing body of the municipality is not required to act on the rule.

(e)  A rule is not valid and binding on the commission until the commission:

(1)  mails a copy of the rule to the commissioner, if the municipality has an elected commissioner, and to department heads of the fire and police departments;

(2)  posts a copy of the rule for a seven-day period at a conspicuous place in the central fire and police stations;  and

(3)  mails a copy of the rule to each branch fire station.

(f)  The director shall keep copies of all rules for free distribution to members of the fire and police departments who request copies and for inspection by any interested person.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.009.  COMMISSION INVESTIGATIONS AND INSPECTIONS. (a)  The commission or a commission member designated by the commission may investigate and report on all matters relating to the enforcement and effect of this chapter and any rules adopted under this chapter and shall determine if the chapter and rules are being obeyed.

(b) During an investigation, the commission or the commission member may:

11

(1)  administer oaths;

(2)  issue subpoenas to compel the attendance of witnesses and the production of books, papers, documents, and accounts relating to the investigation;  and

(3)  cause the deposition of witnesses residing inside or outside the state.

(c)  A deposition taken in connection with an investigation under this section must be taken in the manner prescribed by law for taking a similar deposition in a civil action in federal district court.

(d)  An oath administered or a subpoena issued under this section has the same force and effect as an oath administered by a magistrate in the magistrate's judicial capacity.

(e)  A person who fails to respond to a subpoena issued under this section commits an offense punishable as prescribed by Section 143.016.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.010.  COMMISSION APPEAL PROCEDURE.  (a)  Except as otherwise provided by this chapter, if a fire fighter or police officer wants to appeal to the commission from an action for which an appeal or review is provided by this chapter, the fire fighter or police officer need only file an appeal with the commission within 10 days after the date the action occurred.

(b)  The appeal must include the basis for the appeal and a request for a commission hearing.  The appeal must also contain a statement denying the truth of the charge as made, a statement taking exception to the legal sufficiency of the charge, a statement alleging that the recommended action does not fit the offense or alleged offense, or a combination of these statements.

(c)  In each hearing, appeal, or review of any kind in which the commission performs an adjudicatory function, the affected fire fighter or police officer is entitled to be represented by counsel or a person the fire fighter or police officer chooses.  Each commission proceeding shall be held in public.

(d)  The commission may issue subpoenas and subpoenas duces tecum for the attendance of witnesses and for the production of

documentary material.

(e)  The affected fire fighter or police officer may request the commission to subpoena any books, records, documents, papers, accounts, or witnesses that the fire fighter or police officer considers pertinent to the case.  The fire fighter or police officer must make the request before the 10th day before the date the commission hearing will be held.  If the commission does not subpoena the material, the commission shall, before the third day before the date the hearing will be held, make a written report to the fire fighter or police officer stating the reason it will not subpoena the requested material.  This report shall be read into the public record of the commission hearing.

(f)  Witnesses may be placed under the rule at the commission hearing.

(g)  The commission shall conduct the hearing fairly and impartially as prescribed by this chapter and shall render a just and fair decision.  The commission may consider only the evidence submitted at the hearing.

(h)  The commission shall maintain a public record of each proceeding with copies available at cost.

(i)  In addition to the requirements prescribed by this section, an appeal to the commission in a municipality with a population of 1.5 million or more must meet the requirements prescribed by Section 143.1015.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 25(b), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 1248, Sec. 48, eff. Sept. 1, 1989.


Sec. 143.011.  DECISIONS AND RECORDS.  (a)  Each concurring commission member shall sign a decision issued by the commission.

(b)  The commission shall keep records of each hearing or case that comes before the commission.

(c)  Each rule, opinion, directive, decision, or order issued by the commission must be written and constitutes a public record that the commission shall retain on file.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.012. DIRECTOR. (a) On adoption of this chapter, the office of Director of Fire Fighters' and Police Officers' Civil Service is established in the municipality. The commission shall appoint the director. The director shall serve as secretary to the commission and perform work incidental to the civil service system as required by the commission. The commission may remove the director at any time.

(b) A person appointed as director must meet each requirement for appointment to the commission prescribed by Section 143.006(c), except that in a municipality with a population of less than 1.5 million, the person is not required to meet the local residency requirement.

(c) A person appointed as director may be a commission member, a municipal employee, or some other person.

(d) The municipality's governing body shall determine the salary, if any, to be paid to the director.

(e) If, immediately before this chapter takes effect in a municipality, the municipality has a duly and legally constituted director of civil service, regardless of title, that director shall continue in office as the director established by this section and shall administer the civil service system as prescribed by this chapter.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1999, 76th Leg., ch. 355, Sec. 1, eff. Sept. 1, 1999.


Sec. 143.013. APPOINTMENT AND REMOVAL OF DEPARTMENT HEAD. (a) Unless elected, each department head is:

(1) appointed by the municipality's chief executive and confirmed by the municipality's governing body;  or

(2) in a municipality having an elected fire or police commissioner, appointed by the fire or police commissioner in whose department the vacancy exists and confirmed by the municipality's governing body.

(b) A person appointed as head of a fire department must be eligible for certification by the Texas Commission on Fire Protection at the intermediate level or its equivalent as determined by that commission and must have served as a fully paid

14

fire fighter for at least five years.  A person appointed as head of a police department must be eligible for certification by the Texas Commission on Law Enforcement at the intermediate level or its equivalent as determined by that commission and must have served as a bona fide law enforcement officer for at least five years.

(c)  Except as provided by Subsection (d), if a person is removed from the position of department head, the person shall be reinstated in the department and placed in a position with a rank not lower than that held by the person immediately before appointment as department head.  The person retains all rights of seniority in the department.

(d)  If a person serving as department head is charged with an offense in violation of civil service rules and is dismissed from the civil service or discharged from his position as department head, the person has the same rights and privileges of a hearing before the commission and in the same manner and under the same conditions as a classified employee.  If the commission finds that the charges are untrue or unfounded, the person shall immediately be restored to the same classification that the person held before appointment as department head.  The person has all the rights and privileges of the prior position according to seniority and shall be paid his full salary for the time of suspension.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.
Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.48, eff. May 18, 2013.


Sec. 143.014.  APPOINTMENT AND REMOVAL OF PERSON CLASSIFIED IMMEDIATELY BELOW DEPARTMENT HEAD. (a)  This section does not apply to a municipality with a population of 1.5 million or more.

(b)  If approved by the governing body of the municipality by resolution or ordinance, the head of a fire or police department in the municipality in which at least four classifications exist below the classification of department head may appoint each person occupying an authorized position in the classification immediately below that of department head, as prescribed by this section.  The classification immediately below that of department head may

include a person who has a different title but has the same pay grade.

(c)  In a police department, the total number of persons appointed to the classification immediately below that of department head may not exceed the total number of persons, plus one, serving in that classification on January 1, 1983.  In a fire department in a municipality having fewer than 300 certified fire fighters, the department head may appoint not more than one person to the classification immediately below that of department head. If a municipality has 300 to 600 certified fire fighters, the department head may appoint two persons to the classification.  If a municipality has more than 600 certified fire fighters, the department head may appoint three persons to the classification. This subsection does not apply to a municipality that has adopted The Fire and Police Employee Relations Act (Article 5154c-1, Vernon's Texas Civil Statutes) unless the municipality specifically adopts the appointment procedure prescribed by this subsection through the collective bargaining process.

(d)  A person appointed to a position in the classification immediately below that of the head of the police department must:

(1)  be employed by the municipality's police department as a sworn police officer;

(2)  have at least two years' continuous service in that department as a sworn police officer;  and

(3)  meet the requirements for appointment as head of a police department prescribed by Section 143.013(b).

(e)  A person appointed to a position in the classification immediately below that of the head of the fire department must:

(1)  be employed by the municipality's fire department;

(2)  have a permanent classification in at least an officer level;  and

(3)  meet the requirements for appointment as head of a fire department prescribed by Section 143.013(b).

(f)  The department head shall make each appointment under this section within 90 days after the date a vacancy occurs in the position.

(g)  A person appointed under this section serves at the

16

pleasure of the department head.  A person who is removed from the position by the department head shall be reinstated in the department and placed in the same classification, or its equivalent, that the person held before appointment.  The person retains all rights of seniority in the department.

(h)  If a person appointed under this section is charged with an offense in violation of civil service rules and indefinitely suspended by the department head, the person has the same rights and privileges of a hearing before the commission in the same manner and under the same conditions as a classified employee.  If the commission, a hearing examiner, or a court of competent jurisdiction finds the charges to be untrue or unfounded, the person shall immediately be restored to the same classification, or its equivalent, that the person held before appointment.  The person has all the rights and privileges of the prior position according to seniority, and shall be repaid for any lost wages.

(i)  A person serving under permanent appointment in a position in the classification immediately below that of the department head on September 1, 1983, is not required to meet the requirements of this section or to be appointed or reappointed as a condition of tenure or continued employment.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.015.  APPEAL OF COMMISSION DECISION TO DISTRICT COURT.  (a)  If a fire fighter or police officer is dissatisfied with any commission decision, the fire fighter or police officer may file a petition in district court asking that the decision be set aside.  The petition must be filed within 10 days after the date the final commission decision:

(1)  is sent to the fire fighter or police officer by certified mail;  or

(2)  is personally received by the fire fighter or police officer or by that person's designee.

(b)  An appeal under this section is by trial de novo.  The district court may grant the appropriate legal or equitable relief necessary to carry out the purposes of this chapter.  The relief may include reinstatement or promotion with back pay if an order of

suspension, dismissal, or demotion is set aside.

(c) The court may award reasonable attorney's fees to the prevailing party and assess court costs against the nonprevailing party.

(d) If the court finds for the fire fighter or police officer, the court shall order the municipality to pay lost wages to the fire fighter or police officer.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.016. PENALTY FOR VIOLATION OF CHAPTER. (a) A fire fighter or police officer commits an offense if the person violates this chapter.

(b) An offense under this section or Section 143.009 is a misdemeanor punishable by a fine of not less than $10 or more than $100, confinement in the county jail for not more than 30 days, or both fine and confinement.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


SUBCHAPTER B. CLASSIFICATION AND APPOINTMENT


Sec. 143.021. CLASSIFICATION; EXAMINATION REQUIREMENT. (a) The commission shall provide for the classification of all fire fighters and police officers. The municipality's governing body shall establish the classifications by ordinance. The governing body by ordinance shall prescribe the number of positions in each classification.

(b) Except for the department head and a person the department head appoints in accordance with Section 143.014 or 143.102, each fire fighter and police officer is classified as prescribed by this subchapter and has civil service protection. The failure of the governing body to establish a position by ordinance does not result in the loss of civil service benefits by a person entitled to civil service protection or appointed to the position in substantial compliance with this chapter.

(c) Except as provided by Sections 143.013, 143.014, 143.0251, 143.102, and 143.1251, an existing position or classification or a position or classification created in the

18

future either by name or by increase in salary may be filled only from an eligibility list that results from an examination held in accordance with this chapter.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1995, 74th Leg., ch. 64, Sec. 1, eff. Sept. 1, 1995.


Sec. 143.022.  PHYSICAL REQUIREMENTS AND EXAMINATIONS.  (a) The commission shall set the age and physical requirements for applicants for beginning and promotional positions in accordance with this chapter.  The requirements must be the same for all applicants.

(b)  The commission shall require each applicant for a beginning or a promotional position to take an appropriate physical examination.  The commission may require each applicant for a beginning position to take a mental examination.  The examination shall be administered by a physician, psychiatrist, or psychologist, as appropriate, appointed by the commission.  The municipality shall pay for each examination.

(c)  If an applicant is rejected by the physician, psychiatrist, or psychologist, as appropriate, the applicant may request another examination by a board of three physicians, psychiatrists, or psychologists, as appropriate, appointed by the commission.  The applicant must pay for the board examination.  The board's decision is final.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(b), eff. Aug. 28, 1989.


Sec. 143.023.  ELIGIBILITY FOR BEGINNING POSITION.  (a)  A person may not take an entrance examination for a beginning position in the police department unless the person is at least 18 years of age.  A person may not take an entrance examination for a beginning position in the fire department unless the person is at least 18 years of age but not 36 years of age or older.

(b)  A person may not be certified as eligible for a beginning position in a fire department if the person is 36 years of age or older.

(c)  A person who is 45 years of age or older may not be

19

certified for a beginning position in a police department.

(d)  An applicant may not be certified as eligible for a beginning position with a fire department unless the applicant meets all legal requirements necessary to become eligible for future certification by the Commission on Fire Protection Personnel Standards and Education.

(e)  An applicant may not be certified as eligible for a beginning position with a police department unless the applicant meets all legal requirements necessary to become eligible for future licensing by the Texas Commission on Law Enforcement.

(f)  Each police officer and fire fighter affected by this chapter must be able to read and write English.

(g)  In addition to meeting the requirements prescribed by this section, an applicant for a beginning position in a police department in a municipality with a population of 1.5 million or more must meet the requirements prescribed by Section 143.105.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.
Amended by:

Acts 2005, 79th Leg., Ch. 380 (S.B. 1421), Sec. 1, eff. June 17, 2005.

Acts 2009, 81st Leg., R.S., Ch. 273 (S.B. 461), Sec. 1, eff. May 30, 2009.

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.49, eff. May 18, 2013.


Sec. 143.024.  ENTRANCE EXAMINATION NOTICE. (a)  Before the 10th day before the date an entrance examination is held, the commission shall cause a notice of the examination to be posted in plain view on a bulletin board located in the main lobby of the city hall and in the commission's office.  The notice must show the position to be filled or for which the examination is to be held, and the date, time, and place of the examination.

(b)  The notice required by Subsection (a) must also state the period during which the eligibility list created as a result of the examination will be effective.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.025. ENTRANCE EXAMINATIONS. (a) The commission shall provide for open, competitive, and free entrance examinations to provide eligibility lists for beginning positions in the fire and police departments. The examinations are open to each person who makes a proper application and meets the requirements prescribed by this chapter.

(b) An eligibility list for a beginning position in the fire or police department may be created only as a result of a competitive examination held in the presence of each applicant for the position, except as provided by Subsections (d), (e), and (l). The examination must be based on the person's general knowledge and aptitude and must inquire into the applicant's general education and mental ability. A person may not be appointed to the fire or police department except as a result of the examination.

(c) An applicant may not take an examination unless at least one other applicant taking the examination is present.

(d) Examinations for beginning positions in the fire department may be held at different locations if each applicant takes the same examination and is examined in the presence of other applicants.

(e) This subsection applies only in a municipality to which Subchapter J does not apply. An examination for beginning positions in the police department must be held at one or more locations in the municipality in which the police department is located and may be held at additional locations outside the municipality. An examination held at multiple locations must be administered on the same day and at the same time at each location at which it is given. Only one eligibility list for a police department may be created from that examination, and only one eligibility list may be in effect at a given time. Each applicant who takes the examination for the eligibility list shall:

(1) take the same examination; and

(2) be examined in the presence of other applicants for that eligibility list.

(f) An additional five points shall be added to the examination grade of an applicant who served in the United States

21

armed forces, received an honorable discharge, and made a passing grade on the examination.

(g)  An applicant may not take the examination for a particular eligibility list more than once.

(h)  The commission shall keep each eligibility list for a beginning position in effect for a period of not less than six months or more than 12 months, unless the names of all applicants on the list have been referred to the appropriate department. The commission shall determine the length of the period. The commission shall give new examinations at times the commission considers necessary to provide required staffing for scheduled fire or police training academies.

(i)  The grade to be placed on the eligibility list for each applicant shall be computed by adding an applicant's points under Subsection (f), if any, to the applicant's grade on the written examination. Each applicant's grade on the written examination is based on a maximum grade of 100 percent and is determined entirely by the correctness of the applicant's answers to the questions. The minimum passing grade on the examination is 70 percent. An applicant must pass the examination to be placed on an eligibility list.

(j)  Notwithstanding Subsection (i), each applicant who is either a natural-born or adopted child of a fire fighter who previously suffered a line-of-duty death while covered by this chapter shall be ranked at the top of any eligibility list in which said applicant receives a minimum passing grade on that respective eligibility exam. The deceased fire fighter's applicant child must otherwise satisfy all of the requirements for eligibility for a beginning position in a fire department contained in this chapter. This commission shall promulgate rules to identify and verify each applicant's eligibility for applicability of this subsection.

(k)  This section does not apply to a police department located in a municipality with a population of 1.5 million or more.

(l)  In a municipality with a population of more than 1.3 million and less than 2 million, an examination for a beginning position in the fire department may include testing instruments to

22

be used in addition to the written examination in the establishment of the initial eligibility list.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 756, Sec. 1, 2, eff. Aug. 28, 1989; Acts 1999, 76th Leg., ch. 19, Sec. 1, eff. Sept. 1, 1999; Acts 2003, 78th Leg., ch. 628, Sec. 1, eff. Sept. 1, 2003.
Amended by:

Acts 2005, 79th Leg., Ch. 380 (S.B. 1421), Sec. 2, eff. June 17, 2005.

Acts 2007, 80th Leg., R.S., Ch. 27 (S.B. 339), Sec. 1, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 503 (H.B. 1488), Sec. 1, eff. June 17, 2011.


Sec. 143.0251. REAPPOINTMENT AFTER RESIGNATION. The commission may adopt rules to allow a police officer who voluntarily resigns from the department to be reappointed to the department without taking another departmental entrance examination.

Added by Acts 1995, 74th Leg., ch. 64, Sec. 2, eff. Sept. 1, 1995.


Sec. 143.026. PROCEDURE FOR FILLING BEGINNING POSITIONS. (a) When a vacancy occurs in a beginning position in a fire or police department, the department head shall request in writing from the commission the names of suitable persons from the eligibility list. The director shall certify to the municipality's chief executive the names of the three persons having the highest grades on the eligibility list.

(b) From the three names certified, the chief executive shall appoint the person having the highest grade unless there is a valid reason why the person having the second or third highest grade should be appointed.

(c) If the chief executive does not appoint the person having the highest grade, the chief executive shall clearly set forth in writing the good and sufficient reason why the person having the highest grade was not appointed.

(d) The reason required by Subsection (c) shall be filed

with the commission and a copy provided to the person having the highest grade.  If the chief executive appoints the person having the third highest grade, a copy of the report shall also be furnished to the person having the second highest grade.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.027.  PROBATIONARY PERIOD.

(a)  A person appointed to a beginning position in the fire or police department must serve a probationary period of one year beginning on that person's date of employment as a fire fighter, police officer, or academy trainee.  In a municipality with a population of less than 1.9 million, the commission by rule may extend the probationary period by not more than six months for a person who:

(1)  is not employed by a department in which a collective bargaining agreement or a meet-and-confer agreement currently exists or previously existed; and

(2)  is required to attend a basic training academy for initial certification by the Texas Commission on Fire Protection or the Texas Commission on Law Enforcement.

(b)  During a fire fighter's or police officer's probationary period, the department head shall discharge the person and remove the person from the payroll if the person's appointment was not regular or was not made in accordance with this chapter or the commission rules.

(c)  During a fire fighter's or police officer's probationary period, the person may not be prohibited from joining or required to join an employee organization.  Joining or not joining an employee organization is not a ground for retaining or not retaining a fire fighter or police officer serving a probationary period.

(d)  A fire fighter or police officer who was appointed in substantial compliance with this chapter and who serves the entire probationary period automatically becomes a full-fledged civil service employee and has full civil service protection.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.
Amended by:

Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 2, eff.

24

September 1, 2005.

Acts 2005, 79th Leg., Ch. 909 (H.B. 148), Sec. 1, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 921 (H.B. 3167), Sec. 11.001, eff. September 1, 2007.

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.50, eff. May 18, 2013.


Sec. 143.028.  ELIGIBILITY FOR PROMOTION.  (a)  Except as provided by Sections 143.013 and 143.102, a fire fighter is not eligible for promotion unless the person has served in that fire department in the next lower position or other positions specified by the commission for at least two years at any time before the date the promotional examination is held.  A fire fighter is not eligible for promotion to the rank of captain or its equivalent unless the person has at least four years' actual service in that fire department.

(b)  Except as provided by Sections 143.013 and 143.102, a police officer is not eligible for promotion unless the person has served in that police department in the next lower position or other positions specified by the commission for at least two years immediately before the date the promotional examination is held.  A police officer is not eligible for promotion to the rank of captain or its equivalent unless the person has at least four years' actual service in that police department.

(c)  If a person is recalled on active military duty for not more than 60 months, the two-year service requirements prescribed by Subsections (a) and (b) do not apply and the person is entitled to have time spent on active military duty considered as duty in the respective fire or police department.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.
Amended by:

Acts 2005, 79th Leg., Ch. 833 (S.B. 863), Sec. 2, eff. June 17, 2005.


Sec. 143.029.  PROMOTIONAL EXAMINATION NOTICE.  (a)  Before the 90th day before the date a promotional examination is held, the

commission shall post a notice that lists the sources from which the examination questions will be taken.

(b)  Before the 30th day before the date a promotional examination is held, the commission shall post a notice of the examination in plain view on a bulletin board located in the main lobby of the city hall and in the commission's office.  The notice must show the position to be filled or for which the examination is to be held, and the date, time, and place of the examination.  The commission shall also furnish sufficient copies of the notice for posting in the stations or subdepartments in which the position will be filled.

(c)  The notice required by Subsection (b) may also include the name of each source used for the examination, the number of questions taken from each source, and the chapter used in each source.

(d)  In addition to the notice prescribed by this section, a municipality with a population of 1.5 million or more must post the notice prescribed by Section 143.107.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.030.  ELIGIBILITY FOR FIRE DEPARTMENT PROMOTIONAL EXAMINATION.  (a)  This section does not apply to a municipality with a population of 1.5 million or more.

(b)  Each promotional examination is open to each fire fighter who at any time has continuously held for at least two years a position in the classification that is immediately below, in salary, the classification for which the examination is to be held.

(c)  If the department has adopted a classification plan that classifies positions on the basis of similarity in duties and responsibilities, each promotional examination is open to each fire fighter who has continuously held for at least two years a position at the next lower pay grade, if it exists, in the classification for which the examination is to be held.

(d)  If there are not enough fire fighters in the next lower position with two years' service in that position to provide an adequate number of persons to take the examination, the commission may open the examination to persons in that position with less than

two years' service.  If there is still an insufficient number, the commission may open the examination to persons with at least two years' experience in the second lower position, in salary, to the position for which the examination is to be held.

(e)  If a fire fighter had previously terminated the fire fighter's employment with the department and is subsequently reemployed by the same department, the fire fighter must again meet the two-year service requirement for eligibility to take a promotional examination.  In determining if a fire fighter has met the two-year service requirement, a fire department may not consider service in another fire department.

(f)  This section does not prohibit lateral crossover between classes.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.031.  ELIGIBILITY FOR POLICE DEPARTMENT PROMOTIONAL EXAMINATION.  (a)  Each promotional examination is open to each police officer who for at least two years immediately before the examination date has continuously held a position in the classification that is immediately below, in salary, the classification for which the examination is to be held.

(b)  If the department has adopted a classification plan that classifies positions on the basis of similarity in duties and responsibilities, each promotional examination is open to each police officer who has continuously held for at least two years immediately before the examination date a position at the next lower pay grade, if it exists, in the classification for which the examination is to be held.

(c)  If there are not sufficient police officers in the next lower position with two years' service in that position to provide an adequate number of persons to take the examination, the commission shall open the examination to persons in that position with less than two years' service.  If there is still an insufficient number, the commission may open the examination to persons in the second lower position, in salary, to the position for which the examination is to be held.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.032.  PROMOTIONAL EXAMINATION PROCEDURE.  (a)  The commission shall adopt rules governing promotions and shall hold promotional examinations to provide eligibility lists for each classification in the fire and police departments.  Unless a different procedure is adopted under an alternate promotional system as provided by Section 143.035, the examinations shall be held substantially as prescribed by this section.

(b)(1)  Each eligible promotional candidate shall be given an identical examination in the presence of the other eligible promotional candidates, except that an eligible promotional candidate who is serving on active military duty outside of this state or in a location that is not within reasonable geographic proximity to the location where the examination is being administered is entitled to take the examination outside of the presence of and at a different time than the other candidates and may be allowed to take an examination that is not identical to the examination administered to the other candidates.

(2)  The commission may adopt rules under Subsection (a) providing for the efficient administration of promotional examinations to eligible promotional candidates who are members of the armed forces serving on active military duty.  In adopting the rules, the commission shall ensure that the administration of the examination will not result in unnecessary interference with any ongoing military effort.  The rules shall require that:

(A)  at the discretion of the administering entity, an examination that is not identical to the examination administered to other eligible promotional candidates may be administered to an eligible promotional candidate who is serving on active military duty; and

(B)  if a candidate serving on active military duty takes a promotional examination outside the presence of other candidates and passes the examination, the candidate's name shall be included in the eligibility list of names of promotional candidates who took and passed the examination nearest in time to the time at which the candidate on active military duty took the examination.

28

(c)  The examination must be entirely in writing and may not in any part consist of an oral interview.

(d)  The examination questions must test the knowledge of the eligible promotional candidates about information and facts and must be based on:

(1)  the duties of the position for which the examination is held;

(2)  material that is of reasonably current publication and that has been made reasonably available to each member of the fire or police department involved in the examination; and

(3)  any study course given by the departmental schools of instruction.

(e)  The examination questions must be taken from the sources posted as prescribed by Section 143.029(a).  Fire fighters or police officers may suggest source materials for the examinations.

(f)  The examination questions must be prepared and composed so that the grading of the examination can be promptly completed immediately after the examination is over.

(g)  The director is responsible for the preparation and security of each promotional examination.  The fairness of the competitive promotional examination is the responsibility of the commission, the director, and each municipal employee involved in the preparation or administration of the examination.

(h)  A person commits an offense if the person knowingly or intentionally:

(1)  reveals a part of a promotional examination to an unauthorized person;  or

(2)  receives from an authorized or unauthorized person a part of a promotional examination for unfair personal gain or advantage.

(i)  An offense under Subsection (h) is a misdemeanor punishable by a fine of not less than $1,000, confinement in the county jail for not more than one year, or both the fine and the confinement.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(c), eff. Aug. 28, 1989. Amended by:

Acts 2005, 79th Leg., Ch. 833 (S.B. 863), Sec. 1, eff. June 17, 2005.

Sec. 143.033. PROMOTIONAL EXAMINATION GRADES. (a) The grading of each promotional examination shall begin when one eligible promotional candidate completes the examination. As the eligible promotional candidates finish the examination, the examinations shall be graded at the examination location and in the presence of any candidate who wants to remain during the grading.

(b) Each police officer is entitled to receive one point for each year of seniority as a classified police officer in that department, with a maximum of 10 points. Each fire fighter is entitled to receive one point for each year of seniority in that department, with a maximum of 10 points.

(c) Unless a different procedure is adopted under an alternate promotional system as provided by Section 143.035, the grade that must be placed on the eligibility list for each police officer or fire fighter shall be computed by adding the applicant's points for seniority to the applicant's grade on the written examination, but for a fire fighter applicant only if the applicant scores a passing grade on the written examination. Each applicant's grade on the written examination is based on a maximum grade of 100 points and is determined entirely by the correctness of the applicant's answers to the questions. The passing grade in a municipality with a population of 1.5 million or more is prescribed by Section 143.108. In a municipality with a population of less than 1.5 million, all police officer applicants who receive a grade of at least 70 points shall be determined to have passed the examination and all fire fighter applicants who receive a grade on the written examination of at least 70 points shall be determined to have passed the examination. If a tie score occurs, the commission shall determine a method to break the tie.

(d) Within 24 hours after a promotional examination is held, the commission shall post the individual raw test scores on a bulletin board located in the main lobby of the city hall.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(d), eff. Aug. 28, 1989; Acts

30

1991, 72nd Leg., ch. 713, Sec. 1, eff. Sept. 1, 1991.

Amended by:

Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 3, eff. September 1, 2005.

Sec. 143.034. REVIEW AND APPEAL OF PROMOTIONAL EXAMINATION. (a) On request, each eligible promotional candidate from the fire or police department is entitled to examine the person's promotional examination and answers, the examination grading, and the source material for the examination. If dissatisfied, the candidate may appeal, within five business days, to the commission for review in accordance with this chapter. In computing this period, a Saturday, Sunday, or legal holiday is not considered a business day.

(b) The eligible promotional candidate may not remove the examination or copy a question used in the examination.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(e), eff. Aug. 28, 1989.

Sec. 143.035. ALTERNATE PROMOTIONAL SYSTEM IN POLICE DEPARTMENT. (a) This section does not apply to a municipality that has adopted The Fire and Police Employee Relations Act (Article 5154c-1, Vernon's Texas Civil Statutes).

(b) On the recommendation of the head of the police department and a majority vote of the sworn police officers in the department, the commission may adopt an alternate promotional system to select persons to occupy nonentry level positions other than positions that are filled by appointment by the department head. The promotional system must comply with the requirements prescribed by this section.

(c) The commission shall order the director to conduct an election and to submit the revised promotional system either to all sworn police officers within the rank immediately below the classification for which the promotional examination is to be administered or to all sworn police officers in the department.

(d) The director shall hold the election on or after the 30th day after the date notice of the election is posted at the

department.  The election shall be conducted throughout each regular work shift at an accessible location within the department during a 24-hour period.

(e)  The ballot shall contain the specific amendment to the promotional procedure.  Each sworn police officer shall be given the opportunity to vote by secret ballot "for" or "against" the amendment.

(f)  The revised promotional system must be approved by a majority vote of the sworn police officers voting.  A defeated promotional system amendment may not be placed on a ballot for a vote by the sworn police officers for at least 12 months after the date the prior election was held, but this provision does not apply if the head of the department recommends a different proposal to the commission.

(g)  The commission shall canvass the votes within 30 days after the date the election is held.  An appeal alleging election irregularity must be filed with the commission within five working days after the date the election closes.  If approved by the sworn police officers, the promotional system amendment becomes effective after all election disputes have been ruled on and the election votes have been canvassed by the commission.

(h)  At any time after an alternate promotional system has been adopted under this section and has been in effect for at least 180 days, the department head may petition the commission to terminate the alternate system, and the commission shall terminate the alternate system.

(i)  At any time after an alternate promotional system has been adopted under this section and has been in effect for at least 180 days, a petition signed by at least 35 percent of the sworn police officers may be submitted to the commission asking that the alternate promotional system be reconsidered.  If a petition is submitted, the commission shall, within 60 days after the date the petition is filed, hold an election as prescribed by this section. If a majority of those voting vote to terminate, the commission shall terminate the alternate promotional system.

(j)  If the alternate system is terminated, an additional list may not be created under the alternate system.

(k)  A promotional list may not be created if an election under this section is pending.  An existing eligibility list, whether created under the system prescribed by this chapter or created under an alternate system adopted under this section, may not be terminated before or extended beyond its expiration date.  A person promoted under an alternate system has the same rights and the same status as a person promoted under this chapter even if the alternate system is later terminated.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1993, 73rd Leg., ch. 1018, Sec. 1, eff. Aug. 30, 1993.


Sec. 143.036.  PROCEDURE  FOR  MAKING  PROMOTIONAL APPOINTMENTS.  (a)  When a vacancy occurs in a nonentry position that is not appointed by the department head as provided by Sections 143.014 and 143.102, the vacancy shall be filled as prescribed by this section and Section 143.108, as applicable.  A vacancy in a fire fighter position described by this subsection occurs on the date the position is vacated by:

(1)  resignation;

(2)  retirement;

(3)  death;

(4)  promotion; or

(5)  issuance of an indefinite suspension in accordance with Section 143.052(b).

(b)  If an eligibility list for the position to be filled exists on the date the vacancy occurs, the director, on request by the department head, shall certify to the department head the names of the three persons having the highest grades on that eligibility list.  The commission shall certify the names within 10 days after the date the commission is notified of the vacancy.  If fewer than three names remain on the eligibility list or if only one or two eligible promotional candidates passed the promotional examination, each name on the list must be submitted to the department head.

(c)  In a municipality with a population of less than 1.5 million, the commission shall submit names from an existing eligibility list to the department head until the vacancy is filled

33

or the list is exhausted.

(d)  If an eligibility list does not exist on the date a vacancy occurs or a new position is created, the commission shall hold an examination to create a new eligibility list within 90 days after the date the vacancy occurs or a new position is created.

(e)  If an eligibility list exists on the date a vacancy occurs, the department head shall fill the vacancy by permanent appointment from the eligibility list furnished by the commission within 60 days after the date the vacancy occurs.  If an eligibility list does not exist, the department head shall fill the vacancy by permanent appointment from an eligibility list that the commission shall provide within 90 days after the date the vacancy occurs. This subsection does not apply in a municipality with a population of 1.5 million or more.

(f)  Unless the department head has a valid reason for not appointing the person, the department head shall appoint the eligible promotional candidate having the highest grade on the eligibility list.  If the department head has a valid reason for not appointing the eligible promotional candidate having the highest grade, the department head shall personally discuss the reason with the person being bypassed before appointing another person.  The department head shall also file the reason in writing with the commission and shall provide the person with a copy of the written notice.  On application of the bypassed eligible promotional candidate, the reason the department head did not appoint that person is subject to review by the commission or, on the written request of the person being bypassed, by an independent third party hearing examiner under Section 143.057.

(g)  If a person is bypassed, the person's name is returned to its place on the eligibility list and shall be resubmitted to the department head if a vacancy occurs.  If the department head refuses three times to appoint a person, files the reasons for the refusals in writing with the commission, and the commission does not set aside the refusals, the person's name shall be removed from the eligibility list.

(h)  Each promotional eligibility list remains in existence for one year after the date on which the written examination is

given, unless exhausted. At the expiration of the one-year period, the eligibility list expires and a new examination may be held.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(f), eff. Aug. 28, 1989. Amended by:

Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 4, eff. September 1, 2005.


Sec. 143.037.  RECORD OF CERTIFICATION AND APPOINTMENT.  (a) When a person is certified and appointed to a position in the fire or police department, the director shall forward the appointed person's record to the proper department head.  The director shall also forward a copy of the record to the chief executive and shall retain a copy in the civil service files.

(b)  The record must contain:

(1)  the date notice of examination for the position was posted;

(2)  the date on which the appointed person took the examination;

(3)  the name of each person who conducted the examination;

(4)  the relative position of the appointed person on the eligibility list;

(5)  the date the appointed person took the physical examination, the name of the examining physician, and whether the person was accepted or rejected;

(6)  the date the request to fill the vacancy was made;

(7)  the date the appointed person was notified to report for duty;  and

(8)  the date the appointed person's pay is to start.

(c)  If the director intentionally fails to comply with this section, the commission shall immediately remove the director from office.

(d)  The director's failure to comply with this section does not affect the civil service status of an employee.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.038.  TEMPORARY DUTIES IN HIGHER CLASSIFICATION.
(a)  This section does not apply to a municipality with a population
of 1.5 million or more.

(b)  The department head may designate a person from the next
lower classification to temporarily fill a position in a higher
classification.  The designated person is entitled to the base
salary of the higher position plus the person's own longevity or
seniority pay, educational incentive pay, and certification pay
during the time the person performs the duties.

(c)  The temporary performance of the duties of a higher
position by a person who has not been promoted as prescribed by this
chapter may not be construed as a promotion.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


SUBCHAPTER C. COMPENSATION


Sec. 143.041.  SALARY. (a)  This section does not apply to a
municipality with a population of 1.5 million or more.

(b)  Except as provided by Section 143.038, all fire fighters
or police officers in the same classification are entitled to the
same base salary.

(c)  In addition to the base salary, each fire fighter or
police officer is entitled to each of the following types of pay, if
applicable:

(1)  longevity or seniority pay;

(2)  educational incentive pay as authorized by Section
143.044;

(3)  assignment pay as authorized by Sections 143.042
and 143.043;

(4)  certification  pay  as  authorized  by  Section
143.044;

(5)  shift differential pay as authorized by Section
143.047; and

(6)  fitness incentive pay as authorized by Section
143.044.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended
by Acts 1989, 71st Leg., ch. 1172, Sec. 1, eff. Aug. 28, 1989.

Amended by:

Acts 2005, 79th Leg., Ch. 552 (H.B. 1213), Sec. 1, eff. September 1, 2005.


Sec. 143.042. ASSIGNMENT PAY. (a) This section does not apply to a municipality with a population of 1.5 million or more.

(b) The governing body of a municipality may authorize assignment pay for fire fighters and police officers who perform specialized functions in their respective departments.

(c) The assignment pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the fire or police department.

(d) If the ordinance applies equally to each person who meets the criteria established by the ordinance, the ordinance may provide for payment to each fire fighter and police officer who meets training or education criteria for an assignment or the ordinance may set criteria that provide for payment only to a fire fighter or police officer in a special assignment.

(e) The head of the fire or police department is not eligible for the assignment pay authorized by this section.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.043. FIELD TRAINING OFFICER ASSIGNMENT PAY. (a) In this section, "field training officer" means a member of the police department who is assigned to and performs the duties and responsibilities of the field training officers program.

(b) The governing body of a municipality may authorize assignment pay for field training officers. The assignment pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the police department.

(c) The department head is not eligible for the assignment pay authorized by this section.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.044. CERTIFICATION, EDUCATIONAL INCENTIVE, AND FITNESS INCENTIVE PAY. (a) This section does not apply to a

municipality with a population of 1.5 million or more.

(b)  If each fire fighter or police officer in a municipality is afforded an opportunity to qualify for certification, the municipality's governing body may authorize certification pay to those fire fighters who meet the requirements for certification set by the Texas Commission on Fire Protection or for those police officers who meet the requirements for certification set by the Texas Commission on Law Enforcement.

(c)  If the criteria for educational incentive pay are clearly established, are in writing, and are applied equally to each fire fighter or police officer in a municipality who meets the criteria, the municipality's governing body may authorize educational incentive pay for each fire fighter or police officer who has successfully completed courses at an accredited college or university.

(d)  If the criteria for fitness incentive pay are clearly established, are in writing, and are applied equally to each fire fighter or police officer in a municipality who meets the criteria, the municipality's governing body may authorize fitness incentive pay for each fire fighter or police officer who successfully meets the criteria.

(e)  The certification pay, educational incentive pay, and fitness incentive pay are in addition to a fire fighter's or police officer's regular pay.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Amended by:

Acts 2005, 79th Leg., Ch. 552 (H.B. 1213), Sec. 2, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 552 (H.B. 1213), Sec. 3, eff. September 1, 2005.

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.51, eff. May 18, 2013.


Sec. 143.045.  ACCUMULATION AND PAYMENT OF SICK LEAVE.  (a) A permanent or temporary fire fighter or police officer is allowed sick leave with pay accumulated at the rate of 1-1/4 full working days for each full month employed in a calendar year, so as to total

15 working days to a person's credit each 12 months.

(b)  A fire fighter or police officer may accumulate sick leave without limit and may use the leave if unable to work because of a bona fide illness.  If an ill fire fighter or police officer exhausts the sick leave and can conclusively prove that the illness was incurred in the performance of duties, an extension of sick leave shall be granted.

(c)  Except as otherwise provided by Section 143.116, a fire fighter or police officer who leaves the classified service for any reason is entitled to receive in a lump-sum payment the full amount of the person's salary for accumulated sick leave if the person has accumulated not more than 90 days of sick leave.  If a fire fighter or police officer has accumulated more than 90 working days of sick leave, the person's employer may limit payment to the amount that the person would have received if the person had been allowed to use 90 days of accumulated sick leave during the last six months of employment.  The lump-sum payment is computed by compensating the fire fighter or police officer for the accumulated time at the highest permanent pay classification for which the person was eligible during the last six months of employment. The fire fighter or police officer is paid for the same period for which the person would have been paid if the person had taken the sick leave but does not include additional holidays and any sick leave or vacation time that the person might have accrued during the 90 days.

(d)  To facilitate the settlement of the accounts of deceased fire fighters and police officers, all unpaid compensation, including all accumulated sick leave, due at the time of death to an active fire fighter or police officer who dies as a result of a line-of-duty injury or illness, shall be paid to the persons in the first applicable category of the following prioritized list:

(1)  to the beneficiary or beneficiaries the fire fighter or police officer designated in writing to receive the compensation and filed with the commission before the person's death;

(2)  to the fire fighter's or police officer's widow or widower;

(3)  to the fire fighter's or police officer's child or

children and to the descendants of a deceased child, by representation;

      (4)  to the fire fighter's or police officer's parents or to their survivors; or

      (5)  to the properly appointed legal representative of the fire fighter's or police officer's estate, or in the absence of a representative, to the person determined to be entitled to the payment under the state law of descent and distribution.

(e)  Payment of compensation to a person in accordance with Subsection (d) is a bar to recovery by another person.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.046.  VACATIONS.  (a)  Each fire fighter or police officer is entitled to earn a minimum of 15 working days' vacation leave with pay in each year.

(b)  In computing the length of time a fire fighter or police officer may be absent from work on vacation leave, only those calendar days during which the person would be required to work if not on vacation may be counted as vacation days.

(c)  Unless approved by the municipality's governing body, a fire fighter or police officer may not accumulate vacation leave from year to year.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.047.  SHIFT DIFFERENTIAL PAY.  (a)  The governing body of a municipality may authorize shift differential pay for fire fighters and police officers who work a shift in which more than 50 percent of the time worked is after 6 p.m. and before 6 a.m.

(b)  The shift differential pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the fire or police department.

Added by Acts 1989, 71st Leg., ch. 1172, Sec. 3, eff. Aug. 28, 1989.


SUBCHAPTER D. DISCIPLINARY ACTIONS


Sec. 143.051.  CAUSE FOR REMOVAL OR SUSPENSION.  A commission rule prescribing cause for removal or suspension of a

fire fighter or police officer is not valid unless it involves one or more of the following grounds:

(1)  conviction of a felony or other crime involving moral turpitude;

(2)  violations of a municipal charter provision;

(3)  acts of incompetency;

(4)  neglect of duty;

(5)  discourtesy to the public or to a fellow employee while the fire fighter or police officer is in the line of duty;

(6)  acts showing lack of good moral character;

(7)  drinking intoxicants while on duty or intoxication while off duty;

(8)  conduct prejudicial to good order;

(9)  refusal or neglect to pay just debts;

(10)  absence without leave;

(11)  shirking duty or cowardice at fires, if applicable; or

(12)  violation of an applicable fire or police department rule or special order.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.052.  DISCIPLINARY SUSPENSIONS.  (a)  This section does not apply to a municipality with a population of 1.5 million or more.

(b)  The head of the fire or police department may suspend a fire fighter or police officer under the department head's supervision or jurisdiction for the violation of a civil service rule.  The suspension may be for a reasonable period not to exceed 15 calendar days or for an indefinite period.  An indefinite suspension is equivalent to dismissal from the department.

(c)  If the department head suspends a fire fighter or police officer, the department head shall, within 120 hours after the hour of suspension, file a written statement with the commission giving the reasons for the suspension.  The department head shall immediately deliver a copy of the statement in person to the suspended fire fighter or police officer.

(d)  The copy of the written statement must inform the

suspended fire fighter or police officer that if the person wants to appeal to the commission, the person must file a written appeal with the commission within 10 days after the date the person receives the copy of the statement.

(e)  The written statement filed by the department head with the commission must point out each civil service rule alleged to have been violated by the suspended fire fighter or police officer and must describe the alleged acts of the person that the department head contends are in violation of the civil service rules.  It is not sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated.

(f)  If the department head does not specifically point out in the written statement the act or acts of the fire fighter or police officer that allegedly violated the civil service rules, the commission shall promptly reinstate the person.

(g)  If offered by the department head, the fire fighter or police officer may agree in writing to voluntarily accept, with no right of appeal, a suspension of 16 to 90 calendar days for the violation of a civil service rule.  The fire fighter or police officer must accept the offer within five working days after the date the offer is made.  If the person refuses the offer and wants to appeal to the commission, the person must file a written appeal with the commission within 15 days after the date the person receives the copy of the written statement of suspension.

(h)  In the original written statement and charges and in any hearing conducted under this chapter, the department head may not complain of an act that occurred earlier than the 180th day preceding the date the department head suspends the fire fighter or police officer. If the act is allegedly related to criminal activity including the violation of a federal, state, or local law for which the fire fighter or police officer is subject to a criminal penalty, the department head may not complain of an act that is discovered earlier than the 180th day preceding the date the department head suspends the fire fighter or police officer.  The department head must allege that the act complained of is related to criminal activity.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended

by Acts 1989, 71st Leg., ch. 1, Sec. 26(g), eff. Aug. 28, 1989.

Sec. 143.053. APPEAL OF DISCIPLINARY SUSPENSION. (a) This section does not apply to a municipality with a population of 1.5 million or more.

(b) If a suspended fire fighter or police officer appeals the suspension to the commission, the commission shall hold a hearing and render a decision in writing within 30 days after the date it receives notice of appeal. The suspended person and the commission may agree to postpone the hearing for a definite period.

(c) In a hearing conducted under this section, the department head is restricted to the department head's original written statement and charges, which may not be amended.

(d) The commission may deliberate the decision in closed session but may not consider evidence that was not presented at the hearing. The commission shall vote in open session.

(e) In its decision, the commission shall state whether the suspended fire fighter or police officer is:

(1) permanently dismissed from the fire or police department;

(2) temporarily suspended from the department; or

(3) restored to the person's former position or status in the department's classified service.

(f) If the commission finds that the period of disciplinary suspension should be reduced, the commission may order a reduction in the period of suspension. If the suspended fire fighter or police officer is restored to the position or class of service from which the person was suspended, the fire fighter or police officer is entitled to:

(1) full compensation for the actual time lost as a result of the suspension at the rate of pay provided for the position or class of service from which the person was suspended; and

(2) restoration of or credit for any other benefits lost as a result of the suspension, including sick leave, vacation leave, and service credit in a retirement system. Standard payroll deductions, if any, for retirement and other benefits restored

shall be made from the compensation paid, and the municipality shall make its standard corresponding contributions, if any, to the retirement system or other applicable benefit systems.

(g)  The commission may suspend or dismiss a fire fighter or police officer only for violation of civil service rules and only after a finding by the commission of the truth of specific charges against the fire fighter or police officer.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1999, 76th Leg., ch. 740, Sec. 1, eff. Sept. 1, 1999.


Sec. 143.054.  DEMOTIONS.  (a)  If the head of the fire or police department wants a fire fighter or police officer under his supervision or jurisdiction to be involuntarily demoted, the department head may recommend in writing to the commission that the commission demote the fire fighter or police officer.

(b)  The department head must include in the recommendation for demotion the reasons the department head recommends the demotion and a request that the commission order the demotion.  The department head must immediately furnish a copy of the recommendation in person to the affected fire fighter or police officer.

(c)  The commission may refuse to grant the request for demotion.  If the commission believes that probable cause exists for ordering the demotion, the commission shall give the fire fighter or police officer written notice to appear before the commission for a public hearing at a time and place specified in the notice.  The commission shall give the notice before the 10th day before the date the hearing will be held.

(d)  The fire fighter or police officer is entitled to a full and complete public hearing, and the commission may not demote a fire fighter or police officer without that public hearing.

(e)  A voluntary demotion in which the fire fighter or police officer has accepted the terms of the demotion in writing is not subject to this section.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.055.  UNCOMPENSATED DUTY OF POLICE OFFICERS.  (a)

44

This section does not apply to a municipality with a population of 1.5 million or more.

(b)  In this section, "uncompensated duty" means days of police work without pay that are in addition to regular or normal work days.

(c)  The head of the police department may assign a police officer under his jurisdiction or supervision to uncompensated duty.  The department head may not impose uncompensated duty unless the police officer agrees to accept the duty.  If the police officer agrees to accept uncompensated duty, the department head shall give the person a written statement that specifies the date or dates on which the person will perform uncompensated duty.

(d)  Uncompensated duty may be in place of or in combination with a period of disciplinary suspension without pay.  If uncompensated duty is combined with a disciplinary suspension, the total number of uncompensated days may not exceed 15.

(e)  A police officer may not earn or accrue any wage, salary, or benefit arising from length of service while the person is suspended or performing uncompensated duty.  The days on which a police officer performs assigned uncompensated duty may not be taken into consideration in determining eligibility for a promotional examination.  A disciplinary suspension does not constitute a break in a continuous position or in service in the department in determining eligibility for a promotional examination.

(f)  Except as provided by this section, a police officer who performs assigned uncompensated duty retains all rights and privileges of the person's position in the police department and of the person's employment by the municipality.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.056.  PROCEDURES AFTER FELONY INDICTMENT OR MISDEMEANOR COMPLAINT.  (a)  If a fire fighter or police officer is indicted for a felony or officially charged with the commission of a Class A or B misdemeanor, the department head may temporarily suspend the person with or without pay for a period not to exceed 30 days after the date of final disposition of the specified felony

indictment or misdemeanor complaint.

(b)  The department head shall notify the suspended fire fighter or police officer in writing that the person is being temporarily suspended for a specific period with or without pay and that the temporary suspension is not intended to reflect an opinion on the merits of the indictment or complaint.

(c)  If the action directly related to the felony indictment or misdemeanor complaint occurred or was discovered on or after the 180th day before the date of the indictment or complaint, the department head may, within 30 days after the date of final disposition of the indictment or complaint, bring a charge against the fire fighter or police officer for a violation of civil service rules.

(d)  A fire fighter or police officer indicted for a felony or officially charged with the commission of a Class A or B misdemeanor who has also been charged by the department head with civil service violations directly related to the indictment or complaint may delay the civil service hearing for not more than 30 days after the date of the final disposition of the indictment or complaint.

(e)  If the department head temporarily suspends a fire fighter or police officer under this section and the fire fighter or police officer is not found guilty of the indictment or complaint in a court of competent jurisdiction, the fire fighter or police officer may appeal to the commission or to a hearing examiner for recovery of back pay.  The commission or hearing examiner may award all or part of the back pay or reject the appeal.

(f)  Acquittal or dismissal of an indictment or a complaint does not mean that a fire fighter or police officer has not violated civil service rules and does not negate the charges that may have been or may be brought against the fire fighter or police officer by the department head.

(g)  Conviction of a felony is cause for dismissal, and conviction of a Class A or B misdemeanor may be cause for disciplinary action or indefinite suspension.

(h)  The department head may order an indefinite suspension based on an act classified as a felony or a Class A or B misdemeanor

after the 180-day period following the date of the discovery of the act by the department if the department head considers delay to be necessary to protect a criminal investigation of the person's conduct. If the department head intends to order an indefinite suspension after the 180-day period, the department head must file with the attorney general a statement describing the criminal investigation and its objectives within 180 days after the date the act complained of occurred.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.057. HEARING EXAMINERS. (a) In addition to the other notice requirements prescribed by this chapter, the written notice for a promotional bypass or the letter of disciplinary action, as applicable, issued to a fire fighter or police officer must state that in an appeal of an indefinite suspension, a suspension, a promotional bypass, or a recommended demotion, the appealing fire fighter or police officer may elect to appeal to an independent third party hearing examiner instead of to the commission. The letter must also state that if the fire fighter or police officer elects to appeal to a hearing examiner, the person waives all rights to appeal to a district court except as provided by Subsection (j).

(b) To exercise the choice of appealing to a hearing examiner, the appealing fire fighter or police officer must submit to the director a written request as part of the original notice of appeal required under this chapter stating the person's decision to appeal to an independent third party hearing examiner.

(c) The hearing examiner's decision is final and binding on all parties. If the fire fighter or police officer decides to appeal to an independent third party hearing examiner, the person automatically waives all rights to appeal to a district court except as provided by Subsection (j).

(d) If the appealing fire fighter or police officer chooses to appeal to a hearing examiner, the fire fighter or police officer and the department head, or their designees, shall first attempt to agree on the selection of an impartial hearing examiner. If the parties do not agree on the selection of a hearing examiner on or

within 10 days after the date the appeal is filed, the director shall immediately request a list of seven qualified neutral arbitrators from the American Arbitration Association or the Federal Mediation and Conciliation Service, or their successors in function.  The fire fighter or police officer and the department head, or their designees, may agree on one of the seven neutral arbitrators on the list.  If they do not agree within five working days after the date they received the list, each party or the party's designee shall alternate striking a name from the list and the name remaining is the hearing examiner.  The parties or their designees shall agree on a date for the hearing.

(e)  The appeal hearing shall begin as soon as the hearing examiner can be scheduled.  If the hearing examiner cannot begin the hearing within 45 calendar days after the date of selection, the fire fighter or police officer may, within two days after learning of that fact, call for the selection of a new hearing examiner using the procedure prescribed by Subsection (d).

(f)  In each hearing conducted under this section, the hearing examiner has the same duties and powers as the commission, including the right to issue subpoenas.

(g)  In a hearing conducted under this section, the parties may agree to an expedited hearing procedure.  Unless otherwise agreed by the parties, in an expedited procedure the hearing examiner shall render a decision on the appeal within 10 days after the date the hearing ended.

(h)  In an appeal that does not involve an expedited hearing procedure, the hearing examiner shall make a reasonable effort to render a decision on the appeal within 30 days after the date the hearing ends or the briefs are filed.  The hearing examiner's inability to meet the time requirements imposed by this section does not affect the hearing examiner's jurisdiction, the validity of the disciplinary action, or the hearing examiner's final decision.

(i)  The hearing examiner's fees and expenses are shared equally by the appealing fire fighter or police officer and by the department.  The costs of a witness are paid by the party who calls the witness.

(j)  A district court may hear an appeal of a hearing examiner's award only on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means.  An appeal must be brought in the district court having jurisdiction in the municipality in which the fire or police department is located.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.
Amended by:

Acts 2005, 79th Leg., Ch. 869 (S.B. 1050), Sec. 5, eff. September 1, 2005.


SUBCHAPTER E. LEAVES


Sec. 143.071.  LEAVES OF ABSENCE;  RESTRICTION PROHIBITED. (a)  If a sufficient number of fire fighters or police officers are available to carry out the normal functions of the fire or police department, a fire fighter or police officer may not be refused a reasonable leave of absence without pay to attend a fire or police school, convention, or meeting if the purpose of the school, convention, or meeting is to secure a more efficient department and better working conditions for department personnel.

(b)  A rule that affects a fire fighter's or police officer's constitutional right to appear before or to petition the legislature may not be adopted.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.072.  MILITARY LEAVE OF ABSENCE.  (a)  On written application of a fire fighter or police officer, the commission shall grant the person a military leave of absence without pay, subject to Section 143.075, to enable the person to enter a branch of the United States military service.  The leave of absence may not exceed the period of compulsory military service or the basic minimum enlistment period for the branch of service the fire fighter or police officer enters.

(b)  The commission shall grant to a fire fighter or police officer a leave of absence for initial training or annual duty in the military reserves or the national guard.

(c)  While a fire fighter or police officer who received a military leave of absence serves in the military, the commission shall fill the person's position in the department in accordance with this chapter.

(d)  On termination of active military service, a fire fighter or police officer who received a military leave of absence under this section is entitled to be reinstated to the position that the person held in the department at the time the leave of absence was granted if the person:

(1)  receives an honorable discharge;

(2)  remains physically and mentally fit to discharge the duties of that position;  and

(3)  makes an application for reinstatement within 90 days after the date the person is discharged from military service.

(e)  On reinstatement, the fire fighter or police officer shall receive full seniority credit for the time spent in the military service.

(f)  If the reinstatement of a fire fighter or police officer who received a military leave of absence causes a surplus in the rank to which the fire fighter or police officer was reinstated, the fire fighter or police officer who has the least seniority in the position shall be returned to the position immediately below the position to which the returning fire fighter or police officer was reinstated.  If a fire fighter or police officer is returned to a lower position in grade or compensation under this subsection without charges being filed against the person for violation of civil service rules, the fire fighter or police officer shall be placed on a position reinstatement list in order of seniority.  Appointments from the reinstatement list shall be made in order of seniority. A person who is not on the reinstatement list may not be appointed to a position to which the list applies until the list is exhausted.

(g)  If a fire fighter or police officer employed by a municipality is called to active military duty for any period, the employing municipality must continue to maintain any health, dental, or life insurance coverage and any health or dental benefits coverage that the fire fighter or police officer received

through the municipality on the date the fire fighter or police officer was called to active military duty until the municipality receives written instructions from the fire fighter or police officer to change or discontinue the coverage.

(h)  In addition to other procedures prescribed by this section, a fire fighter or police officer may, without restriction as to the amount of time, voluntarily substitute for a fire fighter or police officer described by Sections 143.075(b)(1) and (2) who has been called to active federal military duty for a period expected to last 12 months or longer.  A fire fighter or police officer who voluntarily substitutes under this subsection must be qualified to perform the duties of the absent fire fighter or police officer.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2003, 78th Leg., ch. 287, Sec. 1, eff. June 18, 2003.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 704 (H.B. 2806), Sec. 1, eff. September 1, 2009.


This section was amended by the 84th Legislature. Pending publication of the current statutes, see H.B. 1790, 84th Legislature, Regular Session, for amendments affecting this section.

Sec. 143.073.  LINE OF DUTY ILLNESS OR INJURY LEAVE OF ABSENCE.  (a)  A municipality shall provide to a fire fighter or police officer a leave of absence for an illness or injury related to the person's line of duty.  The leave is with full pay for a period commensurate with the nature of the line of duty illness or injury.  If necessary, the leave shall continue for at least one year.

(b)  At the end of the one-year period, the municipality's governing body may extend the line of duty illness or injury leave at full or reduced pay.  If the fire fighter's or police officer's leave is not extended or the person's salary is reduced below 60 percent of the person's regular monthly salary, and the person is a member of a pension fund, the person may retire on pension until able to return to duty.

(c)  If pension benefits are not available to a fire fighter or police officer who is temporarily disabled by a line of duty injury or illness and if the year at full pay and any extensions granted by the governing body have expired, the fire fighter or police officer may use accumulated sick leave, vacation time, and other accrued benefits before the person is placed on temporary leave.

(d)  If a fire fighter or police officer is temporarily disabled by an injury or illness that is not related to the person's line of duty, the person may use all sick leave, vacation time, and other accumulated time before the person is placed on temporary leave.

(e)  After recovery from a temporary disability, a fire fighter or police officer shall be reinstated at the same rank and with the same seniority the person had before going on temporary leave.  Another fire fighter or police officer may voluntarily do the work of an injured fire fighter or police officer until the person returns to duty.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2001, 77th Leg., ch. 683, Sec. 1, eff. Sept. 1, 2001.


Sec. 143.074. REAPPOINTMENT AFTER RECOVERY FROM DISABILITY.  With the commission's approval and if otherwise qualified, a fire fighter or police officer who has been certified by a physician selected by a pension fund as having recovered from a disability for which the person has been receiving a monthly disability pension is eligible for reappointment to the classified position that the person held on the date the person qualified for the monthly disability pension.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2001, 77th Leg., ch. 683, Sec. 2, eff. Sept. 1, 2001.


Sec. 143.075. MILITARY LEAVE TIME ACCOUNTS.  (a) A municipality shall maintain military leave time accounts for the fire and police departments and must maintain a separate military leave time account for each department.

(b)  A military leave time account shall benefit a fire

fighter or police officer who:

(1)  is a member of the Texas National Guard or the armed forces reserves of the United States;

(2)  was called to active federal military duty while serving as a fire fighter or police officer for the municipality; and

(3)  has served on active duty for a period of 3 continuous months or longer.

(c)  A fire fighter or police officer may donate any amount of accumulated vacation, holiday, sick, or compensatory leave time to the military leave time account in that fire fighter's or police officer's department to help provide salary continuation for fire fighters or police officers who qualify as eligible beneficiaries of the account under Subsection (b).  A fire fighter or police officer who wishes to donate time to an account under this section must authorize the donation in writing on a form provided by the fire or police department and approved by the municipality.

(d)  A municipality shall equally distribute the leave time donated to a military leave time account among all fire fighters or police officers who are eligible beneficiaries of that account.  The municipality shall credit and debit the applicable military leave time account on an hourly basis regardless of the cash value of the time donated or used.

Added by Acts 2003, 78th Leg., ch. 287, Sec. 2, eff. June 18, 2003. Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 1041 (H.B. 2924), Sec. 1, eff. June 14, 2013.


SUBCHAPTER F. MISCELLANEOUS PROVISIONS


Sec. 143.081.  DETERMINATION OF PHYSICAL AND MENTAL FITNESS. (a) This section does not apply to a municipality with a population of 1.5 million or more.

(b)  If a question arises as to whether a fire fighter or police officer is sufficiently physically or mentally fit to continue the person's duties, the fire fighter or police officer shall submit to the commission a report from the person's personal

physician, psychiatrist, or psychologist, as appropriate.

(c)  If the commission, the department head, or the fire fighter or police officer questions the report, the commission shall appoint a physician, psychiatrist, or psychologist, as appropriate, to examine the fire fighter or police officer and to submit a report to the commission, the department head, and the person.

(d)  If the report of the appointed physician, psychiatrist, or psychologist, as appropriate, disagrees with the report of the fire fighter's or police officer's personal physician, psychiatrist, or psychologist, as appropriate, the commission shall appoint a three-member board composed of a physician, a psychiatrist, and a psychologist, or any combination, as appropriate, to examine the fire fighter or police officer.  The board's findings as to the person's fitness for duty shall determine the issue.

(e)  The fire fighter or police officer shall pay the cost of the services of the person's personal physician, psychiatrist, or psychologist, as appropriate.  The municipality shall pay all other costs.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(h), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 890, Sec. 1, eff. Aug. 28, 1989.


Sec. 143.082.  EFFICIENCY REPORTS.  (a)  The commission may develop proper procedures and rules for semiannual efficiency reports and grades for each fire fighter or police officer.

(b)  If the commission collects efficiency reports on fire fighters or police officers, the commission shall provide each person with a copy of that person's report.

(c)  Within 10 calendar days after the date a fire fighter or police officer receives the copy of the person's efficiency report, the person may make a statement in writing concerning the efficiency report.  The statement shall be placed in the person's personnel file with the efficiency report.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(i), eff. Aug. 28, 1989.

Sec. 143.083. EMERGENCY APPOINTMENT OF TEMPORARY FIRE FIGHTERS AND POLICE OFFICERS. (a) If a municipality is unable to recruit qualified fire fighters or police officers because of the maximum age limit prescribed by Section 143.023 and the municipality's governing body finds that this inability creates an emergency, the commission shall recommend to the governing body additional rules governing the temporary employment of persons who are 36 years of age or older.

(b) A person employed under this section:

(1) is designated as a temporary employee;

(2) is not eligible for pension benefits;

(3) is not eligible for appointment or promotion if a permanent applicant or employee is available;

(4) is not eligible to become a full-fledged civil service employee; and

(5) must be dismissed before a permanent civil service employee may be dismissed under Section 143.085.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.084. CIVIL SERVICE STATUS AND PENSION BENEFITS FOR CERTAIN FIRE FIGHTERS AND POLICE OFFICERS. (a) Each fire fighter or police officer who, since December 31, 1969, has been continuously employed as a temporary employee under the provision codified as Section 143.083 has the full status of a civil service employee with all the rights and privileges granted by Section 143.005.

(b) A fire fighter or police officer covered by Subsection (a) is eligible to participate in earned pension benefits. The person may buy back service credits in the pension fund in which the permanent fire fighters or police officers in the department have participated since that person's employment. The credits may be bought at a rate determined by the actuary of the affected pension fund.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.085. FORCE REDUCTION AND REINSTATEMENT LIST. (a)

If a municipality's governing body adopts an ordinance that vacates or abolishes a fire or police department position, the fire fighter or police officer who holds that position shall be demoted to the position immediately below the vacated or abolished position.  If one or more positions of equal rank are vacated or abolished, the fire fighters or police officers who have the least seniority in a position shall be demoted to the position immediately below the vacated or abolished position.  If a fire fighter or police officer is demoted under this subsection without charges being filed against the person for violation of civil service rules, the fire fighter or police officer shall be placed on a position reinstatement list in order of seniority.  If the vacated or abolished position is filled or re-created within one year after the date it was vacated or abolished, the position must be filled from the reinstatement list.  Appointments from the reinstatement list shall be made in order of seniority.  A person who is not on the list may not be appointed to the position during the one-year period until the reinstatement list is exhausted.

(b)  If a position in the lowest classification is abolished or vacated and a fire fighter or police officer must be dismissed from the department, the fire fighter or police officer with the least seniority shall be dismissed.  If a fire fighter or police officer is dismissed under this subsection without charges being filed against the person for violation of civil service rules, the fire fighter or police officer shall be placed on a reinstatement list in order of seniority.  Appointments from the reinstatement list shall be made in order of seniority.  Until the reinstatement list is exhausted, a person may not be appointed from an eligibility list.  When a person has been on a reinstatement list for three years, the person shall be dropped from the list but shall be restored to the list at the request of the commission.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.086.  POLITICAL ACTIVITIES.  (a)  While in uniform or on active duty, a fire fighter or police officer may not take an active part in another person's political campaign for an elective position of the municipality.

(b)  For the purposes of this section, a person takes an active part in a political campaign if the person:

        (1)  makes a political speech;

        (2)  distributes a card or other political literature;

        (3)  writes a letter;

        (4)  signs a petition;

        (5)  actively and openly solicits votes;  or

        (6)  makes public derogatory remarks about a candidate for an elective position of the municipality.

(c)  A fire fighter or police officer may not be required to contribute to a political fund or to render a political service to a person or party.  A fire fighter or police officer may not be removed,  reduced  in  classification  or  salary,  or  otherwise prejudiced for refusing to contribute to a political fund or to render a political service.

(d)  A municipal official who attempts to violate Subsection (c) violates this chapter.

(e)  Except  as  expressly  provided  by  this  section,  the commission or the municipality's governing body may not restrict a fire fighter's or police officer's right to engage in a political activity.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.087.  STRIKE PROHIBITION.  (a)  A fire fighter or police officer may not engage in a strike against the governmental agency that employs the fire fighter or police officer.

(b)  In  addition  to  the  penalty  prescribed  by  Section 143.016, if a fire fighter or police officer is convicted of an offense  for  violating  this  section,  the  person  shall  be automatically released and discharged from the fire or police department.  After the person is discharged from the department, the person may not receive any pay or compensation from public funds used to support the fire or police department.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.088.  UNLAWFUL RESIGNATION OR RETIREMENT.  (a) This section does not apply to a municipality with a population of

1.5 million or more.

(b)  A person commits an offense if the person accepts money or anything of value from another person in return for retiring or resigning from the person's civil service position.

(c)  A person commits an offense if the person gives money or anything of value to another person in return for the other person's retirement or resignation from the person's civil service position.

(d)  An offense under this section is a Class A misdemeanor.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.089.  PERSONNEL FILE.  (a)  The director or the director's designee shall maintain a personnel file on each fire fighter and police officer.  The personnel file must contain any letter, memorandum, or document relating to:

(1)  a commendation, congratulation, or honor bestowed on the fire fighter or police officer by a member of the public or by the employing department for an action, duty, or activity that relates to the person's official duties;

(2)  any misconduct by the fire fighter or police officer if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department in accordance with this chapter; and

(3)  the periodic evaluation of the fire fighter or police officer by a supervisor.

(b)  A letter, memorandum, or document relating to alleged misconduct by the fire fighter or police officer may not be placed in the person's personnel file if the employing department determines that there is insufficient evidence to sustain the charge of misconduct.

(c)  A letter, memorandum, or document relating to disciplinary action taken against the fire fighter or police officer or to alleged misconduct by the fire fighter or police officer that is placed in the person's personnel file as provided by Subsection (a)(2) shall be removed from the employee's file if the commission finds that:

(1)  the disciplinary action was taken without just

58

cause; or

(2) the charge of misconduct was not supported by sufficient evidence.

(d) If a negative letter, memorandum, document, or other notation of negative impact is included in a fire fighter's or police officer's personnel file, the director or the director's designee shall, within 30 days after the date of the inclusion, notify the affected fire fighter or police officer. The fire fighter or police officer may, on or before the 15th day after the date of receipt of the notification, file a written response to the negative letter, memorandum, document, or other notation.

(e) The fire fighter or police officer is entitled, on request, to a copy of any letter, memorandum, or document placed in the person's personnel file. The municipality may charge the fire fighter or police officer a reasonable fee not to exceed actual cost for any copies provided under this subsection.

(f) The director or the director's designee may not release any information contained in a fire fighter's or police officer's personnel file without first obtaining the person's written permission, unless the release of the information is required by law.

(g) A fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer. The department shall refer to the director or the director's designee a person or agency that requests information that is maintained in the fire fighter's or police officer's personnel file.

Added by Acts 1989, 71st Leg., ch. 1, Sec. 25(c), eff. Aug. 28, 1989. Amended by Acts 1989, 71st Leg., ch. 1248, Sec. 84, eff. Sept. 1, 1989.

Sec. 143.090. RELEASE OF PHOTOGRAPHS OF POLICE OFFICERS. A department, commission, or municipality may not release a photograph that depicts a police officer unless:

59

(1)  the officer has been charged with an offense by indictment or by information;

(2)  the officer is a party in a civil service hearing or a case before a hearing examiner or in arbitration;

(3)  the photograph is introduced as evidence in a judicial proceeding; or

(4)  the officer gives written consent to the release of the photograph.

Added by Acts 2011, 82nd Leg., R.S., Ch. 300 (H.B. 2006), Sec. 1, eff. September 1, 2011.


SUBCHAPTER G. PROVISIONS APPLICABLE TO MUNICIPALITY WITH POPULATION OF 1.5 MILLION OR MORE AND CERTAIN OTHER MUNICIPALITIES


Sec. 143.101.  SUBCHAPTER APPLICABLE PRIMARILY TO MUNICIPALITY WITH POPULATION OF 1.5 MILLION OR MORE;  APPLICATION OF OTHER SUBCHAPTERS.  (a)  Except as otherwise provided, this subchapter applies only to a municipality with a population of 1.5 million or more.

(b)  Except as otherwise provided, the provisions of Subchapters A-F apply to each municipality covered under this subchapter.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.1014.  NOTICE REQUIREMENT FOR CERTAIN MEETINGS OR HEARINGS.  (a)  The department shall provide to a fire fighter or police officer notice of the time and location of a meeting or hearing not later than the 48th hour before the hour on which the meeting or hearing is held if the meeting or hearing is:

(1)  related to an internal departmental or other municipal investigation of the fire fighter or police officer at which the fire fighter or police officer is required or entitled to be present, including an interrogation;

(2)  related to a grievance filed by the fire fighter or police officer under Sections 143.127 through 143.134;  or

(3)  an opportunity to respond to charges against the fire fighter or police officer before the department terminates the

fire fighter's or police officer's employment.

(b)  A fire fighter or police officer may waive the notice prescribed by this section.

Added by Acts 1989, 71st Leg., ch. 140, Sec. 1, eff. May 25, 1989. Renumbered from 143.1016 by Acts 1990, 71st Leg., 6th C.S., ch. 12, Sec. 2(19), eff. Sept. 6, 1990.


Sec. 143.1015.  COMMISSION APPEAL PROCEDURE;  SUBPOENA REQUEST.  (a)  An appeal by a fire fighter or police officer to the commission from an action for which an appeal or review is provided by this chapter is sufficient if the fire fighter or police officer files it with the commission within 15 days after the date the action occurred.  In an appeal provided by this chapter the commission shall render a decision in writing within 60 days after it received the notice of appeal, unless the provisions of Section 143.1017(d) have been invoked by the fire fighter or police officer.  If the commission does not render a decision in writing within 60 days after the date it receives notice of the appeal, the commission shall sustain the fire fighter's or police officer's appeal.

(b)  On or before the 15th day before the date the appeal hearing will be held, the commission shall notify the fire fighter or police officer of the date on which the commission will hold the hearing.

(c)  The commission may not restrict the fire fighter's or police officer's ability to subpoena relevant witnesses.

(d)  Within three days after the date the fire fighter or police officer receives the commission's written refusal to subpoena materials, the fire fighter or police officer may request in writing that the commission hold a hearing relating to the reasons for that person's subpoena request.

(e)  The hearing relating to the reasons for the fire fighter's or police officer's subpoena request shall be held on the date set for the original appeal hearing.  If the commission overrules the subpoena request at the hearing:

(1)  the commission may hear the fire fighter's or police officer's appeal on that date; or

(2)  if the commission finds that justice is served by a continuance, the commission shall:

(A)  reschedule the hearing to the commission's next regularly scheduled meeting; and

(B)  give the fire fighter or police officer 15 days notice of that date.

(f)  If the commission sustains the fire fighter's or police officer's subpoena request at the hearing, the commission shall:

(1)  reschedule the appeal hearing date to the commission's next regularly scheduled meeting; and

(2)  give the fire fighter or police officer 15 days notice of that date.

(g)  If the commission reschedules a hearing under this section in an appeal relating to an indefinite suspension, the commission shall render a decision in writing within 60 days after the date it receives notice of appeal.

(h)  If the commission does not hold a hearing on the fire fighter's or police officer's subpoena request as prescribed by this section, the commission shall sustain the fire fighter's or police officer's appeal.

(i)  A municipal employee who is subpoenaed to appear in any appeal of a disciplinary decision is entitled to applicable pay for the time the employee is required to be present at the hearing. Witnesses whose testimony relates primarily to the character or reputation of the employee shall be limited by the hearing examiner or commission if the testimony is repetitious or unduly prolongs the hearing.  If the hearing examiner or commission limits the number of character or reputation witnesses, additional witness statements may be presented by affidavit.  The character witnesses are not entitled to applicable pay for the time they are required to be present at the hearing.

(j)  In any hearing relating to the appeal or review of an action of the department head that affects a fire fighter or police officer, the department head shall have the burden of proof.  The department head is required to prove the allegations contained in the written statement, and the department head is restricted to the written statement and charges, which may not be amended.

(k)  In an appeal to a hearing examiner, the director may, within five working days after the date the hearing examiner is chosen, send to the hearing examiner the following:

(1)  the name of the fire fighter or police officer who is appealing;

(2)  the written reasons filed by the department head with the commission in the case of a promotional passover or a recommended demotion;

(3)  the specific provisions of the rules alleged to have been violated in the case of a suspension;  and

(4)  the date and place of the alleged civil service violation.

The director may not send the hearing examiner the department head's original written statement.  The department head shall submit the written statement and charges to the hearing examiner at the hearing.

Added by Acts 1989, 71st Leg., ch. 1, Sec. 25(d), eff. Aug. 28, 1989.  Amended by Acts 1989, 71st Leg., ch. 854, Sec. 3, eff. June 14, 1989;  Acts 1989, 71st Leg., ch. 906, Sec. 1, eff. Aug. 28, 1989.

Sec. 143.1016.  HEARING EXAMINERS.  (a)  In addition to the other notice requirements prescribed by this chapter, the letter of disciplinary action issued to a fire fighter or police officer must state that in an appeal of an indefinite suspension, a suspension, a promotional pass over, or a recommended demotion, the appealing fire fighter or police officer may elect to appeal to an independent third party hearing examiner instead of to the commission.  The letter must also state that if the fire fighter or police officer elects to appeal to a hearing examiner, the person waives all rights to appeal to a district court except as provided by Subsection (j).

(b)  To exercise the choice of appealing to a hearing examiner, the appealing fire fighter or police officer must submit to the director a written request as part of the original notice of appeal required under this chapter stating the person's decision to appeal to an independent third party hearing examiner.

(c)  The hearing examiner's decision is final and binding on all parties.  If the fire fighter or police officer decides to

appeal to an independent third party hearing examiner, the person automatically waives all rights to appeal to a district court except as provided by Subsection (j).

(d)   If the appealing fire fighter or police officer chooses to appeal to a hearing examiner, the fire fighter or police officer and the department head or their designees shall first attempt to agree on the selection of an impartial hearing examiner.  If the parties do not agree on the selection of a hearing examiner on or within 10 days after the date the appeal is filed and no motion to consolidate is filed under Subsection (k) of this section, the director shall on the next work day following notice that the parties have failed to agree on a selection of a hearing examiner request a list of seven qualified neutral arbitrators from the American Arbitration Association or the Federal Mediation and Conciliation Service or their successors in function.  The fire fighter or police officer and the department head or their designees may agree on one of the seven neutral arbitrators on the list.  If they do not agree within 25 days after the date the appeal was filed, each party or the party's designee shall on the 25th day after the appeal was filed alternate striking a name from the list and the name remaining is the hearing examiner.  In the event that the 25th day falls on a Saturday, Sunday, or a legal holiday, then the parties shall strike the list the next work day.  The parties or their designees shall agree on a date for the hearing that is within the time period prescribed by Subsection (e).  In the event that the director does not request the list of seven qualified neutral arbitrators within the time prescribed by this subsection or the department head or his designee fails to strike the list within the time prescribed by this subsection, the fire fighter or police officer or his designee shall select the arbitrator from the list provided.  In the event that the fire fighter or police officer or his designee fails to strike the list within the time prescribed by this subsection, the department head or his designee shall select the arbitrator from the list provided.

(e)   The appeal hearing must begin within 60 days after the date the appeal is filed and shall begin as soon as the hearing examiner can be scheduled.  If the hearing examiner cannot begin the

hearing within 45 calendar days after the date of selection, the fire fighter or police officer may, within two days after learning of that fact, call for the selection of a new hearing examiner using the procedure prescribed by Subsection (d). If the appeal hearing is not begun within 60 days after the date the appeal is filed, the indefinite suspension, suspension, promotional pass over, or recommended demotion is upheld and the appeal is withdrawn if the fire fighter or police officer is not ready to proceed, and the appeal is sustained if the department head is not ready to proceed. In computing the 60-day period, a period of delay not to exceed 30 calendar days because of a continuance granted at the request of the department head or his representative or the fire fighter or police officer or his representative on good cause being shown, or because of the unavoidable unavailability of the hearing examiner on the date of the hearing, or because of the pendency of a motion to consolidate with another hearing as provided in Subsection (k) of this section is excluded. In no event may a hearing examiner grant a continuance beyond 30 days in an indefinite suspension. A hearing examiner may grant a continuance beyond the 30-day period upon good cause being shown in a disciplinary suspension unless the fire fighter or police officer has another disciplinary action pending.

(f) In each hearing conducted under this section, the hearing examiner has the same duties and powers as the commission, including the right to issue subpoenas.

(g) In a hearing conducted under this section, the parties may agree to an expedited hearing procedure. Unless otherwise agreed by the parties, in an expedited procedure the hearing examiner shall render a decision on the appeal within 10 days after the date the hearing closed.

(h) In an appeal that does not involve an expedited hearing procedure, the hearing examiner shall make a reasonable effort to render a decision on the appeal within 30 days after the date the hearing ends or the briefs are filed. The hearing examiner's inability to meet the time requirements imposed by this section does not affect the hearing examiner's jurisdiction, the validity of the disciplinary action, or the hearing examiner's final decision.

(i)  The hearing examiner's fees and expenses are shared equally by the appealing fire fighter or police officer and by the department.  The costs of a witness are paid by the party who calls the witness.

(j)  A district court may hear an appeal of a hearing examiner's award only on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means.  If the basis for the appeal of the hearing examiner's award is based on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction, the petition must be filed in district court within 10 days of the hearing examiner's decision.  An appeal must be brought in the district court having jurisdiction in the municipality in which the fire or police department is located.  In the event the municipality is located in more than one county then the suit must be brought in the county having the majority of the population of the municipality.

(k)  In an appeal of an indefinite suspension, a suspension, a promotional pass over, or a recommended demotion, each appealing fire fighter or police officer or the appealing fire fighter's or police officer's representative shall be entitled to the selection of a hearing examiner pursuant to Subsection (d) of this section to hear the case.  The fire fighter, police officer, department head, or a representative of any of those may, within 10 days of the date they received notice of the appeal, file a motion with a copy to the opposing side to consolidate the case with that of one or more other fire fighters or police officers where the charges arise out of the same incident.  The motion to consolidate may be agreed to in writing and filed with the director.  If a motion to consolidate the cases is filed and not agreed to, a hearing examiner shall be chosen pursuant to the provisions of Subsection (d) of this section to hear the motion.  The decision of the hearing examiner shall be final and binding as to the issue of consolidation.  The hearing examiner chosen to hear the motion to consolidate shall not hear the case, and the provisions of Subsection (d) of this section shall be used to choose the hearing examiner with the day the decision is rendered being the equivalent of the date the appeal was filed.

Added by Acts 1989, 71st Leg., ch. 854, Sec. 4, eff. June 14, 1989.

Sec. 143.1017. PROCEDURES AFTER FELONY INDICTMENT OR OTHER CRIME OF MORAL TURPITUDE. (a) If a fire fighter or police officer is indicted for a felony or officially charged with the commission of any other crime involving moral turpitude, the department head may temporarily suspend the person with or without pay for a period not to exceed 30 days after the date the fire fighter or police officer gives notice of final disposition of the specified felony indictment or any other crime involving moral turpitude.

(b) The department head shall notify the suspended fire fighter or police officer in writing that the person is being temporarily suspended for a specific period with or without pay and that the temporary suspension is not intended to reflect an opinion on the merits of the indictment or complaint.

(c) If the action directly related to the felony indictment or misdemeanor complaint occurred or was discovered on or after the 180th day before the date of the indictment or complaint, the department head may, within 60 days after the date of final disposition of the indictment or complaint, bring a charge against the fire fighter or police officer for a violation of civil service rules.

(d) A fire fighter or police officer indicted for a felony or officially charged with the commission of any other crime involving moral turpitude who has also been charged by the department head with civil service violations directly related to the indictment or complaint may delay the civil service hearing for not more than 30 days after the date of the final disposition of the indictment or complaint.

(e) If the department head temporarily suspends a fire fighter or police officer under this section and the fire fighter or police officer is not found guilty of the indictment or complaint in a court of competent jurisdiction, the fire fighter or police officer may appeal to the commission or to a hearing examiner for recovery of back pay. The commission or hearing examiner may award all or part of the back pay or reject the appeal.

(f) Acquittal or dismissal of an indictment or a complaint

does not mean that a fire fighter or police officer has not violated civil service rules and does not negate the charges that may have been or may be brought against the fire fighter or police officer by the department head.

(g)  Final conviction of a felony shall be the basis for dismissal without notice or further proceedings under this Act, and conviction of any other crime involving moral turpitude may be cause for disciplinary action or indefinite suspension.

(h)  The department head may order an indefinite suspension based on an act classified as a felony or any other crime involving moral turpitude after the 180-day period following the date of the discovery of the act by the department if the department head considers delay to be necessary to protect a criminal investigation of the person's conduct.  If the department head intends to order an indefinite suspension after the 180-day period, the department head must file with the attorney general a statement describing the criminal investigation and its objectives within 180 days after the date the act complained of occurred.

Added by Acts 1989, 71st Leg., ch. 854, Sec. 2, eff. June 14, 1989.


Sec. 143.1018.  EX PARTE COMMUNICATIONS.  (a)  While any matter subject to a hearing under this chapter is pending, a person may not, except in giving sworn testimony at the hearing or as otherwise provided by law, communicate with the commission, a hearing examiner, or a grievance examiner regarding the facts of the matter under consideration unless the other party or their representative is present.  Notwithstanding the provisions of this subsection, it shall not be a violation for either party to file written briefs or written motions in the case if copies were served on the opposing party.

(b)  If the commission, hearing examiner, grievance examiner, or a court of competent jurisdiction determines that a person has violated Subsection (a) on behalf of and with the knowledge of the fire fighter or police officer who filed the appeal, request for a review, or grievance, a ruling shall be entered that dismisses the appeal, review, or grievance.  If the commission, hearing examiner, grievance examiner, or a court of

competent jurisdiction determines that a person violated Subsection (a) on behalf of or in favor of the department head or the department head's representative or on behalf of and with the knowledge of a person against whom a grievance was filed, a ruling shall be entered that upholds the position of the fire fighter or police officer that filed the appeal, request for a review, or grievance.

(c)  While any matter subject to a hearing under the grievance procedure of Section 143.130 is pending, the director shall only send the name of the parties to the grievance, the original grievance, the written responses to the grievance, and any documents filed in the case by either party if copies were served upon the opposing party.

Added by Acts 1989, 71st Leg., ch. 906, Sec. 2, eff. Aug. 28, 1989.


Sec. 143.102.  APPOINTMENT OF ASSISTANT CHIEF. (a) The head of the fire or police department may appoint a person to a command staff position at the rank of assistant chief as prescribed by this section.

(b)  The heads of the fire and police departments shall establish required qualifying criteria for persons appointed to command staff positions at the rank of assistant chief in their respective departments.  The required qualifying criteria used to select an assistant chief of the fire department must include criteria relating to management experience, educational and training background, special experience, and a performance evaluation. The required qualifying criteria must be approved by a vote of two-thirds of the municipality's governing body present and voting.  The head of the police or fire department may not make an appointment until the required qualifying criteria are established and approved as prescribed by this subsection.

(c)  To be eligible for appointment to a position at the rank of assistant chief of a police department, a person must:

(1)  be a member of the classified service;

(2)  have served for at least five years in the department as a sworn police officer;  and

(3)  meet the additional qualifying criteria

established and approved as prescribed by Subsection (b).

(d)  To be eligible for appointment to a position at the rank of assistant chief of a fire department, a person must:

(1)  be a member of the classified service;

(2)  have served for at least five years in the department as a certified fire fighter;  and

(3)  meet the additional qualifying criteria established and approved as prescribed by Subsection (b).

(e)  The department head may remove without cause a person appointed under this section.  If a person is removed without cause, the person shall be restored to that person's highest rank earned by competitive examination.

(f)  If a person appointed under this section is temporarily or indefinitely suspended for cause from the appointed position, the suspension is subject to the procedures for disciplinary action prescribed by this chapter.  If a person is indefinitely suspended for cause, the person does not have a right to reinstatement to the highest rank earned by competitive examination except to the extent that the indefinite suspension is reversed or modified by order of the commission or a hearing examiner.

(g)  A person occupying a position in the rank of assistant chief of the fire or police department on September 1, 1985, may not be removed except for cause in accordance with the procedures for disciplinary action or demotion prescribed by this chapter.

(h)  A person occupying a position in the rank of assistant chief of a fire or police department may voluntarily demote himself to the highest rank the person earned by competitive examination.

(i)  A person may remove himself from consideration for appointment under this section.

(j)  A person appointed under this section may take any promotional examination for which the person would have been eligible under this chapter.

(k)  A person appointed under this section is subject to confirmation by the municipality's governing body.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 27(a), eff. Aug. 28, 1989.

Sec. 143.103.  SPECIALIZED POLICE DIVISIONS.  (a)  A peace officer employed by a municipal department in which the peace officer performs duties in a specialized police division, including a person employed as a park police officer, airport police officer, or municipal marshal, is entitled to civil service status under this chapter.  The governing body of the municipality employing a peace officer in a specialized police division shall classify the officer in accordance with Section 143.021 and the duties performed by the peace officer.

(b)  Except for positions classified in the communication or technical class, the governing body of the municipality employing a peace officer in a specialized police division shall classify a position in the division in the same class as a police officer position that is not in a specialized police division. A member of a particular division is eligible for promotion or lateral crossover to a position outside that division. The head of the police department, assistant chiefs of police, and deputy chiefs of police, or their equivalent, regardless of name or title, may exercise the full sanctions, powers, and duties of their respective offices in the supervision, management, and control of the members of those classes and divisions, subject to the decisions of the department head regarding the chain of command in the department.

(c)  In departments in which a collective bargaining agreement or a meet-and-confer agreement exists, Subsection (b) must be approved by the collective bargaining agent, meet-and-confer agent, or entity representing the sworn officers of the department.  This subsection does not apply to the transfer of police officers.

(d)  Each applicable provision of this chapter, including the provisions relating to eligibility lists, examinations, promotions, appointments, educational incentive pay, longevity or seniority pay, certification pay, assignment pay, salary, vacation leave, and disciplinary appeals, applies to a peace officer employed by the municipality in a specialized police division as provided by this section.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1997, 75th Leg., ch. 1195, Sec. 1, eff. Sept. 1, 1997.

Sec. 143.104.  EXAMINATION PROCEDURE.  The commission shall adopt rules to standardize the procedures for entrance and promotional examinations.  The rules must provide:

(1)  that each applicant have adequate space in which to take the examination;

(2)  that each applicant be provided with a desk;

(3)  that the room in which the examination is held have a public address system;  and

(4)  the maximum number of times an applicant may leave the room during the examination and the procedure each applicant must follow when leaving or entering the room during the examination.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.1041.  ENTRANCE EXAMINATION FOR BEGINNING PEACE OFFICER POSITION IN POLICE DEPARTMENT.  (a)  In this section, "police officer training academy" means a police officer training academy operated or sponsored by a municipality to which this section applies.

(b)  The commission shall provide for open, competitive, and free entrance examinations to provide eligibility lists for beginning peace officer positions in the police department.  The examinations are open to each person who:

(1)  makes a proper application;

(2)  has been admitted to or is enrolled in a police officer training academy as an academy trainee; and

(3)  meets the requirements prescribed by this chapter.

(c)  The entrance examination may be administered to examinees only after the examinees are admitted to a police officer training academy and before the examinees graduate from the academy.

(d)  An eligibility list for a beginning peace officer position in the police department may be created only as a result of the examination. Except as provided by Subsection (f), the examination must be held in the presence of each examinee.  The examination must be based on the examinee's general knowledge and

aptitude and must inquire into the examinee's general education and mental ability. A person may not be appointed to the police department except as a result of the examination.

(e) An examinee may not take an examination unless at least one other examinee taking the examination is present.

(f) An entrance examination for beginning peace officer positions in the police department must be held at one or more locations in the municipality in which the police department is located and may be held at additional locations outside the municipality. An examination held at multiple locations must be administered on the same day and at the same time at each location at which it is given. To create one eligibility list, each member of a police officer training academy class shall take the examination at the same time and each examinee who takes that examination shall:

(1) take the same examination; and

(2) be examined in the presence of other examinees.

(g) An additional five points shall be added to the examination grade of an examinee who:

(1) served in the United States armed forces;

(2) received an honorable discharge from that service; and

(3) made a passing grade on the examination.

(h) The grade to be placed on the eligibility list for each examinee shall be computed by adding an examinee's points under Subsection (g), if any, to the examinee's grade on the written examination. Each examinee's grade on the written examination is based on a maximum grade of 100 percent and is determined entirely by the correctness of the examinee's answers to the questions. The minimum passing grade on the examination is 70 percent. An examinee must pass the examination to be placed on an eligibility list.

Added by Acts 2007, 80th Leg., R.S., Ch. 27 (S.B. 339), Sec. 2, eff. September 1, 2007.

Sec. 143.105. ELIGIBILITY FOR BEGINNING POSITION IN POLICE DEPARTMENT. In addition to meeting the eligibility requirements

prescribed by Section 143.023, to be certified as eligible for a beginning position with a police department, a person must be at least 21 years of age at the end of the probationary period and have:

(1)  served in the United States armed forces and received an honorable discharge;

(2)  earned at least 60 hours' credit in any area of study at an accredited college or university, of which not more than 12 hours' credit may be earned for training at the police officer training academy operated or sponsored by the municipality; or

(3)  been employed full-time for at least five years as a peace officer licensed by:

(A)  the Texas Commission on Law Enforcement; or

(B)  an acceptable licensing entity in another state that has law enforcement officer licensing requirements substantially equivalent to those of Chapter 1701, Occupations Code.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 84 (S.B. 342), Sec. 1, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 611 (H.B. 780), Sec. 1, eff. September 1, 2009.

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.52, eff. May 18, 2013.


Sec. 143.1051.  ELIGIBILITY FOR BEGINNING POSITION IN FIRE DEPARTMENT.  In addition to meeting the eligibility requirements prescribed by Section 143.023, to be certified as eligible for a beginning position with a fire department a person must:

(1)  have served in the United States Armed Forces and received an honorable discharge;  or

(2)  have earned at least 15 hours of credit in any area of study at an accredited college or university.

Added by Acts 1991, 72nd Leg., ch. 841, Sec. 1, eff. Sept. 1, 1991.


Sec. 143.1055.  APPLICANT FOR BEGINNING POSITION IN POLICE

74

DEPARTMENT WITH PREVIOUS EXPERIENCE.  Notwithstanding any other requirement of this chapter, for any applicant for a beginning position in the police department who has previous experience as a police officer with another police department, the police department may:

(1) modify the police officer training academy requirements for the applicant; and

(2) allow the applicant to take the entrance examination before completing the academy training.

Added by Acts 2005, 79th Leg., Ch. 629 (H.B. 2457), Sec. 1, eff. June 17, 2005.


Sec. 143.106.  ELIGIBILITY FOR FIRE DEPARTMENT PROMOTIONAL EXAMINATION. (a) Each promotional examination is open to each fire fighter who at any time has continuously held for at least two years a position in the classification that is immediately below, in salary, the classification for which the examination is to be held.

(b)  If the department has adopted a classification plan that classifies positions on the basis of similarity in duties and responsibilities, each promotional examination is open to each fire fighter who has continuously held for at least two years a position at the next lower pay grade, if it exists, in the class for which the examination is to be held.

(c)  If there are not enough fire fighters in the next lower position with two years' service in that position to provide an adequate number of persons to take the examination, the commission may open the examination to persons in that position with less than two years' service.  If there is still an insufficient number, the commission may open the examination to persons with at least two years' experience in the second lower position, in salary, to the position for which the examination is to be held.

(d)  Repealed by Acts 1993, 73rd Leg., ch. 676, Sec. 4, eff. Sept. 1, 1993.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1993, 73rd Leg., ch. 676, Sec. 4, eff. Sept. 1, 1993.


Sec. 143.107.  PROMOTIONAL  EXAMINATION  NOTICE.  (a)

Notwithstanding Subsection (b), Section [143.029](), before the 90th day before the date a promotional examination in a fire department is held, the commission shall post a notice of the examination in plain view on a bulletin board located in the main lobby of the city hall and in the commission's office.  The notice must show the position to be filled or for which the examination is to be held and the date, time, and place of the examination.  The commission shall also furnish sufficient copies of the notice for posting in the stations or subdepartments in which the position will be filled.

(b)  Before the 30th day before the date a promotional examination is held, the municipality shall post a notice of the number of newly created positions.  The notice must be posted in plain view on a bulletin board located in the main lobby of the city hall and in the commission's office.  The municipality shall also distribute the notice to all stations and subdepartments.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1991, 72nd Leg., ch. 263, Sec. 1, eff. Aug. 26, 1991.


Sec. 143.108.  PROMOTIONAL EXAMINATION GRADES;  PROMOTIONAL APPOINTMENTS.  (a)  Each eligible promotional candidate from the fire or police department who receives a grade of at least 70 points on a promotional examination is considered to have passed that examination.

(b)  If an eligibility list exists on the date a vacancy occurs, the vacancy shall be filled by permanent appointment from the eligibility list furnished by the commission within 60 days after the date the vacancy occurs.  If an eligibility list does not exist, the vacancy shall be filled within 95 days after the date the vacancy occurs from an eligibility list that the commission shall provide within 90 days after the date the vacancy occurs.

(c)  If a fire or police department fails to fill a vacancy by an appointment within the time required by Subsection (b), the fire fighter or police officer who is appointed to fill the vacancy is entitled to receive in a lump-sum payment the difference between the pay that the fire fighter or police officer received during the time that the position was unlawfully vacant and the pay that the fire fighter or police officer would have received if the fire

fighter or police officer had been appointed to the position on the latest day provided for the appointment by Subsection (b). The fire fighter's or police officer's seniority rights in the new position also date to the latest day provided for the appointment by Subsection (b).

(d)  If the municipality refuses to pay a fire fighter or to grant a fire fighter seniority rights as provided by Subsection (c), a fire fighter may bring an action to recover the pay and seniority rights in a court of competent jurisdiction. A fire fighter who prevails in a suit brought under this subsection is entitled to recover three times the amount to which the fire fighter is entitled under Subsection (c), seniority rights, costs of court, and reasonable attorney fees.

(e)  If the municipality refuses to pay a police officer or to grant a police officer seniority rights as provided by Subsection (c), the police officer may bring an action to recover the pay and seniority rights in a court of competent jurisdiction.

(f)  Notwithstanding Subsection (h), Section 143.036, each promotional eligibility list in the fire department remains in existence for two years after the date on which the written examination is given, unless exhausted. At the expiration of the two-year period, the eligibility list expires and a new examination may be held.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 26(j), eff. Aug. 28, 1989;  Acts 1991, 72nd Leg., ch. 263, Sec. 2, eff. Aug. 26, 1991;  Acts 1991, 72nd Leg., ch. 870, Sec. 1, eff. Sept. 1, 1991;  Acts 1991, 72nd Leg., 1st C.S., ch. 14, Sec. 8.01(18), eff. Nov. 12, 1991;  Acts 1993, 73rd Leg., ch. 676, Sec. 1, eff. Sept. 1, 1993;  Acts 1997, 75th Leg., ch. 150, Sec. 1, eff. Sept. 1, 1997.


Sec. 143.109.  CROSSOVER PROMOTIONS IN POLICE DEPARTMENT. (a)  In this section:

(1)  "Communications class" includes each person who performs the technical operation of police radio communications.

(2)  "Technical class" includes each person who performs criminal laboratory analysis and interpretations or the

technical aspects of criminal identification and photography.

(b)  Each person employed by the police department who is a member of the technical or communications class is eligible for a promotion within that class.

(c)  A member of the technical, communications, or uniformed and detective class is not eligible for promotion to a position outside that class, and lateral crossover by promotion is prohibited.  A person may change classes only by qualifying for and entering the new class at the lowest entry level of that class.

(d)  The department head, assistant chiefs, and deputy chiefs, or their equivalent, regardless of name or title, may exercise the full sanctions, powers, and duties of their respective offices in the supervision, management, and control of the members of the technical, communications, and uniformed and detective classes.

(e)  Each provision of this chapter relating to eligibility lists, examinations, appointments, and promotions applies to the appointment or promotion of members of the technical, communications, and uniformed and detective classes within the members' respective class.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.1095.  TRANSFERS IN POSITION IN SAME CLASSIFICATION IN FIRE DEPARTMENT.  (a)  The head of the fire department may transfer a fire fighter from one position to another position in the same classification in the fire department if the transfer is:

(1)  a promotion or demotion of the fire fighter;

(2)  required to balance the work force;

(3)  for disciplinary reasons;

(4)  based on the seniority of the fire fighter;

(5)  a result of a mutual agreement between the department head and the fire fighter; or

(6)  for any other specified reason the department head considers necessary.

(b)  If the department head transfers a fire fighter under this section, the department head shall designate in a written statement the basis for the transfer.

Added by Acts 1989, 71st Leg., ch. 1, Sec. 28(a), eff. Aug. 28, 1989.

Sec. 143.110.  SALARY. (a) Except as provided by Subsection (c) and Section 143.111, all fire fighters or police officers in the same classification are entitled to the same base salary.

(b)  In addition to the base salary, each fire fighter or police officer is entitled to each of the following types of pay, if applicable:

(1)  longevity pay;

(2)  seniority pay;

(3)  educational incentive pay as authorized by Section 143.112;

(4)  assignment pay as authorized by Section 143.113; and

(5)  shift differential pay as authorized by Section 143.047.

(c)  In computing longevity pay and base pay under this section for a police officer who has completed the department's academy training requirements, the police department may include the number of years, not to exceed five, that the police officer served in another police department.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1172, Sec. 2, eff. Aug. 28, 1989.
Amended by:

Acts 2005, 79th Leg., Ch. 629 (H.B. 2457), Sec. 2, eff. June 17, 2005.

Sec. 143.111.  TEMPORARY DUTIES IN HIGHER CLASSIFICATION. (a) The department head may designate a person from the next lower classification to temporarily fill a position in a higher classification.  The designated person is entitled to the base salary of the higher position plus the person's own longevity pay during the time the person performs the duties.  Any person who is required to act in a position of higher classification in an emergency situation shall be paid the base salary of the higher position plus the person's own longevity pay for the entire shift

without respect to whether an emergency occurs on any particular shift of duty.

(b)  The temporary performance of the duties of a higher position by a person who has not been promoted as prescribed by this chapter may not be construed as a promotion of the person.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 854, Sec. 12, eff. June 14, 1989.


Sec. 143.1115.  DETERMINATION  OF  PHYSICAL  AND  MENTAL FITNESS.  (a)  This section provides the exclusive procedure for determining  whether  a  fire  fighter  or  police  officer  is sufficiently physically or mentally fit to continue the person's duties or assignment.

(b)  On receiving a written order by the department head, a fire fighter or police officer shall submit to the commission a report from the person's personal physician, psychiatrist, or psychologist, as appropriate.

(c)  If the commission, the department head, or the fire fighter or police officer questions the report, the commission shall  appoint  a  physician,  psychiatrist,  or  psychologist,  as appropriate, to examine the fire fighter or police officer and to submit a report to the commission, the department head, and the person.

(d)  If the report of the appointed physician, psychiatrist, or psychologist, as appropriate, disagrees with the report of the fire   fighter's   or   police   officer's   personal   physician, psychiatrist,  or  psychologist,  as  appropriate,  the  commission shall  appoint  an  independent  three-member  board  composed  of  a physician, a psychiatrist, and a psychologist or any combination, as appropriate, to examine the fire fighter or police officer.  The board shall submit to the commission a written report of its finding regarding  whether  the  fire  fighter  or  police  officer  is sufficiently physically or mentally fit to continue the person's duties  or  assignment.   The  commission,  at  its  next  regularly scheduled meeting after the date it receives the report of the board, shall determine whether the fire fighter or police officer is sufficiently physically or mentally fit to continue the person's

duties or assignment. The commission shall base its determination exclusively on the report of the board.

(e) The fire fighter or police officer shall pay the cost of the services of the person's personal physician, psychiatrist, or psychologist, as appropriate. The municipality shall pay all other costs.

(f) The commission may not appoint a person to serve on a board appointed under Subsection (d) if the person receives any compensation from the municipality, other than compensation for the person's services as a board member.

Added by Acts 1989, 71st Leg., ch. 890, Sec. 2, eff. Aug. 28, 1989.


Sec. 143.112. EDUCATIONAL INCENTIVE PAY. (a) In this section:

(1) "Accredited college or university" means a college or university that is:

(A) accredited by a nationally recognized accrediting agency and by the state board of education in the state in which the college or university is located; and

(B) approved or certified by:

(i) the Texas Commission on Law Enforcement as teaching the core curriculum or its equivalent in law enforcement; or

(ii) the Texas Commission on Fire Protection.

(2) "Core curriculum in law enforcement" means those courses in law enforcement education approved by the Coordinating Board, Texas College and University System, and the Texas Commission on Law Enforcement.

(b) The governing body of a municipality may authorize educational incentive pay for:

(1) each fire fighter within each classification who has successfully completed courses at an accredited college or university that are applicable toward a degree in fire science; or

(2) each police officer within each classification who has successfully completed courses at an accredited college or university that are applicable toward a degree in law

81

enforcement--police science and include the core curriculum in law enforcement.

(c) The educational incentive pay is in addition to the regular pay received by a fire fighter or police officer.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 93 (S.B. 686), Sec. 2.53, eff. May 18, 2013.


Sec. 143.113. ASSIGNMENT PAY. (a) In this section:

(1) "Bilingual personnel" means a member of the fire or police department who in the performance of the member's duties is capable of effectively translating orally a language other than English into English, and when necessary, effectively translating the language into written English.

(2) "Emergency ambulance attendant" means a member of the fire department who provides emergency medical care and emergency transportation for members of the public.

(3) "Field training officer" means a member of the fire department who is assigned to and performs the duties and responsibilities of the field training officers program.

(4) "Hazardous materials response team personnel" means a member of the fire department who is assigned to a hazardous materials response team and stabilizes or participates in the stabilization of hazardous materials in an emergency.

(b) The municipality's governing body may authorize assignment pay for emergency ambulance attendants, field training officers, and hazardous materials response team personnel. The municipality's governing body may authorize assignment pay for fire fighters or police officers who perform specialized functions in their respective departments, including but not limited to career patrol officers. The assignment pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the fire department. The head of the fire department or police department is not eligible for the assignment pay authorized by this subsection.

(c) The municipality's governing body may authorize

assignment pay for bilingual personnel performing specialized functions as interpreters or translators in their respective departments.  The assignment pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the fire or police department.  If the ordinance applies equally to each person who meets the criteria established by the ordinance, the ordinance may provide for payment to each fire fighter or police officer who meets testing or other certification criteria for an assignment, or the ordinance may set criteria that will determine the foreign languages in which a person must be fluent or other criteria for eligibility.  The ordinance may provide for different rates of pay according to a person's capability and may allow more pay to those persons who are capable of translating orally and into written English.  The heads of the fire and police departments are not eligible for the assignment pay authorized by this subsection.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 854, Sec. 5, eff. June 14, 1989.

Sec. 143.114.  ASSIGNMENT PAY IN MUNICIPALITY WITH POPULATION OF 1.2 MILLION OR MORE.  (a)  In this section:

(1)  "Bomb squad personnel" means a member of the police department who is assigned to the bomb squad and participates in the detection, handling, or disarming of explosive devices or materials.

(2)  "Helicopter personnel" means a member of the police department who pilots a helicopter or rides as an observer in a helicopter.

(3)  "Special weapons and tactics personnel" means a member of the police department who is assigned to and performs the duties and responsibilities of the special weapons and tactics squad.

(4)  "Motorcycle personnel" means a member of the police department who is assigned to and performs the duties of the motorcycle patrol detail.

(5)  "Dive team personnel" means a member of the police department who is assigned to and performs underwater search and

rescue work.

(b)  In a municipality with a population of 1.5 million or more, the municipality's governing body may authorize assignment pay for:

(1)  helicopter personnel;

(2)  bomb squad personnel;

(3)  special weapons and tactics personnel;

(4)  motorcycle personnel;

(5)  dive team personnel;  and

(6)  police officers who perform specialized functions in their respective departments, including but not limited to career patrol officers.

(c)  The assignment pay is in an amount and is payable under conditions set by ordinance and is in addition to the regular pay received by members of the police department.  The head of the police department is not eligible for the assignment pay authorized by this section.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 35, Sec. 1, eff. Aug. 28, 1989;  Acts 1995, 74th Leg., ch. 289, Sec. 1, eff. Aug. 28, 1995;  Acts 2001, 77th Leg., ch. 669, Sec. 61, eff. Sept. 1, 2001.


Sec. 143.115.  PAYMENT OF ACCUMULATED VACATION LEAVE IN POPULOUS MUNICIPALITY.  (a)  This section applies only to a municipality with a population of 1.1 million or more.

(b)  A fire fighter or police officer who leaves the classified service for any reason is entitled to receive in a lump-sum payment the full amount of the person's salary for the period of the person's accumulated vacation leave up to a maximum of 60 working days.

(c)  A fire fighter or police officer who leaves the classified service or dies as the result of a line of duty injury or illness or the beneficiaries of that fire fighter or police officer are entitled to the full amount of the fire fighter's or police officer's salary for the total accumulated vacation leave.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2001, 77th Leg., ch. 669, Sec. 62, 63, eff. Sept. 1, 2001.

Sec. 143.1155. ACCUMULATED VACATION AND HOLIDAY LEAVE. A fire fighter or police officer who leaves the classified service due to disability or the beneficiary of a fire fighter or police officer who dies is entitled to receive a lump-sum payment of the full amount of the fire fighter's or police officer's accumulated vacation and holiday leave.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 2, eff. Sept. 1, 1993.


Sec. 143.116. PAYMENT OF SICK LEAVE ON TERMINATION OF SERVICE. (a) A fire fighter or police officer who leaves the classified service for any reason or the beneficiaries of a fire fighter or police officer who dies as a result of a line of duty injury or illness are entitled to receive in a lump-sum payment the full amount of the fire fighter's or police officer's accumulated sick leave as provided by Subsections (b)-(e).

(b) A fire fighter or police officer hired before September 1, 1985, is entitled to have sick leave accumulated without limit. Sick leave accumulated before September 1, 1985, is valued at the amount of the fire fighter's or police officer's salary on August 31, 1985. Sick leave accumulated after September 1, 1985, is valued at the fire fighter's or police officer's average salary in the fiscal year in which the sick leave was accumulated.

(c) Each day or part of a day of sick leave used by a fire fighter or police officer is charged to that person's earliest acquired unused accumulated day of sick leave, in the same manner as is used in the "first in, first out" accounting principle.

(d) Each fire fighter or police officer hired before September 1, 1985, may select coverage under the municipal ordinance governing sick leave benefits and policy for the municipal employees who are not subject to this chapter. This option is a onetime only option that expires on December 31 of the year in which this section takes effect in that municipality.

(e) The sick leave of a fire fighter or police officer who becomes a member of the fire or police department on or after September 1, 1985, is covered by the municipal ordinance governing sick leave benefits and policy for the municipal employees who are

not subject to this chapter.

(f)  The municipality shall provide in its annual budget a sum reasonably calculated to provide funding for sick leave benefits for the fiscal year covered by that budget.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.117.  DISCIPLINARY SUSPENSIONS.  (a)  The head of the fire or police department may suspend a fire fighter or police officer under the department head's supervision or jurisdiction for disciplinary reasons for a reasonable period not to exceed 15 days.

(b)  The department head may suspend a fire fighter or police officer under this section only if the person violates a civil service rule.  However, the department head may not suspend a fire fighter or police officer later than the 180th day after the date the department discovers or becomes aware of the civil service rule violation.  If, during an investigation of an alleged civil service rule violation, it is alleged that the fire fighter or police officer under investigation committed another violation of a civil service rule connected with the first alleged violation, the 180-day period prescribed by this subsection does not begin again for purposes of a suspension of the fire fighter or police officer if the second violation in question does not involve untruthfulness or refusal to obey a valid order to make a statement, and therefore the department head may not suspend a fire fighter or police officer for the second violation later than the 180th day after the date the department discovers or becomes aware of the original violation.

(c)  If the department head suspends a fire fighter or police officer, the department head shall, within 120 hours after the fire fighter or police officer is notified of the suspension, file a written statement of action with the commission.

(d)  The suspension is void and the fire fighter or police officer is entitled to the person's full pay if:

(1)  the department head fails to file the statement during the required time; or

(2)  the suspension is imposed later than the 180th day after the date the department discovers or becomes aware of the violation that resulted in the suspension.

(e)  A  fire  fighter  or  police  officer  may  appeal  a disciplinary  suspension  as  prescribed  by  Sections  143.010  and 143.1015.

(f)  The  provisions  of  Subsections  (d)  and  (e)  of  Section 143.119 of this chapter apply to this section.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 25(e), eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 409, Sec. 1, eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 854, Sec. 6, eff. June 14, 1989.


Sec. 143.118.  APPEAL OF DISCIPLINARY SUSPENSION.  (a)  If a suspended fire fighter or police officer appeals a disciplinary suspension to the commission, the commission shall determine if just cause exists for the suspension.

(b)  If the commission finds that the period of disciplinary suspension should be reduced, the commission may order a reduction in the period of suspension.  The commission may reverse the department head's decision and instruct the department head to immediately restore the fire fighter or police officer to the person's prior position and to repay the person for any lost wages.

(c)  If the department head refuses to obey a commission order, the provisions of Section 143.120 relating to the department head's refusal apply.

(d)  The provisions of Subsections (b) and (e) of Section 143.120 of this chapter apply to this section.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 854, Sec. 7, eff. June 14, 1989.


Sec. 143.119.  INDEFINITE SUSPENSIONS.  (a)  The head of the fire or police department may indefinitely suspend a fire fighter or police officer under the department head's supervision or jurisdiction for the violation of a civil service rule.

(b)  If the department head suspends a fire fighter or police officer, the department head shall, within 120 hours after the hour of suspension, file a written statement with the commission giving the reasons for the suspension.  The department head shall immediately deliver a copy of the statement in person to the

suspended fire fighter or police officer.

(c)  The copy of the written statement must inform the suspended fire fighter or police officer that if the person wants to appeal to the commission, the person must file a written appeal with the commission within 10 days after the date the person receives the copy of the statement.

(d)  The written statement filed by the department head with the commission must point out the civil service rule alleged to have been violated by the suspended fire fighter or police officer and must describe the alleged acts of the person that the department head contends are in violation of the civil service rules.  It is not sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated.

(e)  If the department head does not specifically point out in the written statement the act or acts of the fire fighter or police officer that allegedly violated civil service rules, the commission shall promptly reinstate the person.

(f)  If the department head offers a suspension of 16 to 90 calendar days for violation of civil service rules, the fire fighter or police officer may agree in writing to voluntarily accept the suspension, with no right of appeal.  The fire fighter or police officer must accept the offer within five working days after the date the offer is made.  If the person refuses the offer and wants to appeal to the commission, the person must file a written appeal with the commission within 15 days after the date the person receives the copy of the written statement of suspension.

(g)  In the original written statement and charges and in any hearing conducted under this chapter, the department head may not complain of an act that did not occur within the six-month period preceding the date on which the department head suspends the fire fighter or police officer.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.120.  APPEAL OF INDEFINITE SUSPENSION. (a)  Except as provided by Section 143.1015(g), if a suspended fire fighter or police officer appeals an indefinite suspension to the commission, the commission shall hold a hearing and render a decision in writing

within 30 days after the date it receives notice of appeal.

(b)  In a hearing conducted under this section, the department head is restricted to the department head's original written statement and charges, which may not be amended.

(c)  In its decision, the commission shall state whether the suspended fire fighter or police officer is:

(1)  permanently dismissed from the fire or police department;

(2)  temporarily suspended from the department;  or

(3)  restored to the person's former position or status in the department's classified service.

(c-1)  A temporary suspension of a firefighter under Subsection (c)(2) may not exceed 90 calendar days.

(d)  If the suspended fire fighter or police officer is restored to the position or class of service from which the person was suspended, the department head shall immediately reinstate the person as ordered, and the person is entitled to full compensation at the rate of pay provided for the position or class of service from which the person was suspended for the actual time lost as a result of the suspension, as provided by Section 143.1215.  If the department head fails to reinstate the fire fighter or police officer, the person is entitled to the person's salary as if the person had been regularly reinstated.

(e)  The commission may suspend or dismiss a fire fighter or police officer only for violation of civil service rules and only after a finding by the commission of the truth of specific charges against the fire fighter or police officer.

(f)  If the department head intentionally refuses, for at least 10 days, to obey an order to reinstate a fire fighter or police officer, the municipality's chief executive or governing body shall discharge the department head from employment with the municipality.

(g)  If a department head intentionally refuses to obey a lawful commission order of reinstatement, the commission may punish the department head for contempt.  The commission has the same authority to punish for contempt as has a justice of the peace.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended

by Acts 1989, 71st Leg., ch. 1, Sec. 25(f), 29(b), eff. Aug. 28, 1989.

Amended by:

Acts 2011, 82nd Leg., R.S., Ch. 1161 (H.B. 2516), Sec. 1, eff. June 17, 2011.

Sec. 143.121.  APPEAL TO DISTRICT COURT.  Each appeal of an indefinite suspension to a district court shall be advanced on the district court docket and given a preference setting over all other cases.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.

Sec. 143.1214.  RECORDS RELATED TO DISCIPLINARY ACTIONS OR CHARGES OF MISCONDUCT.  (a)  The human resources director for the department promptly shall order that the records of a disciplinary action that was taken against a fire fighter or police officer be expunged from each file maintained on the fire fighter or police officer by the department if the disciplinary action was entirely overturned on appeal by the commission, an independent third-party hearing examiner, or a court of competent jurisdiction.  Documents that must be expunged under this subsection include all documents that indicate disciplinary action was recommended or taken against the fire fighter or police officer, such as the recommendations of a disciplinary committee or a letter of suspension.  This subsection does not apply if the fire fighter or police officer is charged with using excessive force that results in a death or injury and the charge is being investigated by a law enforcement or criminal justice agency other than the department.  This subsection does not require that records of an internal affairs division or other similar internal investigative division be expunged.

(b)  The department shall maintain an investigatory file that relates to a disciplinary action against a fire fighter or police officer that was overturned on appeal, or any document in the possession of the department that relates to a charge of misconduct against a fire fighter or police officer, regardless of whether the charge is sustained, only in a file created by the department for the department's use.  The department may only release information

in those investigatory files or documents relating to a charge of misconduct:

        (1)  to another law enforcement agency or fire department;

        (2)  to the office of a district or United States attorney; or

        (3)  in accordance with Subsection (c).

    (c)  The department head or the department head's designee may forward a document that relates to disciplinary action against a fire fighter or police officer to the director or the director's designee for inclusion in the fire fighter's or police officer's personnel file maintained under Sections 143.089(a)-(f) only if:

        (1)  disciplinary action was actually taken against the fire fighter or police officer;

        (2)  the document shows the disciplinary action taken; and

        (3)  the document includes at least a brief summary of the facts on which the disciplinary action was based.

    (d)  The legal division of the municipality, or its designee, shall provide legal representation in any action related to the release of a file or part of a file.

    (e)  The requirements of this section are in addition to the requirements of Section 143.089.  This section does not prevent a fire fighter or police officer from obtaining access to any personnel file maintained by the director or the department, other than a file maintained by an internal affairs division or other similar internal investigative division, on the fire fighter or police officer under Section 143.089.

Added by Acts 1993, 73rd Leg., ch. 220, Sec. 1, eff. Aug. 30, 1993. Amended by Acts 2001, 77th Leg., ch. 748, Sec. 1, eff. Sept. 1, 2001.

Amended by:

    Acts 2011, 82nd Leg., R.S., Ch. 300 (H.B. 2006), Sec. 2, eff. September 1, 2011.


    Sec. 143.1215.  REINSTATEMENT.  (a)  If the commission, a hearing examiner, or a district court orders that a fire fighter or

police officer suspended without pay be reinstated, the municipality shall, before the end of the second full pay period after the date the person is reinstated, repay to the person all wages lost as a result of the suspension.

(b)  If the municipality does not fully repay all lost wages to the fire fighter or police officer as provided by this section, the municipality shall pay the person an amount equal to the lost wages plus accrued interest.

(c)  Interest under Subsection (b) accrues beginning on the date of the fire fighter's or police officer's reinstatement at a rate equal to three percent plus the rate for court judgments under Chapter 304, Finance Code, that is in effect on the date of the person's reinstatement.

Added by Acts 1989, 71st Leg., ch. 1, Sec. 29(c), eff. Aug. 28, 1989.  Amended by Acts 1997, 75th Leg., ch. 1396, Sec. 36, eff. Sept. 1, 1997;  Acts 1999, 76th Leg., ch. 62, Sec. 7.80, eff. Sept. 1, 1999.


Sec. 143.1216.  CERTAIN NONDISCIPLINARY ACTIONS.  (a)  The department may use a supervisory intervention procedure or a policy and procedure inquiry to modify a police officer's behavior through:

(1)  positive encouragement;

(2)  counseling;

(3)  job skills training;

(4)  repeat task performances, classes, or exercises; or

(5)  reeducation efforts, including a review of:

(A)  general department orders;

(B)  standard operating procedures;  or

(C)  lesson plans from a police officer training academy.

(b)  A supervisory intervention procedure or a policy and procedure inquiry regarding a police officer is not considered a disciplinary action for any purpose.

(c)  A police officer who is the subject of a supervisory intervention procedure or a policy and procedure inquiry may not

file an appeal or grievance regarding the action taken by the department.

(d)  The department may not include a record of a supervisory intervention procedure or a policy and procedure inquiry regarding a police officer in the police officer's personnel file maintained under Section 143.089 or in the department file maintained under Section 143.089(g).

(e)  The department may include a record of a supervisory intervention procedure or a policy and procedure inquiry regarding a police officer in a file maintained by the division of the department in which the police officer is employed.  The record in the division file may be considered in a periodic performance evaluation of the police officer's performance only if the supervisory intervention procedure or policy and procedure inquiry occurred during the performance period that is the subject of the performance evaluation.

(f)  The department may maintain an electronic record of supervisory intervention procedures or policy and procedure inquiries that may be used only by the department for tracking and statistical purposes.

Added by Acts 2001, 77th Leg., ch. 748, Sec. 2, eff. Sept. 1, 2001.


Sec. 143.122.  UNCOMPENSATED DUTY.  (a)  In this section, "uncompensated duty" means days of work without pay in a fire or police department and does not include a regular or normal work day.

(b)  The head of the fire or police department may assign a fire fighter or police officer under the department head's jurisdiction or supervision to uncompensated duty.  The department head may not impose uncompensated duty unless the fire fighter or police officer agrees to the duty.

(c)  If the fire fighter or police officer agrees in writing to accept uncompensated duty, the department head shall give the person a written statement that specifies the date or dates on which the person will perform the duty.  A fire fighter or police officer who agrees to accept the duty does not have a right to an administrative or judicial review.

(d)  The uncompensated duty may be in place of or in

combination with a period of disciplinary suspension without pay. If uncompensated duty is combined with a disciplinary suspension, the total number of uncompensated duty days may not exceed 15.

(e)  A fire fighter or police officer may not earn or accrue a benefit arising from length of service or any wage or salary while the person is suspended or performing uncompensated duty.

(f)  A disciplinary suspension does not constitute a break in a continuous position or in service in the department in determining eligibility for a promotional examination.

(g)  Except as provided by this section, a fire fighter or police officer performing assigned uncompensated duty retains all rights and privileges of the person's position in the department and of the person's employment by the municipality.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.123.  INVESTIGATION OF FIRE FIGHTERS AND POLICE OFFICERS.  (a)  In this section:

(1)  "Complainant" means a person claiming to be the victim of misconduct by a fire fighter or police officer.

(2)  "Investigation" means an administrative investigation, conducted by the municipality, of alleged misconduct by a fire fighter or police officer that could result in punitive action against that person.

(3)  "Investigator" means an agent or employee of the municipality who is assigned to conduct an investigation.

(4)  "Punitive action" means a disciplinary suspension, indefinite suspension, demotion in rank, reprimand, or any combination of those actions.

(5)  "Normally assigned working hours" includes those hours during which a fire fighter or police officer is actually at work or at the person's assigned place of work, but does not include any time when the person is off duty on authorized leave, including sick leave.

(b)  An investigator may interrogate a fire fighter or police officer who is the subject of an investigation only during the fire fighter's or police officer's normally assigned working hours unless:

(1) the seriousness of the investigation, as determined by the fire fighter's or police officer's department head or the department head's designee, requires interrogation at another time; and

(2) the fire fighter or police officer is compensated for the interrogation time on an overtime basis.

(c) The department head may not consider work time missed from regular duties by a fire fighter or police officer due to participation in the conduct of an investigation in determining whether to impose a punitive action or in determining the severity of a punitive action.

(d) An investigator may not interrogate a fire fighter or police officer who is the subject of an investigation or conduct any part of the investigation at that person's home without that person's permission.

(e) A person may not be assigned to conduct an investigation if the person is the complainant, the ultimate decisionmaker regarding disciplinary action, or a person who has any personal involvement regarding the alleged misconduct. A fire fighter or police officer who is the subject of an investigation has the right to inquire and, on inquiry, to be informed of the identities of each investigator participating in an interrogation of the fire fighter or police officer. Not later than the 30th day after the date that a complaint is received by an investigator, the investigator must inform the fire fighter in writing of the nature of the investigation and the name of each person who complained about the fire fighter, if known, concerning the matters under investigation unless:

(1) a criminal investigation has been initiated as a result of the complaint; or

(2) the disclosure of information concerning the name of the complainant or the matters under investigation would hinder a criminal investigation.

(f) Before an investigator may interrogate a fire fighter or police officer who is the subject of an investigation, the investigator must inform the fire fighter or police officer in writing of the nature of the investigation and the name of each

person who complained about the fire fighter or police officer concerning the matters under investigation. An investigator may not conduct an interrogation of a fire fighter or police officer based on a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath. In an investigation authorized under this subsection, an investigator may interrogate a fire fighter or police officer about events or conduct reported by a witness who is not a complainant without disclosing the name of the witness. Not later than the 48th hour before the hour on which an investigator begins to interrogate a fire fighter or police officer regarding an allegation based on a complaint, affidavit, or statement, the investigator shall give the fire fighter or police officer a copy of the affidavit, complaint, or statement. An interrogation may be based on a complaint from an anonymous complainant if the departmental employee receiving the anonymous complaint certifies in writing, under oath, that the complaint was anonymous. This subsection does not apply to an on-the-scene investigation that occurs immediately after an incident being investigated if the limitations of this subsection would unreasonably hinder the essential purpose of the investigation or interrogation. If the limitation would hinder the investigation or interrogation, the fire fighter or police officer under investigation must be furnished, as soon as practicable, a written statement of the nature of the investigation, the name of each complaining party, and the complaint, affidavit, or statement.

(g) An interrogation session of a fire fighter or police officer who is the subject of an investigation may not be unreasonably long. In determining reasonableness, the gravity and complexity of the investigation must be considered. The investigators shall allow reasonable interruptions to permit the fire fighter or police officer to attend to personal physical necessities.

(h) An investigator may not threaten a fire fighter or police officer who is the subject of an investigation with punitive action during an interrogation. However, an investigator may inform a fire fighter or police officer that failure to truthfully

96

answer reasonable questions directly related to the investigation or to fully cooperate in the conduct of the investigation may result in punitive action.

(i) If prior notification of intent to record an interrogation is given to the other party, either the investigator or the fire fighter or police officer who is the subject of an interrogation may record the interrogation.

(j) If an investigation does not result in punitive action against a fire fighter or police officer but does result in a reprimand recorded in writing or an adverse finding or determination regarding that person, the reprimand, finding, or determination may not be placed in that person's personnel file unless the fire fighter or police officer is first given an opportunity to read and sign the document. If the fire fighter or police officer refuses to sign the reprimand, finding, or determination, it may be placed in the personnel file with a notation that the person refused to sign it. A fire fighter or police officer may respond in writing to a reprimand, finding, or determination that is placed in the person's personnel file under this subsection by submitting a written response to the department head within 10 days after the date the fire fighter or police officer is asked to sign the document. The response shall be placed in the personnel file. A fire fighter or police officer who receives a punitive action and who elects not to appeal the action may file a written response as prescribed by this subsection within 10 days after the date the person is given written notice of the punitive action from the department head.

(k) If the department head or any investigator violates any of the provisions of this section while conducting an investigation, the municipality shall reverse any punitive action taken pursuant to the investigation including a reprimand, and any information obtained during the investigation shall be specifically excluded from introduction into evidence in any proceeding against the fire fighter or police officer.

(l) Deleted by Acts 1989, 71st Leg., ch. 1, Sec. 25(h), eff. Aug. 28, 1989.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended

by Acts 1989, 71st Leg., ch. 1, Sec. 25(g), (h), 30(a), eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 140, Sec. 2 to 4, eff. May 25, 1989;  Acts 1989, 71st Leg., ch. 854, Sec. 8, eff. June 14, 1989. Amended by:

Acts 2007, 80th Leg., R.S., Ch. 678 (H.B. 1561), Sec. 1, eff. June 15, 2007.


Sec. 143.124.  POLYGRAPH EXAMINATIONS.  (a)  A fire fighter employed by the municipality may not be required to submit to a polygraph examination as part of an internal investigation regarding the conduct of the fire fighter unless:

(1)  the complainant submits to and passes a polygraph examination and, if applicable, the fire department has complied with Subsection (c);  or

(2)  the fire fighter is ordered to take an examination under Subsection (f).

(b)  Subsection (a)(1) does not apply if the complainant is physically or mentally incapable of being polygraphed.

(c)  The fire department shall, on the written request of a fire fighter, provide to the fire fighter the complainant's polygraph examination results within 48 hours after the request.

(d)  For the purposes of this section, a fire fighter passes a polygraph examination if, in the opinion of the polygraph examiner, no deception is indicated regarding matters critical to the subject matter under investigation.

(e)  The results of a polygraph examination that relate to the complaint under investigation are not admissible in a proceeding before the commission or a hearing examiner.

(f)  The fire department head may order a fire fighter to submit to a polygraph examination if the fire department head considers the circumstances to be extraordinary and the fire department head believes that the integrity of a fire fighter or the fire department is in question.
Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 31(a), eff. Aug. 28, 1989;  Acts 1997, 75th Leg., ch. 1303, Sec. 2, eff. June 20, 1997.

Sec. 143.125.  POLICE DEPARTMENT PROBATIONARY PERIOD AFTER REAPPOINTMENT IN POPULOUS MUNICIPALITY.  (a)  This section applies only to a municipality with a population of 1.5 million or more.

(b)  A person who ends service with the police department for any reason and is later reappointed to the department must serve a probationary period of six months from the date of reappointment.

(c)  The reappointed officer is not entitled to full civil service protection until the officer has served the full probationary period.

(d)  In determining classification, pay status, and eligibility for promotion, the probationary period is counted as if the reappointed officer were not on probation.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 2001, 77th Leg., ch. 669, Sec. 64, 65, eff. Sept. 1, 2001.


Sec. 143.1251.  REAPPOINTMENT AFTER RESIGNATION.  The commission may adopt rules to allow a police officer who voluntarily resigns from the department to be reappointed to the department without taking another departmental entrance examination.

Added by Acts 1995, 74th Leg., ch. 64, Sec. 3, eff. Sept. 1, 1995.


Sec. 143.126.  LEGISLATIVE LEAVE.  (a)  A fire fighter or police officer is entitled to legislative leave without pay to appear before or to petition a governmental body during a regular or special session of that body as prescribed by this section.

(b)  To be eligible for legislative leave, a fire fighter or police officer must submit a written application to the municipality on or before the 30th day before the date the fire fighter or police officer intends to begin the legislative leave. The application must indicate the length of the requested leave and state that the fire fighter or police officer is willing to reimburse the municipality for any wages, pension, or other costs the municipality will incur as a result of the leave.  The length of the requested leave may not exceed the length of the session.

(c)  Within 30 days after the date the municipality receives the application, the municipality shall notify the fire fighter or

police officer in writing of the actual amount of money required to offset the costs the municipality will incur.  The municipality may require the fire fighter or police officer to post the money before granting the leave.

(d)  The municipality shall grant legislative leave to a fire fighter or police officer who submits an application as prescribed by this section and who complies with any requirement relating to payment of costs unless an emergency exists or unless granting the leave will result in an insufficient number of employees to carry out the normal functions of the fire or police department.

(e)  If the head of the fire or police department determines that granting a legislative leave will result in an insufficient number of employees to carry out the normal functions of the department, another fire fighter or police officer may volunteer to work in the applicant's place on an exchange of time basis as long as no overtime results.  If a fire fighter or police officer volunteers to work in the applicant's place and no overtime will result, the department head shall allow the volunteer to work for the applicant.  If the volunteer work will solve the problem of having an insufficient number of employees, the municipality shall grant the legislative leave.

(f)  Legislative leave may not be construed as a break in service for any purpose, including the determination of seniority, promotions, sick leave, vacations, or retirement.

(g)  Legislative leave granted under this section to a fire fighter or police officer to attend a session of the Congress of the United States shall be granted for a period not to exceed 30 percent of the applicant's total annual working days during each year in which leave is requested.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 32(a), eff. Aug. 28, 1989.


Sec. 143.1261.  LEGISLATIVE LEAVE ACCOUNT.  (a)  A fire fighter or police officer may donate not more than one hour for each month of accumulated vacation or compensatory time to an employee organization.  The municipality shall establish and maintain a legislative leave time account for each employee organization.

(b)  The fire fighter or police officer must authorize the donation in writing on a form provided by the employee organization and approved by the municipality.  After receiving the signed authorization on an approved form, the municipality shall transfer donated time to the account monthly until the municipality receives the fire fighter's or police officer's written revocation of the authorization.

(c)  Only a fire fighter or police officer who is a member of an employee organization may use for legislative leave purposes the time donated to that employee organization.  A fire fighter or police officer may use for legislative leave purposes the time donated under this section in lieu of reimbursing the municipality under Section 143.126.

(d)  A request to use for legislative leave purposes the time in an employee organization's time account must be in writing and submitted to the municipality by the president or the equivalent officer of the employee organization or by that officer's designee.

(e)  The municipality shall account for the time donated to the account and used from the account.  The municipality may:

(1)  determine and credit the actual cash value of the donated time in the account and determine and deduct the actual cash value of time used from the account for legislative leave purposes; or

(2)  credit and debit an account on an hour-for-hour basis regardless of the cash value of the time donated or used.

(f)  An employee organization may not use for legislative leave purposes more than 4,000 hours from its time account under this section in a calendar year.  If more than one employee organization requests to use legislative leave, each employee organization may use a proportional share of the 4,000 hours based on the total amount of hours donated to the employee organization for its exclusive use before January 2 of the calendar year in which the legislative leave is requested.  This section does not prevent an employee organization from accumulating more than 4,000 hours. This subsection only limits the total number of donated hours that one or more employee organizations may use in any calendar year.
Added by Acts 1997, 75th Leg., ch. 1195, Sec. 2, eff. Sept. 1, 1997.

Sec. 143.127.  GRIEVANCE PROCEDURE.  (a)  Except as otherwise provided by this subsection, a fire fighter or police officer may file a grievance as provided by this subchapter that relates to any aspect of the fire fighter's or police officer's employment covered by this chapter.  The fire fighter or police officer may not file a grievance relating to:

(1)  a disciplinary suspension, indefinite suspension, promotional pass over, or demotion or other action or decision for which a hearing, review, or appeal is otherwise provided by this chapter; or

(2)  an allegation of discrimination based, in whole or in part, on race, color, religion, sex, or national origin.

(b)  The director shall monitor and assist the operation of the grievance procedure.  The director's duties include:

(1)  aiding the departments and departmental grievance counselors;

(2)  notifying the parties of meetings;

(3)  docketing cases before the grievance examiner; and

(4)  ensuring that the grievance procedure operates timely and effectively.

(c)  The department head shall appoint from among the members of the department a grievance counselor whose duties include:

(1)  providing appropriate grievance forms to a fire fighter or police officer;

(2)  accepting, on behalf of the department head, a step I or II grievance;

(3)  assisting the fire fighter or police officer in handling the grievance;

(4)  forwarding a copy of a step I or II grievance form to the director and notifying the department head;

(5)  arranging a meeting between the fire fighter or police officer and that person's immediate supervisor as prescribed by Section 143.128(b);

(6)  arranging the meeting of the fire fighter or police officer and that person's department head or the department

head's designated representative as prescribed by Section 143.129(b); and

(7) performing duties that the department head may assign.

(d) The grievance procedure consists of four steps. In any step of the grievance process in which the aggrieved fire fighter's or police officer's immediate supervisor is included, the department head or the departmental grievance counselor may add an appropriate supervisor who is not the fire fighter's or police officer's immediate supervisor or may designate that supervisor to replace the person's immediate supervisor, if the department head or grievance counselor determines that the other supervisor has the authority to resolve the person's grievance.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 1, Sec. 33(b), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 854, Sec. 9, eff. June 14, 1989.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 1415 (S.B. 1896), Sec. 2, eff. September 1, 2009.


Sec. 143.128. STEP I GRIEVANCE PROCEDURE. (a) To begin a grievance action, a fire fighter or police officer must file a completed written step I grievance form with the person's department head or departmental grievance counselor within 30 days after the date the fire fighter or police officer knew or should have known of the action or inaction for which the person feels aggrieved occurred. A step I grievance form may be obtained from the departmental grievance counselor. If the form is not timely filed, the grievance is waived.

(b) If the form is filed, the departmental grievance counselor shall arrange a meeting of the fire fighter or police officer, that person's immediate supervisor or other appropriate supervisor or both, and the person or persons against whom the grievance is lodged. The departmental grievance counselor shall schedule the step I meeting within 30 calendar days after the date the grievance is filed. If the grievance is lodged against the department head, the department head may send a representative.

(c) The fire fighter's or police officer's immediate supervisor or other appropriate supervisor, or both, shall fully, candidly, and openly discuss the grievance with the fire fighter or police officer in a sincere attempt to resolve it.

(d) Regardless of the outcome of the meeting, the fire fighter's or police officer's immediate supervisor or other appropriate supervisor, or both, shall provide a written response to the fire fighter or police officer, with a copy to the grievance counselor, within 15 calendar days after the date the meeting occurs. The response must include the supervisor's evaluation and proposed solution. The response shall either be personally delivered to the fire fighter or police officer or be mailed by certified mail, return receipt requested, to the last home address provided by that person.

(e) If the proposed solution is not acceptable, the fire fighter or police officer may file a step II grievance form with the department head or the departmental grievance counselor in accordance with Section 143.129. If the aggrieved fire fighter or police officer fails to timely file a step II grievance form, the solution is considered accepted.

(f) If the supervisor does not provide the response required by Subsection (d) before the 16th day after the date the meeting occurs, the department head shall sustain the fire fighter's or police officer's grievance.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 1, Sec. 33(c), eff. Aug. 28, 1989; Acts 1995, 74th Leg., ch. 353, Sec. 1, eff. Sept. 1, 1995.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 1415 (S.B. 1896), Sec. 3, eff. September 1, 2009.


Sec. 143.129. STEP II GRIEVANCE PROCEDURE. (a) To continue the grievance procedure, the fire fighter or police officer must complete a step II grievance form and file it with the department head or the departmental grievance counselor within 15 calendar days after the date the fire fighter or police officer receives the supervisor's response under Section 143.128.

(b)  The departmental grievance counselor shall arrange a meeting of the fire fighter or police officer, that person's immediate supervisor or other appropriate supervisor or both, and the department head or the department head's representative who must have a rank of at least assistant chief or the equivalent.  The meeting shall be held within 15 calendar days after the date the step II grievance form is filed under Subsection (a).

(c)  Regardless of the outcome of the meeting, the department head or the department head's representative shall provide a written response to the fire fighter or police officer within 15 calendar days after the date the meeting occurs.  The response shall either be personally delivered to the fire fighter or police officer or be mailed by certified mail, return receipt requested, to the last home address provided by that person.

(d)  If the proposed solution is not acceptable, the fire fighter or police officer may either submit a written request stating the person's decision to appeal to an independent third party hearing examiner pursuant to the provisions of Section 143.057 or file a step III grievance form with the director in accordance with Section 143.130.  If the fire fighter or police officer fails to timely file a step III grievance form or a written request to appeal to a hearing examiner, the solution is considered accepted.  Notwithstanding Section 143.057(i), if the fire fighter or police officer prevails and the hearing examiner upholds the grievance in its entirety, the department shall bear the cost of the appeal to the hearing examiner.  If the fire fighter or police officer fails to prevail and the hearing examiner denies the grievance in its entirety, the fire fighter or police officer shall bear the cost of the appeal to the hearing examiner.  If neither party entirely prevails and the hearing examiner upholds part of the grievance and denies part of it, the hearing examiner's fees and expenses shall be shared equally by the fire fighter or police officer and the department.

(e)  If the department head or the department head's representative does not provide the response required by Subsection (c) before the 16th day after the date the meeting occurs, the department head shall sustain the fire fighter's or police

officer's grievance.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 33(d), eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 855, Sec. 1, eff. June 14, 1989;  Acts 1995, 74th Leg., ch. 353, Sec. 2, eff. Sept. 1, 1995.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 1415 (S.B. 1896), Sec. 4, eff. September 1, 2009.


Sec. 143.130.  STEP III GRIEVANCE PROCEDURE.  (a)  To continue the grievance procedure, the fire fighter or police officer must complete a step III grievance form and file it with the director within 15 calendar days after the date the fire fighter or police officer receives the department head's response under Section 143.129.

(b)  The director shall arrange a hearing of the fire fighter or police officer and a grievance examiner to be appointed by the commission under Section 143.132.  The hearing shall be held within 15 of the aggrieved fire fighter's or police officer's working days after the date the step III grievance form is filed under Subsection (a).

(c)  A hearing shall be conducted as an informal administrative procedure. Grievances arising out of the same or similar fact situations may be heard at the same hearing. A court reporter shall record the hearing.  All witnesses shall be examined under oath.  The fire fighter or police officer, that person's immediate supervisor or other appropriate supervisor or both, the department head or the department head's designated representative or both, and each person specifically named in the grievance are parties to the hearing.  The burden of proof is on the aggrieved fire fighter or police officer.

(d)  The grievance examiner shall make written findings and a recommendation for solution of the grievance within 15 calendar days after the date the hearing ends.  The findings and recommendation shall be given to the commission and copies mailed to the fire fighter or police officer by certified mail, return receipt requested, at the last home address provided by that

106

person, and to the department head.

(e)  If the proposed solution is not acceptable to either the fire fighter or police officer or the department head, either party may file a step IV grievance form with the director in accordance with Section 143.131.  If the fire fighter or police officer or the department head fails to timely file a step IV grievance form, the solution is considered accepted by that person.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 33(e), eff. Aug. 28, 1989;  Acts 1995, 74th Leg., ch. 353, Sec. 3, eff. Sept. 1, 1995.


Sec. 143.131.  STEP IV GRIEVANCE PROCEDURE.  (a)  If the department head or the fire fighter or police officer rejects the proposed solution under Section 143.130, the department head, the department head's designated representative, or the fire fighter or police officer must complete a step IV grievance form and file it with the director within 15 calendar days after the date the person receives the grievance examiner's recommendation.

(b)  The commission shall review the grievance examiner's findings and recommendation and consider the transcript of the step III hearing at the commission's next regularly scheduled meeting or as soon as practicable.  The transcript shall be filed within 30 days of the step IV grievance being filed.  The commission may for good cause shown grant a reasonable delay not to exceed 30 days to file the transcript.  In no event may the commission render a decision later than 30 days after the transcript is filed.  If the commission does not render a decision within 30 days after the date the transcript is filed, the commission shall sustain the fire fighter's or police officer's grievance.

(c)  The commission shall base its decision solely on the transcript and demonstrative evidence offered and accepted at the step III hearing.  The commission shall furnish a written copy of the order containing its decision to the fire fighter or police officer, the department head, and the grievance examiner.  The copy to the fire fighter or police officer shall be mailed by certified mail, return receipt requested, to the last home address provided by that person.  The commission decision is final.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 33(f), eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 854, Sec. 11, eff. June 14, 1989;  Acts 1995, 74th Leg., ch. 353, Sec. 4, eff. Sept. 1, 1995.


Sec. 143.132.  GRIEVANCE EXAMINER.  (a)  The commission shall appoint a grievance examiner by a majority vote.  The commission may appoint more than one grievance examiner if necessary.  The commission may appoint a different grievance examiner for each grievance.  An examiner may not be affiliated with any other municipal department and is responsible only to the commission.  The commission shall pay an examiner from a special budget established for this purpose, and the director shall provide an examiner sufficient office space and clerical support.

(b)  The grievance examiner may:

(1)  impose a reasonable limit on the time allowed each party and the number of witnesses to be heard;

(2)  administer oaths;

(3)  examine a witness under oath;

(4)  subpoena and require the attendance or production of witnesses, documents, books, or other pertinent material;  and

(5)  accept affidavits instead of or in addition to live testimony.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.133.  SPECIAL PROVISIONS FOR STEPS I AND II.  (a) If the aggrieved fire fighter's or police officer's immediate supervisor is the department head, the steps prescribed by Sections 143.128 and 143.129 are combined.  The department head shall meet with the aggrieved fire fighter or police officer and may not appoint a representative.

(b)  A department head, with the approval of the commission, may change the procedure prescribed by Sections 143.128 and 143.129 to reflect a change in a department's chain of command.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.134.  MISCELLANEOUS GRIEVANCE PROVISIONS.  (a)  A

fire fighter or police officer may represent himself or obtain a representative at any time during the grievance procedure. The municipality is not obligated to provide or pay the costs of providing representation. The representative:

(1)  is not required to be an attorney;

(2)  is entitled to be present to advise the fire fighter or police officer;

(3)  is entitled to present any evidence or information for the fire fighter or police officer; and

(4)  may not be prevented from fully participating in any of the grievance proceedings.

(b)  A fire fighter or police officer may take reasonable time off from a job assignment to file a grievance and attend a meeting or hearing. Time taken to pursue a grievance may not be charged against that person. The fire fighter or police officer shall be compensated on an overtime basis for the time that person spends at a grievance meeting or hearing if:

(1)  the meeting or hearing is scheduled at a time other than that person's normally assigned working hours; and

(2)  that person prevails in the grievance.

(c)  If notice that a grievance meeting or hearing is to be recorded is provided to all persons present at the meeting or hearing, the fire fighter or police officer, the department head, or the department head's designee may record the meeting or hearing.

(d)  The director shall provide a suitable notice explaining the grievance procedure prescribed by this subchapter and furnish copies to each department. Each department head shall cause the notices to be posted in a prominent place or places within the department work areas to give reasonable notice of the grievance procedure to each member of the department.

(e)  At the request of the department head of a fire fighter or police officer who has filed a grievance under this subchapter, the municipality's legal department or the director shall assist in resolving the grievance.

(f)  The director is the official final custodian of all records involving grievances. A depository for closed files

regarding grievances shall be maintained in the civil service department.

(g)  A fire fighter or police officer who files a grievance pursuant to Sections 143.127 through and including Section 143.134 is entitled to 48 hours notice of any meeting or hearing scheduled under Section 143.128(b), 143.129(b), 143.130(b), or 143.131(b). In the event that the fire fighter or police officer is not given 48 hours advance notice, the fire fighter's or police officer's grievance shall be automatically sustained and no further action may be had on the grievance.

(h)  If the decision of the commission under Section 143.131 or the decision of a hearing examiner under Section 143.129 that has become final is favorable to a fire fighter, the department head shall implement the relief granted to the fire fighter not later than the 10th day after the date on which the decision was issued. If the department head intentionally fails to implement the relief within the 10-day period, the municipality shall pay the fire fighter $1,000 for each day after the 10-day period that the decision is not yet implemented.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1989, 71st Leg., ch. 1, Sec. 25(i), eff. Aug. 28, 1989;  Acts 1989, 71st Leg., ch. 854, Sec. 10, eff. June 14, 1989;  Acts 1993, 73rd Leg., ch. 676, Sec. 3, eff. Sept. 1, 1993.


Sec. 143.135.  MEDIATION. (a)  In this section, "mediation" has the meaning assigned by Section 154.023, Civil Practice and Remedies Code.

(b)  The head of the police department may develop and implement an alternative dispute resolution program to refer certain disputes regarding police officers to mediation.

(c)  If a dispute is referred to mediation under this section, the time limitations and deadlines under Sections 143.1015, 143.1016, 143.117, 143.118, 143.119, 143.120, and 143.127-143.134 are tolled until the earliest of:

(1)  the date the parties reach a settlement and execute a written agreement disposing of the dispute;

(2)  the date the mediator refers the dispute to

another appeals or grievance procedure under this subchapter; or

(3)  the 60th day after the date the dispute was referred to mediation.

(d)  The conduct and demeanor of the mediator and the parties to the dispute during the course of the mediation are confidential. A letter, memorandum, document, note, or other oral or written communication that is relevant to the dispute and made between the mediator and the parties to the dispute or between the parties to the dispute during the course of the mediation procedure:

(1)  is confidential and may not be disclosed unless all of the parties to the mediation agree to the disclosure in writing; and

(2)  is admissible and discoverable in a separate proceeding only if the letter, memorandum, document, note, or other communication is admissible and discoverable independent of the mediation.

(e)  A mediator may not be required to testify in a proceeding concerning information relating to or arising out of the mediation.

(f)  Subsection (d) does not apply to a final written agreement to which the police department or municipality is a signatory that is reached as a result of a mediation procedure conducted under this section.  Information in the final written agreement is subject to required disclosure, is excepted from required disclosure, or is confidential in accordance with Chapter 552, Government Code, and other law.

(g)  If this section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to a district court for a judicial district in which the majority of the territory of the municipality is located to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure.

(h)  Except to the extent of any conflict with this section, Chapter 154, Civil Practice and Remedies Code, and police department rules apply to a mediation conducted under this section.

111

(i)  Except to the extent of any conflict with this section, Section 2009.054, Government Code, applies to the communications, records, conduct, and demeanor of the mediator and the parties.

(j)  Section 143.1014 does not apply to a meeting or hearing conducted under this section.

Added by Acts 2003, 78th Leg., ch. 517, Sec. 1, eff. Sept. 1, 2003.


SUBCHAPTER H. LOCAL CONTROL OF FIRE FIGHTER EMPLOYMENT MATTERS IN MUNICIPALITIES WITH POPULATION OF 1.5 MILLION OR MORE


Sec. 143.201.  POPULATION.  This subchapter applies only to a municipality with a population of 1.5 million or more, but does not apply to a municipality that has adopted The Fire and Police Employee Relations Act (Article 5154c-1, Vernon's Texas Civil Statutes).

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.


Sec. 143.202.  DEFINITIONS. In this subchapter:

(1)  "Fire fighters association" means an organization in which fire fighters participate and which exists for the purpose, in whole or in part, of dealing with one or more employers, whether public or private, concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work affecting public employees.

(2)  "Public employer" means any municipality or agency, board, commission, or political subdivision controlled by a municipality which is required to establish the wages, salaries, rates of pay, hours, working conditions, and other terms and conditions of employment of public employees.  The term may include, under appropriate circumstances, a mayor, manager, administrator of a municipality, municipal governing body, director of personnel, personnel board, or one or more other officials, regardless of the name by which they are designated.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.


Sec. 143.203.  GENERAL PROVISIONS RELATING TO AGREEMENTS, RECOGNITION, AND STRIKES.  (a)  A municipality may not be denied

local control over the wages, salaries, rates of pay, hours of work, and other terms and conditions of employment, or other state-mandated personnel issues, if the public employer and the fire fighters association recognized as the sole and exclusive bargaining agent for all officers covered by this subchapter come to a mutual agreement on any of the terms listed above. If no agreement is reached, the existing state laws, local ordinances, and civil service rules remain unaffected. All agreements shall be reduced to writing. Nothing in this subchapter shall require either party to meet and confer on any issue or reach an agreement.

(b)  A public employer may only meet and confer if the fire fighters association recognized under this subchapter as the sole and exclusive bargaining agent does not advocate the illegal right to strike by public employees.

(c)  Fire fighters of a municipality may not engage in strikes or organized work stoppages against this state or a political subdivision of this state. A fire fighter who participates in a strike forfeits all civil service rights, reemployment rights, and any other rights, benefits, or privileges the fire fighter enjoys as a result of employment or prior employment, except that the right of an individual to cease work may not be abridged if the individual is not acting in concert with others in an organized work stoppage.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.

Sec. 143.204.  RECOGNITION OF FIRE FIGHTER ASSOCIATION. (a) A fire fighters association submitting a petition signed by a majority of the paid fire fighters in the municipality, excluding the head of the department and assistant department heads in the rank or classification immediately below that of the department head, may be recognized by the public employer as the sole and exclusive bargaining agent for all of the covered fire fighters unless and until recognition of the association is withdrawn by a majority of those fire fighters.

(b)  In the event of a question about whether a fire fighters association represents a majority of the covered fire fighters, the question shall be resolved by a fair election conducted according

to procedures agreeable to the parties.  If the parties are unable to agree on such procedures, either party may request the American Arbitration Association to conduct the election and to certify the results.  Certification of the results of an election resolves the question concerning representation.  The fire fighters association is liable for the expenses of the election, except that if two or more associations seeking recognition as the bargaining agent submit petitions signed by a majority of the covered fire fighters, the associations shall share equally the costs of the election.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.


Sec. 143.205.  OPEN RECORDS REQUIRED.  All documents relating to an agreement between a fire fighters association and a public employer shall be available to the public pursuant to state statutes.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.


Sec. 143.206.  ENFORCEABILITY OF AGREEMENT. (a)  A written agreement made under this subchapter between a public employer and a fire fighters association recognized as the sole and exclusive bargaining agent is enforceable and binding upon the public employer, the fire fighters association recognized as the sole and exclusive bargaining agent, and fire fighters covered by the agreement if:

(1)  the municipality's governing body ratified the agreement by a majority vote;  and

(2)  the fire fighters association ratified the agreement by a majority of the votes received in a referendum of its members by secret ballot.

(b)  The state district court of the judicial district in which the municipality is located has full authority and jurisdiction on the application of either party aggrieved by an action or omission of the other party when the action or omission is related to a right, duty, or obligation provided by any written agreement ratified by both the public employer and the fire fighters association.  The court may issue proper restraining orders, temporary and permanent injunctions, and any other writ,

order, or process, including contempt orders, that are appropriate to enforcing any written agreement ratified by both the public employer and the fire fighters association.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 373, Sec. 1, eff. May 28, 1997.

Sec. 143.207. AGREEMENT SUPERSEDES CONFLICTING PROVISIONS. (a) A written agreement under this subchapter between a public employer and the fire fighters association recognized as the sole and exclusive bargaining agent supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, and other terms and conditions of employment to the extent of any conflict with the previous statute.

(b) A written agreement under this subchapter preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or a political subdivision or agent of the state, such as a personnel board, a civil service commission, or a home-rule municipality.

(c) An agreement under this subchapter may not diminish or qualify any right, benefit, or privilege of an employee under this chapter or other law unless approved by a majority of the votes received in a secret ballot referendum of the members of the fire fighters association recognized as the sole and exclusive bargaining agent.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 373, Sec. 2, eff. May 28, 1997.

Sec. 143.208. REPEAL OF AGREEMENT BY ELECTORATE. Within 45 days after an agreement is ratified and signed by both the municipality and the fire fighters association recognized as the sole and exclusive bargaining agent, a petition signed by a number of registered voters equal to 10 percent of the votes cast at the most recent mayoral general election may be presented to the municipal secretary calling an election for the repeal of the agreement. Thereupon, the governing body shall reconsider the agreement and, if it does not repeal the agreement, shall call an election of the qualified voters to determine if they desire to

repeal the agreement.  The election shall be called for the next municipal election or a special election called by the governing body for that purpose.  If at the election a majority of the votes are cast in favor of the repeal of the adoption of the agreement, then the agreement shall become null and void.  The ballot shall be printed to provide for voting FOR or AGAINST the proposition:

"Repeal of the adoption of the agreement ratified by the municipality and the fire fighters association concerning wages, salaries, rates of pay, hours of work, and other terms and conditions of employment."

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 62, Sec. 13.15, eff. Sept. 1, 1999.


Sec. 143.209.  PROTECTED RIGHTS OF INDIVIDUAL EMPLOYEES. (a)  For the purpose of any disciplinary appeal to either the civil service commission or a hearing examiner, all members of the bargaining unit shall have the right to choose to be represented by any person of their choice or the fire fighters association.

(b)  No agreement shall interfere in the right of members of the fire fighters association to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex, or disability with the Commission on Human Rights or the Equal Employment Opportunity Commission or to pursue affirmative action litigation.

Added by Acts 1993, 73rd Leg., ch. 676, Sec. 5, eff. Sept. 1, 1993.


SUBCHAPTER I. FIRE FIGHTER AND POLICE OFFICER EMPLOYMENT MATTERS IN CERTAIN MUNICIPALITIES


Sec. 143.301.  MUNICIPALITIES COVERED BY SUBCHAPTER.  This subchapter applies only to a municipality with a population of 460,000 or more that operates under a city manager form of government.  This subchapter does not apply to a municipality:

(1)  that has adopted Chapter 174 (The Fire and Police Employee Relations Act);  or

(2)  to which Subchapter H applies.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.

Sec. 143.3015. LIMITATION ON MUNICIPALITIES COVERED BY SUBCHAPTER: VOTER APPROVAL. (a) The governing body of a municipality with a population less than 560,000 that has not recognized an association as the sole and exclusive bargaining agent as provided by Section 143.304 before September 1, 2001, must receive voter approval under this section before operating under the other provisions of this subchapter.

(b) The governing body shall call an election if:

(1) a majority of the members of the governing body vote to hold the election; or

(2) the voters submit a petition requesting the election as required by this section.

(c) A petition for election must:

(1) be signed by a number of qualified voters of the municipality equal to at least 10 percent of the number of voters who voted in the most recent municipal election for mayor; and

(2) comply with Chapter 277, Election Code.

(d) Not later than the 40th working day after the date a petition is presented to the governing body, the municipal secretary shall certify to the governing body the number and percentage of registered voters signing the petition.

(e) Upon receiving a petition in compliance with this subchapter, the governing body shall order an election submitting to the voters the question of whether this subchapter should be adopted for firefighters, police officers, or both. The election must be held on the first authorized uniform election date prescribed by Chapter 41, Election Code, that occurs after the petition is filed and that allows sufficient time to comply with other requirements of law.

(f) The ballot for an election called under this section shall be printed to permit voting for or against the proposition: "Authorizing (name of the governing body of the municipality) to recognize an employee association as a sole and exclusive bargaining agent for the municipal (insert firefighters, police officers, or both, as applicable,) and authorizing the (name of the

117

governing body of the municipality) to make agreements with the employee association as provided by state law."

(g)AAAn election authorized by this section shall be held and the returns shall be prepared and canvassed in conformity with the Election Code.

(h)AAThe municipality may operate under the other provisions of this subchapter only if a majority of the votes cast at the election favor the proposition.

(i)AANotwithstanding Subsections (a) and (h), a municipality with a population of less than 560,000 that has not recognized an association as the sole and exclusive bargaining agent as provided by Section 143.304 before September 1, 2005, may adopt rules for police officers converting vacation and sick leave days to hours that supersede the provisions of Section 142.0013, Section 143.045, and Section 143.046 provided that:

(1)AAA police officer is entitled to earn 120 hours of vacation leave each year with pay, as a minimum, if the officer has been regularly employed in the department or departments for at least one year.

(2)AAIn computing the length of time a police officer may be absent from work on vacation leave, only those hours that the person would have been required to work if not on vacation may be counted as vacation leave.

(3)AAA police officer shall be granted the same number of vacation hours and holiday hours, or hours in lieu of vacation hours or holiday hours, granted to other municipal employees who work the same number of hours in a regular work day and have worked for the municipality for the same number of years.

(4)AAA police officer shall be granted sick leave with pay accumulated at the rate of 10 hours for each full month employed in a calendar year, so as to total 120 hours to the person's credit each 12 months.

(5)AAA police officer who leaves the classified service for any reason is entitled to receive in a lump-sum payment the full amount of the person's salary for accumulated sick leave if the person has accumulated not more than 720 hours of sick leave, the person's employer may limit payment to the amount that the person

would have received if the person had been allowed to use 720 hours of accumulated sick leave during the last six months of employment.  The lump-sum payment is computed by compensating the police officer for the accumulated time at the highest permanent pay classification for which the person was eligible during the last six months of employment.  The police officer is paid for the same period for which the person had taken the sick leave but does not include additional holidays and any sick leave or vacation time that the person might have accrued during the 720 hours.

Added by Acts 2001, 77th Leg., ch. 425, Sec. 1, eff. May 28, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 1193 (H.B. 304), Sec. 3, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 145 (S.B. 189), Sec. 1, eff. May 21, 2007.


Sec. 143.302.  DEFINITIONS.  In this subchapter:

(1)  "Association" means an organization in which fire fighters or police officers participate and that exists for the purpose, in whole or in part, of dealing with one or more employers, whether public or private, concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work affecting public employees.

(2)  "Public employer" means any municipality or agency, board, commission, or political subdivision controlled by a municipality that is required to establish the wages, salaries, rates of pay, hours, working conditions, and other terms and conditions of employment of public employees.  The term may include, under appropriate circumstances, a mayor, manager, administrator of a municipality, municipal governing body, director of personnel, or personnel board or one or more other officials, regardless of the name by which they are designated.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.303.  GENERAL PROVISIONS RELATING TO AGREEMENTS, RECOGNITION, AND STRIKES.  (a)  A municipality may not be denied local control over wages, salaries, rates of pay, hours of work,

other terms and conditions of employment, or other personnel issues on which the public employer and an association that is recognized as the sole and exclusive bargaining agent for all fire fighters or police officers in the municipality agree. A term or condition on which the public employer and the association do not agree is governed by the applicable statutes, local ordinances, and civil service rules. An agreement must be reduced to writing. This subchapter does not require the public employer and the association to meet and confer or reach an agreement on any issue.

(b) A public employer and an association recognized under this subchapter as a sole and exclusive bargaining agent may meet and confer only if the association does not advocate the illegal right to strike by public employees.

(c) A fire fighter or police officer of a municipality may not engage in a strike or organized work stoppage against this state or a political subdivision of this state. A fire fighter or police officer who participates in a strike forfeits all civil service rights, reemployment rights, and other rights, benefits, or privileges the fire fighter or police officer enjoys as a result of the person's employment or previous employment with the municipality. This subsection does not affect the right of a person to cease employment if the person is not acting in concert with other fire fighters or police officers.
Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.304. RECOGNITION OF FIRE FIGHTERS OR POLICE OFFICERS ASSOCIATION. (a) The public employer may recognize an association that submits a petition signed by a majority of the paid fire fighters or police officers in the municipality, excluding the head of the department and assistant department heads in the rank or classification immediately below that of the department head, as the sole and exclusive bargaining agent for all of the covered fire fighters or police officers unless recognition of the association is withdrawn by a majority of the covered fire fighters or police officers.

(b) A question of whether an association is the majority representative of the covered fire fighters or police officers

120

shall be resolved by a fair election conducted according to procedures agreed on by the parties. If the parties are unable to agree on election procedures, either party may request the American Arbitration Association to conduct the election and to certify the results. Certification of the results of an election under this subsection resolves the question concerning representation. The association shall pay the costs of the election, except that if two or more associations seeking recognition as the bargaining agent submit petitions signed by a majority of the covered fire fighters or police officers, the associations shall share equally the costs of the election.

(c) The public employer's manager or chief executive and the police chief or fire chief, as appropriate, shall designate a team to represent the public employer as its sole and exclusive bargaining agent for issues related to the fire department and a separate team to represent the public employer as its sole and exclusive bargaining agent for issues related to the police department.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.305. OPEN RECORDS REQUIRED. An agreement made under this subchapter is a public record for purposes of Chapter 552, Government Code. The agreement and any document prepared and used by the municipality in connection with the agreement are available to the public under the open records law, Chapter 552, Government Code, only after the agreement is ratified by the municipality's governing body. This section does not affect the application of Subchapter C, Chapter 552, Government Code, to a document prepared and used by the municipality in connection with the agreement.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.306. ENFORCEABILITY OF AGREEMENT. (a) A written agreement made under this subchapter between a public employer and an association is binding on the public employer, the association, and fire fighters or police officers covered by the agreement if:

(1) the municipality's governing body ratifies the

121

agreement by a majority vote;  and

(2)  the applicable association ratifies the agreement by a majority vote of its members by secret ballot.

(b)  An agreement ratified as described by Subsection (a) may establish a procedure by which the parties agree to resolve disputes related to a right, duty, or obligation provided by the agreement, including binding arbitration on interpretation of the agreement.

(c)  The district court of the judicial district in which the municipality is located has full authority and jurisdiction on the application of either party aggrieved by an act or omission of the other party related to a right, duty, or obligation provided by a written agreement ratified as described by Subsection (a).  The court may issue proper restraining orders, temporary and permanent injunctions, or any other writ, order, or process, including a contempt order, that is appropriate to enforce the agreement.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.

Sec. 143.307.  AGREEMENT SUPERSEDES CONFLICTING PROVISIONS. (a)  An agreement under this subchapter supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, or other terms and conditions of employment to the extent of any conflict with the statute.

(b)  An agreement under this subchapter preempts any contrary statute, executive order, local ordinance, or rule adopted by the state or a political subdivision or agent of the state, including a personnel board, a civil service commission, or a home-rule municipality.

(c)  An agreement under this subchapter may not diminish or qualify any right, benefit, or privilege of an employee under this chapter or other law unless approved by a majority vote by secret ballot of the members of the association recognized as a sole and exclusive bargaining agent.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.

Sec. 143.308.  REPEAL OF AGREEMENT BY ELECTORATE. Not later than the 45th day after the date an agreement is ratified by both

the municipality and the association, a petition signed by at least 10 percent of the qualified voters of the municipality may be presented to the municipal secretary calling an election for the repeal of the agreement.  On receipt of the petition by the municipal secretary, the governing body shall reconsider the agreement and either repeal the agreement or call an election of the qualified voters to determine if they desire to repeal the agreement.  The election shall be called for the next municipal election or a special election called by the governing body for that purpose.  If at the election a majority of the votes are cast in favor of the repeal of the adoption of the agreement, the agreement is void.  The ballot shall be printed to permit voting for or against the proposition:  "Repeal of the adoption of the agreement ratified by the municipality and the _____ (fire fighters or police officers, as appropriate) association concerning wages, salaries, rates of pay, hours of work, and other terms and conditions of employment."

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.309.  PROTECTED RIGHTS OF INDIVIDUAL EMPLOYEES. (a)  For the purpose of any disciplinary appeal to the civil service commission or to a hearing examiner, a member of the bargaining unit may choose to be represented by any person of the member's choice or by the association.

(b)  An agreement may not interfere with the right of a member of a bargaining unit to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex, or disability with the Commission on Human Rights or the Equal Employment Opportunity Commission or to pursue affirmative action litigation.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.310.  BINDING INTEREST ARBITRATION. A municipality may be required to submit to binding interest arbitration only if approved by a majority of those voting in a public referendum conducted in accordance with the municipality's charter.  This subsection does not affect any disciplinary arbitration or

arbitration provision in a ratified agreement.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.311.  APPOINTMENTS TO CLASSIFICATION IMMEDIATELY BELOW DEPARTMENT HEAD.   Section 143.014(c) does not apply to a municipality to which this subchapter applies.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.312.  INVESTIGATION OF FIRE FIGHTERS AND POLICE OFFICERS.  (a)  This section does not apply to a municipality to which Section 143.123 applies.

(b)  In this section:

(1)  "Complainant" means a person claiming to be the victim of misconduct by a fire fighter or police officer.

(2)  "Investigation" means an administrative investigation, conducted by the municipality, of alleged misconduct by a fire fighter or police officer that could result in punitive action against that person.

(3)  "Investigator" means an agent or employee of the municipality who is assigned to conduct an investigation.

(4)  "Normally assigned working hours" includes those hours during which a fire fighter or police officer is actually at work or at the person's assigned place of work, but does not include any time when the person is off duty on authorized leave, including sick leave.

(5)  "Punitive action" means a disciplinary suspension, indefinite suspension, demotion in rank, written reprimand, or any combination of those actions.

(c)  An investigator may interrogate a fire fighter or police officer who is the subject of an investigation only during the fire fighter's or police officer's normally assigned working hours unless:

(1)  the seriousness of the investigation, as determined by the fire fighter's or police officer's department head or the department head's designee, requires interrogation at another time;  and

(2)  the fire fighter or police officer is compensated

for the interrogation time on an overtime basis.

(d)  The department head may not consider work time missed from regular duties by a fire fighter or police officer due to participation in the conduct of an investigation in determining whether to impose a punitive action or in determining the severity of a punitive action.

(e)  An investigator may not interrogate a fire fighter or police officer who is the subject of an investigation or conduct any part of the investigation at that person's home without that person's permission.

(f)  A person may not be assigned to conduct an investigation if the person is the complainant, the ultimate decision-maker regarding disciplinary action, or a person who has any personal involvement regarding the alleged misconduct.  A fire fighter or police officer who is the subject of an investigation has the right to inquire and, on inquiry, to be informed of the identities of each investigator participating in an interrogation of the fire fighter or police officer.

(g)  Not less than 48 hours before an investigator begins the initial interrogation of a fire fighter or police officer who is the subject of an investigation, the investigator must inform the fire fighter or police officer in writing of the allegations in the complaint.  An investigator may not interrogate a fire fighter or police officer based on a complaint by a complainant who is not a fire fighter or police officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath.  In an investigation under this subsection, an investigator may interrogate a fire fighter or police officer about events or conduct reported by a witness who is not a complainant without disclosing the name of the witness.  An interrogation may be based on a complaint from an anonymous complainant if the departmental employee receiving the anonymous complaint certifies in writing, under oath, that the complaint was anonymous.  This subsection does not apply to an on-the-scene investigation that occurs immediately after an incident being investigated, except that the fire fighter or police officer under investigation must be furnished, as soon as practicable, a written

125

statement of the allegations in the complaint.

(h)  An interrogation session of a fire fighter or police officer who is the subject of an investigation may not be unreasonably long.  In determining reasonableness, the gravity and complexity of the investigation must be considered.  The investigators shall allow reasonable interruptions to permit the fire fighter or police officer to attend to personal physical necessities.

(i)  An investigator may not threaten a fire fighter or police officer who is the subject of an investigation with punitive action during an interrogation.  An investigator may inform a fire fighter or police officer that failure to answer truthfully reasonable questions directly related to the investigation or to cooperate fully in the conduct of the investigation may result in punitive action.

(j)  If prior notification of intent to record an interrogation is given to the other party, either the investigator or the fire fighter or police officer who is the subject of an interrogation may record the interrogation.

(k)  If an investigation does not result in punitive action against a fire fighter or police officer but does result in a written reprimand or an adverse finding or determination regarding that person, the reprimand, finding, or determination may not be placed in that person's personnel file unless the fire fighter or police officer is first given an opportunity to read and sign the document.  If the fire fighter or police officer refuses to sign the reprimand, finding, or determination, it may be placed in the personnel file with a notation that the person refused to sign it. A fire fighter or police officer may respond in writing to a reprimand, finding, or determination that is placed in the person's personnel file under this subsection by submitting a written response to the department head not later than the 10th day after the date the fire fighter or police officer is asked to sign the document.  The response shall be placed in the personnel file.  A fire fighter or police officer who receives a punitive action and who elects not to appeal the action may file a written response as prescribed by this subsection not later than the 10th day after the

126

date the person is given written notice of the punitive action from the department head.

(l)  A violation of this section may be considered by the commission or hearing examiner during a disciplinary appeal hearing if the violation substantially impaired the fire fighter's or police officer's ability to defend against the allegations of misconduct.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995.


Sec. 143.313.  POLYGRAPH EXAMINATIONS.  (a)  This section does not apply to a municipality to which Section 143.124 applies.

(b)  A fire fighter employed by the municipality may not be required to submit to a polygraph examination as part of an internal investigation regarding the conduct of the fire fighter unless:

(1)  the complainant submits to and passes a polygraph examination;  or

(2)  the fire fighter is ordered to take an examination under Subsection (f).

(c)  Subsection (b) does not apply if the complainant is physically or mentally incapable of being polygraphed.

(d)  For the purposes of this section, a fire fighter passes a polygraph examination if, in the opinion of the polygraph examiner, no deception is indicated in the examination regarding matters critical to the subject matter under investigation.

(e)  The results of a polygraph examination that relate to the complaint under investigation are not admissible in a proceeding before the commission or a hearing examiner.

(f)  The head of the fire department may order a fire fighter to submit to a polygraph examination if the fire department head:

(1)  considers the circumstances to be extraordinary;  or

(2)  believes that the integrity of a fire fighter or the fire department is in question.

Added by Acts 1995, 74th Leg., ch. 1003, Sec. 1, eff. Aug. 28, 1995. Amended by Acts 1997, 75th Leg., ch. 1303, Sec. 3, eff. June 20, 1997.

SUBCHAPTER J. LOCAL CONTROL OF POLICE OFFICER EMPLOYMENT MATTERS IN MUNICIPALITIES WITH POPULATION OF 1.5 MILLION OR MORE

Sec. 143.351.  APPLICABILITY.  This subchapter applies only to a municipality with a population of 1.5 million or more but does not apply to a municipality that has adopted Chapter 174.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997.

Sec. 143.352.  DEFINITIONS.  In this subchapter:

(1)  "Bargaining agent" means the police employee group selected under Section 143.354 to represent all police officers employed by the municipality, excluding the department head and assistant department heads, during negotiations with the public employer.

(2)  "Police employee group" means an organization:

(A)  in which at least three percent of the police officers of the municipality participate and pay dues via automatic payroll deduction;  and

(B)  which exists for the purpose, in whole or part, of dealing with the municipality concerning grievances, labor disputes, wages, rates of pay, benefits other than pension benefits, hours of employment, or conditions of work affecting police officers.

(3)  "Public employer" means any municipality or agency, board, commission, or political subdivision controlled by a municipality that is required to establish the wages, salaries, rates of pay, hours, working conditions, and other terms and conditions of employment of police officers.  The term includes, under appropriate circumstances, a mayor, manager, administrator of a municipality, municipal governing body, director of personnel, personnel board, or one or more other officials, regardless of the name by which they are designated.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 1, eff. Sept. 1, 2001.

Sec. 143.353.  GENERAL PROVISIONS RELATING TO AGREEMENTS,

RECOGNITION, AND STRIKES.  (a)  A municipality may not be denied local control over the wages, salaries, rates of pay, hours of work, and other terms of employment, or other state-mandated personnel issues, if the public employer and the bargaining agent come to a mutual agreement on any of the terms of employment.  If an agreement is not reached, the state laws, local ordinances, and civil service rules remain unaffected.  All agreements shall be written.  Nothing in this subchapter requires either party to meet and confer on any issue or reach an agreement.

(b)  A public employer may only meet and confer if the bargaining agent does not advocate the illegal right to strike by public employees.

(c)  Police officers of a municipality may not engage in strikes or organized work stoppages against this state or a political subdivision of this state.  A police officer who participates in a strike or work stoppage forfeits all civil service rights, reemployment rights, and any other rights, benefits, or privileges the police officer enjoys as a result of employment or prior employment.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 2, eff. Sept. 1, 2001.

Sec. 143.354.  RECOGNITION OF POLICE EMPLOYEE GROUP.  (a) The public employer in accordance with this section may recognize a police employee group as the sole and exclusive bargaining agent for all of the police officers in the municipality, excluding the department head and assistant department heads, unless recognition of the police employee group is withdrawn by a majority of those police officers, if the employee group submits a petition signed by 40 percent of:

(1)  the number of police officers in the municipality who voted in the last election held under Section 143.360 before the petition is submitted, excluding the head of the department and assistant department heads in the rank or classification immediately below that of the department head; or

(2)  the paid police officers in the municipality,

excluding the head of the department and assistant department heads in the rank or classification immediately below that of the department head, if an election under Section 143.360 has not been held in the municipality.

(b)  A petition submitted under Subsection (a) must clearly show on each page the name of the police employee group circulating the petition.  A police officer who signs a petition submitted under Subsection (a) may not be counted towards the 40 percent requirement under that subsection unless that officer's printed name and payroll number and the date of the signature are included on the petition.  The petition must be submitted to the municipal secretary not later than the 60th day after the first date on which a police officer signs the petition.

(c)  Within the 30 days after the date the petition is submitted, the municipal secretary shall verify the signatures on the petition and, if the petition complies with this section, call for the election.  The election shall be conducted within 45 days after the date on which the municipal secretary calls for the election.

(d)  An election required by this section shall be conducted according to procedures agreed on by the parties.  If the parties are unable to agree on election procedures, either party may request the American Arbitration Association to conduct the election and to certify the results.  Certification of the results of an election under this subsection resolves the question concerning representation.  The police employee group shall pay the costs of the election, except that if two or more police employee groups seeking recognition as the bargaining agent submit petitions signed by a majority of the police officers eligible to sign the petition, the police employee groups shall share equally the costs of the election.  A police employee group must make payments required by this subsection not later than the 10th day before the date of the election.

(e)  The public employer's chief executive officer shall designate a team to represent the public employer as its sole and exclusive bargaining agent for issues related to the police department.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 3, eff. Sept. 1, 2001.


Sec. 143.358. OPEN RECORDS REQUIRED. All documents relating to an agreement between a bargaining agent and a public employer shall be available to the public in accordance with state statutes.
Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 5, eff. Sept. 1, 2001.


Sec. 143.359. ENFORCEABILITY OF AGREEMENT. (a) A written agreement made under this subchapter between a public employer and a bargaining agent is enforceable and binding on the public employer, the bargaining agent, police employee groups, and the police officers covered by the agreement if:

(1) the municipality's governing body ratified the agreement by a majority vote; and

(2) the agreement is ratified under Section 143.360.

(b) A state district court of the judicial district in which a majority of the population of the municipality is located has full authority and jurisdiction on the application of either party aggrieved by an action or omission of the other party when the action or omission is related to a right, duty, or obligation provided by any written agreement ratified as required by this subchapter. The court may issue proper restraining orders, temporary and permanent injunctions, and any other writ, order, or process, including contempt orders, that are appropriate to enforcing any written agreement ratified as required by this subchapter.
Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 6, eff. Sept. 1, 2001.


Sec. 143.360. ELECTION TO RATIFY AGREEMENT. (a) The bargaining agent shall call an election to ratify any agreement

131

reached with the public employer.

(b)  All police officers of the municipality, other than the department head and assistant department heads, are eligible to vote in the election.

(c)  The bargaining agent shall establish procedures for the election.

(d)  A majority of all votes cast is required to ratify an agreement.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 7, eff. Sept. 1, 2001.

Sec. 143.361.  AGREEMENT SUPERSEDES CONFLICTING PROVISIONS. (a)  A written agreement ratified under this subchapter between a public employer and the bargaining agent supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, and other terms of employment other than pension benefits to the extent of any conflict with the previous statute.

(b)  A written agreement ratified under this subchapter preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or a political subdivision or agent of the state, such as a personnel board, a civil service commission, or a home-rule municipality.

(c)  An agreement under this subchapter may not diminish or qualify any right, benefit, or privilege of an employee under this chapter or other law unless approved by a majority of the votes cast at the secret ballot election held by the bargaining agent to ratify the agreement.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 8, eff. Sept. 1, 2001.

Sec. 143.362.  REPEAL OF AGREEMENT BY ELECTORATE. Within 45 days after the date an agreement is ratified and signed by the municipality and the bargaining agent, a petition signed by a number of registered voters equal to 10 percent of the votes cast at the most recent mayoral general election in the municipality may be

presented to the municipal secretary calling an election for the repeal of the agreement, in which event the governing body shall reconsider the agreement, and, if it does not repeal the agreement, it shall call an election of the qualified voters to determine if they desire to repeal the agreement.  The election shall be held as part of the next regularly scheduled municipal election or at a special election called by the governing body for that purpose.  If at the election a majority of the votes are cast in favor of the repeal of the adoption of the agreement, the agreement becomes void.  The ballot shall be printed to provide for voting for or against the proposition:

"Repeal of the adoption of the agreement ratified by the municipality and the police officers of the municipality concerning wages, salaries, rates of pay, certain benefits, hours of work, and other terms of employment."

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 9, eff. Sept. 1, 2001.


Sec. 143.363.  PROTECTED RIGHTS OF INDIVIDUAL EMPLOYEES. (a)  For the purpose of any disciplinary appeal to either the civil service commission or a hearing examiner, all police officers have the right to choose to be represented by any person of their choice or by the police employee group selected as the bargaining agent.

(b)  An agreement may not interfere with the right of a member of a police employee group to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex, or disability with the Commission on Human Rights or the Equal Employment Opportunity Commission or to pursue affirmative action litigation.

Added by Acts 1997, 75th Leg., ch. 1195, Sec. 3, eff. Sept. 1, 1997. Amended by Acts 2001, 77th Leg., ch. 1464, Sec. 10, eff. Sept. 1, 2001.


SUBCHAPTER K.  CIVIL SERVICE STATUS OF EMERGENCY MEDICAL SERVICES
PERSONNEL IN CERTAIN MUNICIPALITIES

Sec. 143.401.  APPLICABILITY.  (a) This subchapter applies only to a municipality:

(1)  with a population of 460,000 or more that operates under a city manager form of government; and

(2)  that employs emergency medical services personnel in a municipal department other than the fire department.

(b)  In this subchapter, "emergency medical services personnel" has the meaning assigned by Section 773.003, Health and Safety Code. The term applies only to an individual certified under Chapter 773, Health and Safety Code.

Added by Acts 2011, 82nd Leg., R.S., Ch. 708 (H.B. 554), Sec. 1, eff. June 17, 2011.

Sec. 143.402.  ELECTION TO ADOPT OR REPEAL SUBCHAPTER. (a)  A municipality may hold an election to adopt or repeal this subchapter as provided by this section.

(b)  If the governing body of the municipality receives a petition requesting an election that is signed by a number of registered voters who reside in the municipality equal to at least 10 percent of the number of voters who voted in the most recent municipal general election, the governing body shall order an election submitting to the voters the question of whether this subchapter should be adopted. The election must be held on the first authorized uniform election date prescribed by Chapter 41, Election Code, that occurs after the petition is filed and that allows sufficient time to comply with other requirements of law.

(c)  The ballot shall be printed to provide for voting for or against the proposition: "Adoption of the emergency medical services personnel civil service law." If a majority of the votes received in the election favor adoption of this subchapter, the governing body shall implement this subchapter.

(d)  A petition for a subsequent election to be held under Subsection (b) may not be filed for at least one year after the date of a previous election under that subsection. To be valid, a petition for a subsequent election must contain the signatures of a number of registered voters who reside in the municipality equal to at least 20 percent of the number of voters who voted in the most

recent municipal general election. Any subsequent election must be held at the next municipal general election that occurs after the petition is filed.

(e) If the governing body of a municipality that has operated under this subchapter for at least one year receives a petition requesting an election to repeal this subchapter that is signed by at least 10 percent of the registered voters who reside in the municipality, the governing body shall order an election submitting to the voters the question of whether this subchapter should be repealed. If a majority of the votes received favor repeal of this subchapter, this subchapter is void in that municipality.

Added by Acts 2011, 82nd Leg., R.S., Ch. 708 (H.B. 554), Sec. 1, eff. June 17, 2011.


Sec. 143.403. STATUS OF EMPLOYEES IF SUBCHAPTER ADOPTED. (a) Each person who is employed for more than six months as emergency medical services personnel serving in a municipality at the time this subchapter is adopted in the municipality and who is entitled to civil service classification has the status of a civil service employee and is not required to take a competitive examination to remain in the position the person occupies at the time of the adoption.

(b) On adoption of this subchapter, the governing body of the municipality employing emergency medical services personnel shall classify the personnel in accordance with Section 143.021 and the duties performed by the personnel.

(c) To the extent it can be made applicable, each provision of this chapter, including the provisions relating to eligibility lists, examinations, promotions, appointments, educational incentive pay, longevity or seniority pay, certification pay, assignment pay, salary, vacation leave, and disciplinary appeals, applies to emergency medical services personnel covered by this subchapter.

Added by Acts 2011, 82nd Leg., R.S., Ch. 708 (H.B. 554), Sec. 1, eff. June 17, 2011.

# APPENDIX 3

AGREEMENT

BETWEEN

THE CITY OF AUSTIN

AND

THE AUSTIN POLICE ASSOCIATION


EFFECTIVE October 1, 2008

# TABLE OF CONTENTS

Article 1 – Preamble ...............................................................................................1

Article 2 – Definitions ...........................................................................................1

Article 3 – Recognition ..........................................................................................2

Article 4 – Management Rights ..............................................................................3

Article 5 – Non-Discrimination .............................................................................4

Article 6 – Union Dues, Check Off and Indemnification ......................................5

Article 7 – Wages and Benefits ..............................................................................6

Article 8 – Overtime, On-Call, Court Time, and Call Back .................................11

Article 9 – Special Leave Provisions.....................................................................12

Article 10 – Holidays, Vacation and Sick Leave ..................................................13

Article 11 – Association Business Leave ...............................................................14

Article 12 - Association Communication ..............................................................16

Article 13 – Promotions .........................................................................................17

Article 14 – Initial hiring Process .........................................................................30

Article 15 – Drug Testing ......................................................................................35

Article 16 – Citizen Oversight of the Austin Police Department..........................38

Article 17 – Protected Rights of Officers ..............................................................51

Article 18 – Disciplinary Actions, Demotions and Appeals..................................54

Article 19 – Assignment Changes ..........................................................................62

Article 20 – Agreement Grievance Procedure........................................................63

Article 21 – Term of Agreement ............................................................................66

Article 22 – Notices ...............................................................................................68

**Article 23 – Entire Agreement**.................................................................69

**Article 24 – Savings Clauses**...................................................................70

**Article 25 – Consolidation of Public Safety Officers into APD** ..............71

# ARTICLE 1

## PREAMBLE

**Section 1.  Date of Agreement**

This Agreement made, entered into, and first effective this 1st day of October, 2008 (unless specific provisions or Exhibit terms set forth a later effective date) by and between the City of Austin, Texas, hereinafter referred to as the "CITY," and the Austin Police ASSOCIATION, hereinafter referred to as the "ASSOCIATION," and its terms shall be effective only until the expiration date of the Agreement, or as stipulated in this Agreement.

**Section 2.  Purpose of Agreement**

WHEREAS, the CITY has voluntarily endorsed the practices and procedures of the statutory meet and confer process as an orderly way of conducting its relations with its police officers, insofar as such practices and procedures are appropriate to the functions and obligations of the CITY to retain the rights to operate the CITY government effectively in a responsible and efficient manner; and

WHEREAS, the ASSOCIATION has pledged to support the service and mission of the Austin Police Department and to abide by the statutorily imposed no strike or work slow down obligations placed upon it; and

WHEREAS, it is the intent and purpose of the parties to set forth herein their entire Agreement;

NOW, THEREFORE, IN CONSIDERATION OF THE mutual covenants and agreements herein contained, the parties mutually agree as follows:

## ARTICLE 2

## DEFINITIONS

The following definitions apply to terms used in this Agreement, unless a different definition is required by the context in which the term is used.

1. "ASSOCIATION" means the Austin Police Association, and its officers and agents authorized to act on its behalf.

2. "Chief" means the Chief of Police of the Austin Police Department or his designee.

3.  "Employer" or "CITY" means the City of Austin, Texas, the Austin Police Department and its officers, agents, managers, and others authorized to act on the CITY's behalf.

4.  "HRD" means the City of Austin's Human Resources Department.

5.  "Officer" means, all police officers, as the term is currently defined in Texas Local Government Code, Section 143.003 (5), and those hired under the provisions of this Agreement in the Austin Police Department, except the Head of the Department and, unless otherwise specified, Assistant Department Heads in the rank or classification immediately below that of the Department Head. The term also excludes cadets, civilian employees, retirees, and any other employees specifically exempted by the terms of this Agreement. Probationary officers are excluded from the coverage of Article 18 and cannot file grievances pursuant to Article 20 regarding disciplinary actions.

6.  "Meet and Confer Statute" means Subchapter I of Chapter 143 of the Texas Local Government Code, Sections 143.301-143.313.

7.  "Chapter 143" means Chapter 143 of the Texas Local Government Code.

8.  "Authorized ASSOCIATION Representative" means a representative of the ASSOCIATION authorized by the ASSOCIATION's executive board to conduct business on behalf of the ASSOCIATION.

9.  "Police Civil Service Commission" means the three (3) member Civil Service Commission appointed by the City Manager, pursuant to Section 143.006 of the Texas Local Government Code.

10. "Preemption" means to the extent that any provision of this article conflicts with or changes Chapter 143 or any other statute, executive order, local ordinance, or rule, this Agreement shall supersede such provision, as authorized by Section 143.307 of the Texas Local Government Code.

11  "Business day" means a day on which the City conducts normal business. In addition, the day of the act, event or default after which a period of time begins to run is not included. The last day of the period is included unless it is a weekend or City observed holiday.

## ARTICLE 3

## RECOGNITION

The CITY recognizes the ASSOCIATION as the sole and exclusive bargaining agent for all covered police officers, pursuant to Section 143.301 et seq. of Chapter 143,

excluding the Police Chief, the Assistant Police Chiefs, and all civilian employees of the Police Department.

# ARTICLE 4

# MANAGEMENT RIGHTS

## Section 1. Retained Rights – General

The CITY retains all inherent rights to manage the Police Department and its work force which it presently enjoys, subject to applicable federal and state statutes and local ordinances, resolutions, and rules, except as specifically provided in this Agreement. These rights include, but are not limited to: direction of the work force, including but not limited to, the right to hire; the right to discipline or discharge; the right to decide job qualifications for hiring; the right to lay-off or abolish positions; the right to make rules and regulations governing conduct and safety; the right to determine schedules of work together with the right to determine the methods, processes and manner of performing work; the determination of the size of the work force, and the assignment of work to officers within the department, including the right to transfer officers; the determination of policy affecting the selection of new officers; the right to establish the services and programs provided by the department, including the nature and level of such services and programs, as well as the type and quantity of resources allocated; the right to establish work performance measurement and standards; and the right to implement programs to increase the cost effectiveness of departmental operations.

## Section 2. Retained Right of Independent Investigation

The Chief of Police and the City Manager fully retain their rights to independently investigate police conduct.

## Section 3. Public Report by Volunteer Citizen Panel or Independent Investigator

a) The provisions of Section 143.089(g) of the Texas Local Government Code are expressly modified to the extent necessary to permit public release of a final report prepared by an investigator who conducts an Independent Investigation authorized by the Chief of Police or City Manager concerning police conduct. An "Independent Investigation" does not include attorney-client work product or privileged material related to the defense of claims or suits against the City of Austin. The release of a Volunteer Citizen Panel (hereinafter "Panel") report is also authorized, subject to the limitations in this agreement.

b) The public release of information authorized by this Section shall not contain or reveal evidentiary facts, or other substantive investigative information from the file, except to the extent that such information is at the time of such release no longer protected from public disclosure by law, or is already public as a matter of fact by lawful or authorized means or by the officer's own release. For example, the names of officers

in an investigation may not be released; but could be released if those officers have elected to enter the public debate and discuss their involvement, or if the public has been informed of identities by lawful or authorized means in the course of grand jury or other legal proceedings. Likewise, the name, identifying characteristics, or contact information for any involved party or complainant shall not be released, except to the extent that such information is at the time of such release no longer protected from public disclosure by law, or is already public as a matter of fact by lawful or authorized means or by the officer's own release. The public statements authorized in this agreement are subject to review by the City of Austin Department of Law to insure compliance with this agreement and to determine whether the release of such information may be prohibited by any other law.

c) This Section shall apply to any Independent Investigation or citizen panel report whether completed prior to or after the effective date of this Agreement, and applies to every position and rank within the Austin Police Department.


# ARTICLE 5

## NON-DISCRIMINATION

**Section 1. Discrimination Prohibited**

Neither the CITY nor the ASSOCIATION shall discriminate with regard to the implementation of any term or condition of this contract, against any officer covered by this Agreement in a manner which discrimination would violate any applicable federal or state law or any CITY ordinances on the basis of race, creed, color, national origin, age, sex, sexual orientation, or disability.

**Section 2. Association Membership or Activity**

Neither the CITY nor the ASSOCIATION shall interfere with the right of officers covered by this Agreement to become or not become members of the ASSOCIATION, and there shall be no discrimination against such officers because of lawful ASSOCIATION membership or non-membership activity or status.

**Section 3. Association Fair Representation.**

The ASSOCIATION recognizes its responsibility as the exclusive representative under the meet and confer statute and agrees to fairly represent all officers in the Department covered by this Agreement.

# ARTICLE 6

## UNION DUES, CHECK OFF AND INDEMNIFICATION

### Section 1. Payroll Deductions and Union Dues

Upon receipt of a signed authorization from an officer on a form supplied by the CITY, the dues and assessments that existed on the date of this Agreement, including but not necessarily limited to: APA dues, pagers, telephones, PAC, dues for Austin Police Women's Association, Amigos en Azul and Texas Peace Officers Association, and contributions by officers to the Association's charitable organization, *Austin Cops for Charities*, shall be deducted from such officer's pay. Officers who are already having dues deducted as of the execution date of this Agreement are not required to submit a new dues deduction form. The dues deductions shall be remitted promptly to the treasurer of the ASSOCIATION. The ASSOCIATION agrees to defray the actual cost of making such deductions, except deductions for *Austin Cops for Charities,* not to exceed the per deduction amount paid by other employee associations. The City agrees to provide a list of those members for whom deductions are made each month. The ASSOCIATION may change the amount of the deduction for those employees who have authorized payroll deductions by providing the City with a letter, at least thirty (30) calendar days in advance of the change, from the ASSOCIATION President advising the City that the amount has changed pursuant to the requirements of the ASSOCIATION's Constitution and Bylaws. The ASSOCIATION will promptly refund to the CITY any amount paid to the ASSOCIATION in error on account of this dues deduction provision. Additional assessments may be deducted by mutual agreement of the parties.

### Section 2. Other Payroll Deductions

The CITY agrees that it will not authorize payroll deduction of dues or fees for any organization that purports to represent Austin police officers in employment matters, that is not currently authorized to have payroll deduction of dues. This requirement shall not apply to organizations specifically listed in this Article or organizations that enjoyed dues check off as of the date the Austin City Council recognized the APA as the sole and exclusive bargaining representative of officers in the Department, including the Austin Police Association and the Combined Law Enforcement Association of Texas

### Section 3. Indemnification

**The ASSOCIATION shall jointly defend the provisions of this article on behalf of both parties, and shall indemnify the CITY and any departments of the CITY and hold it harmless against any and all claims, demands, suits or other forms of liability that may arise out of, or by reason of, any actions taken by the CITY or any department of the CITY for any purpose of complying with provisions of this article. The Association shall be entitled to select and direct counsel for such defense, but shall reasonably cooperate with counsel designated by the City Attorney to participate.**

**Section 4.  Effect of Contract Expiration**

The provisions of this Article shall remain in full force and effect after expiration of this Agreement until a successor Agreement has been reached, or twelve (12) months after expiration of this Agreement.

# ARTICLE 7

## WAGES AND BENEFITS

**Section 1.  Base Wages**

**a)  For Fiscal Year 2008-2009**

Effective with the pay period beginning December 7, 2008, the pay scale attached hereto as Appendix A-1 shall apply to all police officers covered by this Agreement.  The pay scale reflects a 2.5% increase to base wages.

**b)  For Fiscal Year 2009-2010**

Effective with the first pay period of Fiscal Year 2009-2010, the pay scale attached hereto as Appendix A-2 shall apply to all police officers covered by this Agreement.  The pay scale reflects a 3.0% increase to base wages.  Provided, however, that if the majority of non-public safety employees, through any City-wide compensation program, receive a base wage increase of less than two and one-half percent (2.5%) for Fiscal Year 2009-2010, the three percent (3.0%) base wage increase provided for in this Section shall be reduced to a base wage increase of two and three-quarters percent (2.75%).  If the base wage increase is adjusted as provided in this section, a new pay scale will be substituted for Appendix A-2.

**c)  For Fiscal Year 2010-2011**

Effective with the first pay period of Fiscal Year 2010-2011, the pay scale attached hereto as Appendix A-3 shall apply to all police officers covered by this Agreement.  The pay scale reflects a 3.0% increase in base wages.

**d)  For Option Year of Agreement Fiscal Year 2011-2012**

If the City exercises its option to extend this Agreement for a fourth year, as provided in Article 21, the pay scale attached hereto as Appendix A-4 shall apply to all police officers covered by this Agreement.  The pay scale reflects a 3.0% increase to base wages. Provided, however, that if the majority of non-public safety employees, through any City-wide compensation program, receive a base wage increase of more than 3.0% for Fiscal Year 2011-2012, the 3.0% base wage increase provided for in this Section shall be increased to the base wage increase received by the majority of non-public safety

employees. If the base wage increase is adjusted as provided in this section, a new pay scale will be substituted for Appendix A-4.

**Section 2. Longevity Pay**

a) Longevity pay in the amount of ninety-six dollars ($96.00) per year of service, up to a maximum of 25 years, shall continue to be paid in a lump sum in the first regularly scheduled pay period after the officer's anniversary date, which is the annual anniversary of the officer's most recent commission date. Beginning with Fiscal Year 2010-2011, longevity pay will be increased to one hundred dollars ($100.00) per year of service, up to a maximum of 25 years. This change in payment of longevity does not affect the treatment of longevity for retirement and overtime purposes, and the CITY and the officers shall continue making contributions for longevity payments.

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of §141.032 of the Texas Local Government Code.

**Section 3. Retirement Contributions**

a) Beginning with Fiscal Year 2010-2011, the City shall increase its contribution rate to the Austin Police Retirement System by one percent (1.0%).

b) If the City exercises its option to extend this Agreement for a fourth year (Fiscal Year 2011-2012), as provided in Article 21, the City shall increase its contribution rate to the Austin Police Retirement System by an additional one percent (1.0%).

c) The City agrees that the statute governing the Austin Police Retirement System should be amended to incorporate the increased City contribution rate provided in this Agreement.

**Section 4. Field Training Officer Pay**

a) Field training officer (FTO) pay shall be paid at the effective rate of one hundred and seventy five ($175.00) per month to each officer assigned in the FTO program, as selected according to criteria established by the Chief. This payment shall not be made to officers assigned to the Training Division, to the FTO Program Coordinator. Officers authorized to train probationary patrol officers during their probationary period, and not a part of the FTO program, will be compensated for the actual hours spent training.

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of §143.043 of the Texas Local Government Code.

## Section 5. Mental Health Certification Pay

a) Mental Health Certification Pay shall be paid at the effective rate of one hundred and seventy five dollars ($175.00) per month to each officer assigned to a Patrol Shift, and serving as a Mental Health Officer as selected and approved according to criteria established by the Chief. This payment shall not be made to the officers assigned to the Crisis Intervention Team.

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of Sections 143.041 and 143.042 of the Texas Local Government Code.

## Section 6. Bilingual Pay

a) Bilingual pay will be paid at the rate of one hundred and seventy five ($175.00) per month for officers certified under standards established by the Chief and assigned to the bilingual program. The bilingual program shall include German, Spanish, French/Haitian, Asian (Vietnamese, Cantonese, Thai, Korean, Japanese, and Malaysian), Russian, Ukrainian, and sign language for the deaf. Officers will not be paid cumulatively if they are certified in more than one language.

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of Sections 143.041 and 143.042 of the Texas Local Government Code.

## Section 7. Compensation for Lieutenants and Commanders

a) Lieutenants and Commanders shall be compensated on a salary basis and are exempt employees for purposes of overtime compensation under applicable federal law. The parties further agree that the Lieutenants and Commanders accept their salaries as inclusive of any and all overtime compensation.

b) Lieutenants permanently assigned to an evening or night shift in Patrol shall be paid an additional stipend of three hundred dollars ($300.00) per month. Lieutenants assigned to a Patrol Area Command who are assigned to an evening or night shift for a twenty eight (28) calendar day cycle, when the shift begins at or after 2:00 p.m., shall be entitled to three hundred dollars ($300.00) per month.

c) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of §143.047 and §142.0015 of the Texas Local Government Code.

## Section 8. Assistant Chiefs

a) The Chief of Police has the right to set wages and benefits for the Assistant Chiefs, subject to the approval of the City Council as a part of the budget. The Chief may

designate one Assistant Chief as the Executive Assistant or Chief of Staff, whose pay and benefits may be different than the other Assistant Chiefs. Additional performance pay may be awarded in the Chief's discretion.

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of §142.0015 and §143.041 of the Texas Local Government Code.

**Section 9. Clothing Allowance**

During the term of this contract, the clothing allowance shall be five hundred dollars ($500.00) per year for all officers deemed eligible by the Chief, with a payment schedule to be determined by the Chief.

**Section 10. Education and Certificate Pay**

An officer shall be entitled to either Certificate pay or Education pay, at the highest qualifying rate, but shall not be entitled to both. Education pay shall only be payable for degrees or college credit from an accredited college or university. An accredited college or university is an institution of higher education that is accredited or authorized by the Southern Association of Colleges and Schools, the Middle States Association of Colleges and Schools, the New England Association of Schools and Colleges, the North Central Association of Colleges and Schools, the Northwest Association of Schools and Colleges, or the Western Association of Schools and Colleges (Reference: TCLEOSE Rule 211.1(a)(3), as modified by the Commission from time to time).

**a) Certificate Pay**

(1) Each officer holding an Intermediate TCLEOSE Certificate shall be paid fifty dollars ($50.00) per month. Each officer holding an Advanced TCLEOSE Certificate shall be paid one hundred dollars ($100) per month. Each officer holding a Master TCLEOSE Certificate shall be paid one hundred fifty dollars ($150.00) per month.

(2) No officer hired after March 25, 2001, will be eligible for Intermediate or Advanced Certificate pay. Certificate pay amounts at or above those set forth in this agreement remain in effect, and this agreement continues the right of all officers to qualify for or achieve Master Certification pay.

**b) Education Incentive Pay**

(1) Each officer holding an Associate's degree or sixty (60) hours of college credit shall be paid one hundred dollars ($100.00) per month.

(2) Each officer holding a Bachelor's degree shall be paid two hundred and twenty dollars ($220.00) per month.

(3) Each officer holding a Master's degree shall be paid three hundred dollars ($300.00) per month.

**c) Preemption**

It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of Sections 143.041 and 143.044 of the Texas Local Government Code.

**Section 11. Shift Differential**

a) The CITY shall pay an additional three hundred dollars ($300.00) per month to an officer normally assigned to an evening or night shift for a twenty eight (28) calendar day cycle, when the shift begins at or after 2:00 p.m. Only officers working 50% or more of their shifts beginning at or after 2:00 p.m., in a 28 calendar day cycle, shall be eligible. Shift differential pay shall apply to all ranks up to and including Sergeant. This provision shall apply in lieu of the City policy applicable to shift differential for any other employees

b) It is expressly understood and agreed that this section shall be entitled to preemption including but not limited to the provision of §143.047 of the Texas Local Government Code.

**Section 12. Monthly Paid Compensation**

It is expressly understood and agreed that the CITY reserves the right to pro-rate and pay all monthly payments in bi-weekly equivalents.

**Section 13. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 141.032 and 142.0015 and Sections 143.041 through 143.047.

# ARTICLE 8

## OVERTIME, ON-CALL, COURT TIME AND CALL BACK

### Section 1.  Overtime

For purposes of computing overtime, all approved paid leave time, other than sick leave, shall be calculated as hours worked.

### Section 2.  On-call status

The City will allow eight (8) hours of comp time per week for any non-exempt officer on call, as defined by Department policy implemented by the Chief.  Officers placed on "court call" while under subpoena to court for two or more consecutive calendar days, shall not be eligible under the prior sentence, but shall receive one (1) hour of additional comp time per day for each regularly scheduled day off or pre-approved leave day.

### Section 3.  Court time

a) An officer who attends court more than one hour before the start of his/her regularly scheduled shift shall receive a minimum of four (4) hours compensation at time and one half. (e.g. If the officer is assigned to work from 9:00 a.m. till 7:00 p.m., and he/she must attend municipal court at 7:00 a.m. the same day, the officer is entitled to four (4) hours of overtime).

b) If the officer attends court one hour or less before the start of his/her regularly scheduled shift, the officer shall receive one (1) full hour of compensation at time and one half. (e.g. if the officer's shift starts at 9:00 a.m., but he/she must attend municipal court at 8:00 a.m. or later, the officer shall receive one full hour of overtime).

c) An officer who attends court after his/her regularly scheduled shift has ended shall receive a minimum of four (4) hours compensation at time and one half (e.g. If the officer is assigned to work from 10:00 p.m. till 8:00 a.m., and he/she must attend municipal court at 8:00 a.m. the same date, the officer is entitled to four (4) hours of overtime).

d) If the officer's court assignment begins during his/her regularly scheduled shift but continues beyond his/her normal duty hours, the officer will only be entitled to the actual amount of overtime hours worked. (e.g. If the officer is assigned to work from 10:00 p.m. till 8:00 a.m., and if the officer's court assignment begins at 7:30 a.m. and the officer is not dismissed from court until 9:00 a.m., the officer shall receive only one (1) hour of overtime).

**Section 4. Call back**

a) Non-exempt officers who are off-duty and receive notification to return to duty status one hour or less before the start of their regularly scheduled shift shall receive one (1) full hour of compensation at time and one half.

b) Non-exempt officers who are off-duty and receive notification to return to duty status shall receive a minimum of three (3) hours of compensation at time and one half when notified to return to duty status:

    1. After the conclusion of their regularly scheduled shift, or

    2. More than one (1) hour before their regularly scheduled shift.

c) Non-exempt officers who are off-duty and receive notification to return to duty status shall receive only fifteen (15) minutes of compensation at time and a half should the callback be cancelled within fifteen (15) minutes of the notification, or the actual time spent completing the assignment lasted no more than fifteen (15) minutes.

**Section 5. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 142.0015 and 142.009.

## ARTICLE 9

## SPECIAL LEAVE PROVISIONS

**Section 1. Emergency Leave**

Each officer may utilize up to forty (40) hours of paid emergency leave for a death in the immediate family as defined in the City of Austin personnel policies.

**Section 2. Sick Leave Donation**

If an officer is in danger of having used all accrued time (vacation, sick, etc.) due to a serious illness or injury, as defined by the FMLA, other officers may voluntarily donate up to forty (40) hours of vacation or sick leave to the ill or injured employee to avoid loss of pay. No officer shall be permitted to bank more than four hundred (400) hours of such donated leave within any twelve (12) month period of time. Donated leave may only be used for the officer to whom donated. In the event that all of the donated leave time is not used, the City shall not be obligated to make any redistribution of banked hours to the donors. The remaining unused donated amount shall not be paid on separation.

## Section 3. Payment of Sick Leave on Separation

Separation pay for accrued sick leave will be paid only to officers with at least ten (10) years of actual service who separate in good standing. An officer shall not be considered to have separated in good standing if he/she is indefinitely suspended or leaves the Department in lieu of termination. The maximum accrued sick leave payable will be 1,400 hours.

## Section 4. Administrative Leave

Officers may be granted Administrative Leave based on participation in a City or departmental program that awards Administrative Leave to program participants or for any purpose or event authorized by the Chief.

## Section 5. Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 143.041, 143.045, 143.046.

## ARTICLE 10

## HOLIDAYS, VACATION AND SICK LEAVE

## Section 1. Christmas Holiday

All non-exempt hourly employees whose shift begins on December 25 shall continue to be paid time and one half their regular hourly rate for all hours actually worked for the entire shift. Exempt employees who are required by their immediate supervisor to work on Christmas shall be paid a holiday stipend pursuant to City policy.

## Section 2. Seniority Standards

The City shall provide by policy for the application of seniority standards on use of Holidays and Vacation, but agrees that any policy will apply equal standards, either department-wide or division-wide.

## Section 3. Vacation Accrual Rate

All sworn officers shall accrue regular vacation leave at the rate of 6.25 hours for each pay period in which benefits accrue.

**Section 4. Accrual Caps for Vacation and Exception Vacation**

All sworn officers may accrue up to four hundred (400) hours of vacation and up to one hundred sixty (160) hours of exception vacation. The maximum hours of vacation payable upon separation shall continue to be two hundred forty (240) hours of vacation and one hundred sixty (160) hours of exception vacation, in accordance with City policy.

**Section 5. Sick Leave Accrual Rate**

All sworn officers shall accrue sick leave at the rate of 6.08 hours for each pay period in which benefits accrue.

**Section 6. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 142.0013; 142.0015; 142.0016; and Sections 143.045 and 143.046.

## ARTICLE 11

## ASSOCIATION BUSINESS LEAVE

**Section 1. Time Off For Association Business**

a) An ASSOCIATION business leave time pool (the Pool) shall be created for the purpose of conducting ASSOCIATION business. Association business is defined as time spent in Meet and Confer negotiations, adjusting grievances or in dispute resolution process, attending the annual State CLEAT conference, the Association's Executive Board meetings, and regular Association business meetings. It is specifically understood and agreed that Association pool time shall not be utilized for legislative and/or political activities at the State or National level, unless they relate to the wages, rates of pay, hours of employment, or conditions of work affecting the members of the ASSOCIATION. At the local level, the use of Association pool time for legislative and/or political activities shall be limited to raising concerns regarding officer safety. Association pool time shall not be utilized for legislative and/or political activities related to any election of public officials or City Charter amendments. Association pool time shall not be utilized for legislative and/or political activities that are sponsored or supported by the Association's Political Action Committee(s).

b) It is specifically understood and agreed that no Association pool time shall be utilized for legislative and/or political activities at the local, state, or national level that are contrary to the City's adopted legislative program. No Association pool time shall be

utilized for activities prohibited by Section 143.086 of Chapter 143 or by the Texas Ethics Commission. Nothing contained in this Subsection is intended to limit the use of the individual officer's remaining vacation time by the officer for legislative and/or political activities.

**Section 2. Establishment of Association Leave Time Pool**

a) Each year during the term of this Agreement, during the first ten (10) days of the calendar year, the City will contribute 7,000 hours of Association Business Leave to a pool of leave time which may be used in accordance with this Article. The City will track deductions from the pool as Association Business Leave is used.

b) Any pool hours remaining at the end of a calendar year will remain in the pool to be utilized in the following year. Hours of leave in the pool shall never have any cash or surrender value.

**Section 3. Use of Association Business Leave Time Pool**

a) All Association business leave will be requested in writing to the ASSOCIATION President, and submitted in advance for approval by the Chief, including a determination that the occurrence for which Pool time is requested meets the requirements established in Section 1. The Chief may waive the requirement that the request and approval be in writing. Requests for use of Pool time shall be made as far in advance as is practicable. The ASSOCIATION President may be permitted up to 2080 hours of such leave, under criteria set by the Chief's office in a written policy. The ASSOCIATION President shall account for all leave time taken under such status through the Chief's office, and such time shall be subtracted from the Association leave pool. There shall be no entitlement for overtime pay for any hours worked on ASSOCIATION business. Such employee may at any time be required to return to duty if any emergency situation or the best interests of the Department require; and such employee may additionally be assigned to special projects, in the discretion of the Chief.

b) ASSOCIATION Board Members and each of the standing Committee Chairpersons may each be authorized to utilize up to three hundred (300) hours from the Pool during the year. Subject to the Chief's operational control and approval, two Board Members or Committee Chairpersons may be authorized to utilize more than three hundred (300) hours of leave from the Pool during the year.. No more than one-half (1/2) of the hours specified in this Subsection may be used for legislative and/or political activities as limited in Subsection 1 above. The ASSOCIATION may request approval for the use of additional Pool hours for ASSOCIATION members. Any use of additional Pool time will be solely at the Chief's discretion. The practice of addressing cadet classes twice during cadet training, with approval of the time and content by the Chief, shall continue through the duration of this Agreement. Such time spent addressing cadet classes shall be deducted from the Pool. This provision does not exclude the Chief from approving other individuals or groups to address cadet classes at his discretion, including employee representative groups with current dues check off.

**Section 4. Indemnification**

The ASSOCIATION shall jointly defend the provisions of this article on behalf of both parties, and shall indemnify the CITY and any Department of the CITY and hold it harmless against any and all claims, demands, suits or other forms of liability that may arise out of, or by reason of, any actions taken by the CITY or any Department of the CITY for any purpose of complying with provisions of this article. The Association shall be entitled to select and direct counsel for such defense, but shall reasonably cooperate with counsel designated by the City Attorney to participate.

**Section 5. Effect of Contract Expiration**

The provisions of this Article shall remain in full force and effect after expiration of this Agreement until a successor Agreement has been reached, or twelve (12) months after expiration of this Agreement.

# ARTICLE 12

# ASSOCIATION COMMUNICATION

The ASSOCIATION'S access to City facilities and equipment to communicate with its membership shall include the use of one (1) bulletin board installed at each substation and satellite office, one (1) in the central Criminal Investigations Bureau report writing room, and one (1) in one other location agreed to by the ASSOCIATION and the Chief, and Departmental pagers. Use of pagers shall be in accordance with written Departmental policy, or shall otherwise be approved in advance by the Chief's office. Use of department equipment to create or send email on ASSOCIATION business is not allowed. The design and placement of the bulletin boards shall be approved in advance by the Chief or his designee.

**Section 1. Guidelines for Association Bulletin Boards**

The following guidelines shall apply to materials posted on the bulletin boards:

a) There shall be no personal attacks or inflammatory statements.

b) All materials shall be directed toward dissemination of ASSOCIATION information.

c) Any concerns about the content of posted material shall be brought to the attention of the ASSOCIATION'S executive board for review and adjustment as soon as the concerns are noticed. The Chief shall direct the

objectionable material to be removed from the bulletin board until final determination.

d) In any case, the Police Chief retains the final decision as to whether ASSOCIATION material may be posted on bulletin boards. At no time shall the bulletin boards contain any political endorsement, whether at the local, state or federal level.

## ARTICLE 13

## PROMOTIONS

**Section 1. Corporal/Detective**

This Section becomes effective when the City Council adopts a classification ordinance that combines the current ranks of Corporal and Detective.

Vacancies that occur in the current ranks of Corporal and/or Detective before the ranks are combined will be filled from existing eligibility lists until those lists are exhausted or expire. Vacancies created after expiration of the current lists will be filled from a list resulting from a Corporal/Detective exam that will be administered on or before March 31, 2009.

**a) Eligibility**

(1) A Police Officer shall be eligible to sit for the Corporal/Detective promotional examination after completing four (4) continuous years of service in the rank of Police Officer immediately before the date of the written examination from the date of initial commission with APD.

(2) The job description for the Corporal/Detective rank shall include the duties previously applicable to the separate ranks of Corporal and Detective and shall include acting as a supervisor when a Sergeant is not available, conducting assigned investigation and other duties as determined by the Chief and set out in the job description and general orders.

(3) A Corporal/Detective becomes eligible for promotion to Sergeant after two (2) continuous years in rank. Any Corporal/Detective designated to perform duties as an acting Sergeant, shall be entitled to higher classification pay under the same criteria set forth in Department policy then applicable to any other supervisor temporarily working in the next higher rank.

(4) The first examination for the rank of Corporal/Detective will occur no later than March 31, 2009. Positions in the rank of Corporal/Detective shall be filled from an

eligibility list created by a promotional procedure consisting of a written examination conducted in accordance with this Article.

**b) Scoring**

For the rank of Corporal/Detective the eligibility list shall be calculated as follows:

**<u>Written examination points:</u>**
(See Section 5)

| | |
|---|---|
| Maximum Exam Points | 100 |
| Maximum Education Points | 2 |
| Maximum Seniority Points | <u>+15*</u> |
| Total Maximum Points: | 117** |

*Seniority points calculated at 1 point per year of service, and shall be prorated for partial years.

**Formula shall be carried to 3 decimal points and rounded up from .0005. Police Civil Service tie-breaking rules will be applied if necessary.

**c) Seniority**

Each officer shall be entitled to up to a maximum of fifteen (15) seniority points to be added to the written exam score, equivalent to one (1) point per year of service, which shall be prorated for partial years.

**d) Education**

(1) The following education points shall be added to each candidates score, and shall only apply to college degrees from an accredited college or university, meeting the accreditation standard referenced in Article 7 Section 10 for education incentive pay. No cumulative points shall be allowed for more than one degree or Certification.

      (i) Add .5 point for 60 college credits
      (ii) Add 1.0 point for Bachelor Degree or Master Police Officer Certificate
      (iii)Add 2.0 points for Masters Degree

It is the responsibility of the officer seeking education points to ensure that the Training Academy has the necessary supporting documentation for education points. The documentation must be received by the Training Academy no later than 5:00 p.m. on the seventh (7th) business day before the written examination is administered. No education

points will be counted unless proper documentation is timely received by the Training Academy.

### e) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

## Section 2. Sergeant

### a) Promotional Procedure for Rank of Sergeant

(1) Positions in the rank of Sergeant shall be filled from an eligibility list created by a promotional procedure consisting of a written examination and either a Technical Skills Evaluation or an Assessment Center conducted in accordance with this Article.

(2) For each promotional cycle, the Chief of Police will determine whether the process will include a Technical Skills Evaluation or an Assessment Center. The notice for the Written Examination shall indicate whether the process will include a Technical Skills Evaluation or an Assessment Center.

### b) Optional Technical Skills Evaluation

(1) The Technical Skills Evaluation will be developed by a consultant chosen by the Chief of Police from a list generated by the Human Resources Department. The Evaluation will consist of a written scenario to which the candidate shall submit a written response.

(2) The Evaluation will be administered by the Civil Service Commission immediately following the Written Examination and before the grading of the Written Examination. The candidate's written responses to the Evaluation will be sealed and held for scoring by assessors selected by the consultant based on the same criteria used for selecting Assessment Center assessors in Section 6 below. The candidate's written responses to the Evaluation will not be graded unless the candidate scored at least seventy percent (70%) on the Written Examination.

(3) Scoring of the written responses will be based on a key provided to the assessors by the consultant. The scoring key will award points based on whether the response includes applicable topics or concepts and shall not allow partial credit for topics or concepts, to ensure that the scoring is objective in nature and does not reflect the assessor's subjective judgment.

## c) Scoring

After the Assessment Center or Technical Skills Evaluation scoring has been completed for the rank of Sergeant the eligibility list shall be calculated as follows:

| Written examination points: | | Assessment Center or Technical Skills Evaluation | |
|---|---|---|---|
| Maximum exam points | 100 | Maximum points | 100 |
| Maximum seniority points | +15* | Maximum education points | + 2 |
| Total maximum points: | 115 | Total maximum points: | 102 |

*Seniority points calculated at 1 point per year of service, and shall be prorated for partial years.

### PROMOTION ELIGIBILITY LIST FORMULA:

(Written examination points + seniority points) / 115 x 100 x .70 adjustment factor
+
(Assessment Center or Technical Skills Evaluation Points + Education Points)
/ 102 x 100 x .30 adjustment factor
=
Total points for promotion list**

**Formula shall be carried to 3 decimal points and rounded up from .0005. Police Civil Service tie-breaking rules will be applied if necessary.

## d) Seniority

Each officer shall be entitled to up to a maximum of fifteen (15) seniority points to be added to the written exam score, equivalent to one (1) point per year of service, which shall be prorated for partial years.

## e) Education

(1) The following education points shall be added to each candidate's score. These points shall only be added to the Assessment Center or Technical Skills Evaluation score in accordance with the formula below, and shall only apply to college degrees from an accredited college or university, meeting the accreditation standard referenced in Article 7 Section 10 for education incentive pay. No cumulative points shall be allowed for more than one degree or Certification.

       (i) Add .5 point for 60 college credits
       (ii) Add 1.0 point for Bachelor Degree or Master Police Officer Certificate
       (iii)Add 2.0 points for Masters Degree

       (2) It is the responsibility of the officer seeking education points to ensure that the Training Academy has the necessary supporting documentation for education points. The documentation must be received by the Training Academy no later than 5:00 p.m. on the seventh (7th) business day before the written examination is administered. No education points will be counted unless proper documentation is timely received by the Training Academy.

### f) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

### Section 3. Lieutenant

### a) Promotional Procedure for Rank of Lieutenant

Positions in the rank of Lieutenant shall be filled from an eligibility list created by a promotional procedure consisting of a written examination and an Assessment Center conducted in accordance with this Article.

### b) Scoring

After the Assessment Center scoring has been completed, for the rank of Lieutenant the eligibility list shall be calculated as follows:

| **Written examination points:** (See Section 5) | | **Assessment Center:** | |
|---|---|---|---|
| Maximum exam points | 100 | Assessment Center points | 100 |
| Maximum seniority points | +15* | Maximum education points | + 2 |
| Total maximum points: | 115 | Total maximum points: | 102 |

*Seniority points calculated at 1 point per year of service, and shall be prorated for partial years.

# PROMOTION ELIGIBILITY LIST FORMULA:

(Written examination points + seniority points) / 115 x 100 x .50 adjustment factor

+

(Assessment Center Points + Education Points) / 102 x 100 x .50 adjustment factor

=

Total points for promotion list**

**Formula shall be carried to 3 decimal points and rounded up from .0005. Police Civil Service tie-breaking rules will be applied if necessary.

## c) Seniority

Each officer shall be entitled to up to a maximum of fifteen (15) seniority points to be added to the written exam score, equivalent to one (1) point per year of service, which shall be prorated for partial years.

## d) Education

(1) The following education points shall be added to each candidate's score. These points shall only be added to the assessment score in accordance with the formula below, and shall only apply to college degrees from an accredited college or university, meeting the accreditation standard referenced in Article 7 Section 10 for education incentive pay. No cumulative points shall be allowed for more than one degree.

(i) Add 1.0 point for Bachelor Degree
(ii) Add 2.0 points for Masters Degree

(2) It is the responsibility of the officer seeking education points to ensure that the Training Academy has the necessary supporting documentation for education points. The documentation must be received by the Training Academy no later than 5:00 p.m. on the seventh (7th) business day before the written examination is administered. No education points will be counted unless proper documentation is timely received by the Training Academy.

## c) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

## Section 4. Commanders

### a) Promotional Procedure for Rank of Commander

Positions in the rank of Commander shall be filled from an eligibility list created by a promotional procedure consisting of a written examination and an Assessment Center conducted in accordance with this Article.

### b) Scoring

After the Assessment Center scoring has been completed for the rank of Commander, the eligibility list shall be calculated as follows:

| **Written examination points:** (See Section 5) | | **Assessment Center:** | |
|---|---|---|---|
| Maximum exam points | 100 | Assessment Center points | 100 |
| Maximum seniority points | +15* | Maximum education points | + 2 |
| Total maximum points: | 115 | Total maximum points: | 102 |

*Seniority points calculated at 1 point per year of service, and shall be prorated for partial years.

### PROMOTION ELIGIBILITY LIST FORMULA:

(Written examination points + seniority points) / 115 x 100 x .50 adjustment factor

\+

(Assessment Center Points + Education Points) / 102 x 100 x .50 adjustment factor

=

Total points for promotion list**

**Formula shall be carried to 3 decimal points and rounded up from .0005. Police Civil Service tie-breaking rules will be applied if necessary.

### c) Seniority

Each officer shall be entitled to up to a maximum of fifteen (15) seniority points to be added to the written exam score, equivalent to one (1) point per year of service, which shall be prorated for partial years.

## d) Education

(1) The following education points shall be added to each candidate's score. These points shall only be added to the assessment score in accordance with the formula below, and shall only apply to college degrees from an accredited college or university, meeting the accreditation standard referenced in Article 7 Section 10 for education incentive pay. No cumulative points shall be allowed for more than one degree.

(i) Add 1.0 point for Bachelor Degree
(ii) Add 2.0 points for Masters Degree

(2) It is the responsibility of the officer seeking education points to ensure that the Training Academy has the necessary supporting documentation for education points. The documentation must be received by the Training Academy no later than 5:00 p.m. on the seventh (7th) business day before the written examination is administered. No education points will be counted unless proper documentation is timely received by the Training Academy.

## e) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

## Section 5. Written Examination for Promotion to the Ranks of Corporal/ Detective, Sergeant, Lieutenant, and Commander.

All candidates for the ranks of Corporal/Detective, Sergeant, Lieutenant, and Commander shall first take a written examination. The maximum score for the written examination shall be one hundred (100) points. The written examination shall consist of questions relating to the duties of the rank to be filled, as contained in reading material selected by the Chief of Police. The CITY may engage an independent consultant to professionally develop the written examination questions after consultations with the Human Resources Department (HRD). The CITY will make a reasonable effort to have the written examination validated. The examination may be validated before or after the examination is given. Prior to being administered, the finalized examination shall be kept in a safe and secure manner.

The CITY shall make reasonable efforts to provide a six (6) month study time window prior to promotional examinations, but it is recognized that expiration or exhaustion of a list may necessitate an earlier examination.

**Section 6.    Assessment Center Process for Promotion to the Ranks of Sergeant, Lieutenant or Commander.**

a) Officers who pass the Sergeant's, Lieutenant's or Commander's written promotional examination with a score of seventy percent (70%) or higher will proceed to the next step of the examination process, which is an Assessment Center (unless a Technical Skills Evaluation is used for the rank of Sergeant).

b) Prior to the written test being administered, the Chief shall establish assessment criteria based on job content and responsibility. The Human Resources Department will generate a list of consultants, and will review that list with the Chief, who will approve the list. The Chief shall also appoint three (3) members to serve on an Assessment Center Review Committee (ACRC), plus one (1) alternate. The ASSOCIATION shall also select three (3) individuals to serve on the ACRC and one (1) alternate. All ACRC members shall be selected from the tested rank or above. The ACRC shall meet and consider the list of consultants approved by the Chief and select the Assessment Center Consultant from the list which may be subject to Council approval, pursuant to City purchasing policies and procedures.

c) After the Assessment Center Consultant has been selected, the Consultant will orient the ACRC. The Consultant will confer with both the Chief and the ACRC on the needs or issues affecting the design of the Assessment Center. Any input from the ASSOCIATION will be summarized by the ACRC and made available to anyone who requests it. The Consultant shall make all final decisions concerning the design and implementation of the Assessment Center.

d) The consultant will design the Assessment Center from among the following exercises:

> In-Basket
> Problem Solving/Analysis
> Written and Oral Resumes/Structured Interviews
> Role-Playing
> Memo/Report Writing
> Oral Presentation/Plan Preparation
> Staff Meeting
> Special Event/Operations.

The consultant is not required to utilize all of the exercises, but may select the exercises or combine the listed exercises into one or more exercises that are best suited for the particular rank.

e) The Consultant also selects the assessors, who shall meet the following criteria:

(1) Active duty, sworn officers of similar rank to the promotion, or above, from cities with a population of 200,000 or greater;

(2) Shall not reside in Austin;

(3) Shall not be related to any candidates for promotion;

(4) Shall not be known to, beyond mere acquaintance, any candidates for promotion;

(5) Shall have two (2) years of experience in the promoted or equivalent rank; and

(6) Shall not be a current or former employee of the City of Austin.

f) The Consultant shall conduct an orientation for candidates prior to administering the Assessment Center. The Consultant may deem the orientation mandatory, and all candidates must attend in order to participate, if it is declared mandatory. If the consultant deems orientation to be mandatory, then at least two (2) orientations shall be scheduled with one in the morning and one in the afternoon. If a mandatory orientation is scheduled during an officer's work time, he/she will be permitted to attend.

g) The assessors selected by the Consultant will assess the candidates for the rank. The assessors shall award up to one hundred (100) points to each candidate participating in the assessment center. The assessment sessions will be videotaped, and candidates may review their own session pursuant to procedures established by Human Resources provided that candidates are given up to four (4) hours, which may be provided in smaller increments of time, to review their assessment session. The Human Resources Department shall make available blocks of time for officers to review examination results from 8:00 a.m. to 5:00 p.m., and at least two (2) evening options until 10:00 p.m. shall be provided. However, these time periods need not be kept available or staffed unless the times are reserved in advance. Examination reviews will be conducted on the officer's off-duty time. Copies of the videotapes will not be given to the candidate. Nothing in the assessment center process may be appealed either to the Police Civil Service Commission, hearing examiner, or the District Court.

h) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

**Section 7.     Eligibility Lists for the Ranks of Corporal/Detective, Sergeant, Lieutenant, and Commander.**

a) All promotional eligibility lists created under this Article shall be constructed, with the highest total score being ranked number one and descending in numerical order.

b) All promotional eligibility lists shall be valid for twenty-four (24) months from the date that the eligibility list is finalized, even after termination of this Agreement.

c) If a written promotional examination for a rank has been given prior to the expiration of this Agreement, the promotional process for that rank may continue to completion, the expiration of this Agreement notwithstanding, and the resulting eligibility list shall have a life of twenty-four (24) months.

d) Preemption

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

**Section 8. Appeals Criteria Committee**

An Appeals Criteria Committee (ACC) shall continue to determine the criteria for what may be appealed to the Police Civil Service Commission following all written promotional examinations. The ACC shall establish appeal criteria which will be used for all written examinations held during the term of this Agreement. The ACC, composed of seven (7) individuals, shall be appointed as follows:

a) Three (3) members appointed by ASSOCIATION, each having taken at least one (1) promotional exam;

b) Two (2) members appointed by the Chief of Police, each having taken at least one (1) promotional exam;

c) One (1) member appointed by the Director of the Human Resources Department; and

d) One (1) member appointed by the Chair of the Police Civil Service Commission.

A simple majority of the ACC shall approve the criteria. The Chief may reconvene the ACC if, after an eligibility list has been established, it appears that clarification or modification of the criteria is warranted. The criteria approved by the ACC shall not be appealable to either the Police Civil Service Commission, a hearing examiner, or to the District Court.

## Section 9. Appeal Process After Written Examination

Any officer who has taken a written promotional examination may, within seven (7) City of Austin business days of the posting of the written promotional exam results, review his/her examination results. The process shall be established by the Human Resources Department; provided, however, that each officer who has taken a promotional examination may have up to four (4) hours to review his/her examination, write, and submit the appeal, if any, which must be based on the appeal criteria approved by the ACC. Once an appeal is filed, it shall be assigned a number and processed anonymously. The officer may obtain a copy of his or her appeal. The Human Resources Division shall make available blocks of time for officers to review examination results from 8:00 a.m. to 5:00 p.m., and at least two (2) evening options until 10:00 p.m. shall be provided. However, these time periods need not be kept available or staffed unless the times are reserved in advance. Examination reviews will be conducted on the officer's off-duty time. There will be no appeal to the Police Civil Service Commission, a hearing examiner, or to the District Court of any facet of the examination review process.

## Section 10. Review by Employee Review Committee

An Employee Review Committee (ERC) will be appointed to screen written examination appeals to the Police Civil Service Commission, applying the criteria established by the ACC to determine which appeals should be rejected because they do not meet the criteria. Assuring for diversity as is practical and possible the ERC shall be comprised of five (5) members as follows:

Four (4) officers of the rank of the promotional exam or higher, two (2) each appointed by the ASSOCIATION and the Chief of Police; and

One (1) member appointed by HRD.

Appeals may advance from the ERC to the Police Civil Service Commission by a vote of a simple majority of the ERC. The ERC will not make any statement, assertion, or recommendation regarding the validity of an appeal or subsequent Police Civil Service Commission action. There will be no State District Court appeal of the ERC's examination appeal determinations or from the Police Civil Service Commission's written examination appeal decisions, except an appeal alleging the CITY's failure to validate the written examination.

## Section 11. Time Limit to Fill Vacant Positions

It is expressly understood and agreed that the provisions in Chapter 143.036(d) and (e) and 143.014(f) of the Local Government Code prescribing time limits for filling vacancies at the rank of Sergeant or above shall be expanded to one hundred and twenty (120) calendar days from the date the vacancy occurs during the term of this Agreement.

**Section 12. Committee on the Assessment Center Process**

The CITY and the ASSOCIATION shall each appoint two (2) persons to a committee that shall schedule a meeting with the participants in each Assessment Center process to discuss the strengths and weaknesses perceived by the participants, after completion of the process. The Committee may recommend changes in the procedures set out in this Agreement.

**Section 13. Military Promotions/Demotions**

The following changes are made to Sections 143.036 and 143.072 of the Texas Local Government Code:

a) When an officer is promoted as the result of a vacancy created by a military leave of absence, when the officer on military leave returns to active duty in the Department, the person who filled the most recent vacancy at that rank shall be the one who is demoted to the next lowest classification and placed on a reinstatement list, with such rights as prescribed in this Article.

b) The same result applies to all other promotions in lower ranks which resulted from the first promotion and subsequent demotion.

c) This Section shall be retroactive in all respects to September 1, 2001.

d) All other provisions of Sections 143.036 and 143.072 not specifically changed by this Agreement shall remain in effect.

**Section 14. Vacancy Created by Indefinite Suspension**

a) Notwithstanding any provision in this Article or any provision in Local Government Code Chapter 143, an indefinite suspension of a police officer (despite any pending appeal) shall create a vacancy, but shall not expand the size of the classified service. In the event that an indefinite suspension is overturned on appeal and the officer is reinstated to active duty in the Department, the person who filled the most recent vacancy at that rank shall be the one who is demoted to the next lowest classification and placed on a reinstatement list, with such rights as prescribed in this Article.

b) The same result applies to all other promotions in lower ranks which resulted from the first promotion and subsequent demotion.

**Section 15. Reinstatement List**

a) There shall be only one reinstatement list for each rank for persons demoted by virtue of Sections 13 and 14 of this Article.

b) Any person placed on the reinstatement list shall remain on the list indefinitely.

c) Persons on the list shall be entitled to reinstatement to the rank from which they were demoted in the same order as the demotion occurred. This results in the first demoted at that rank being the first reinstated. Reinstatements must occur off of the reinstatement list for that rank before any promotions from a promotional eligibility list. Until such reinstatements occur and the reinstatement list is exhausted, there shall be no "vacancy" created at that rank for the purpose of any promotional eligibility list.

d) Time spent on a reinstatement list shall not be considered a break in service for civil service purposes, including, but not limited to eligibility for future promotional examinations.

**Section 16. Effect of Contract Expiration**

The provisions of this Article shall remain in full force and effect after expiration of this Agreement as to:

a) All promotional eligibility lists created during this agreement; and

b) All reinstatement lists created pursuant to this Article.

**Section 17. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Sections 143.010; 143.014(f); 143.036; 143.072, and all provisions of Subchapter B of Chapter 143 of the Texas Local Government Code.

**ARTICLE 14**

**HIRING PROCESSES**

**Part A.    Application of Chapter 143 Processes**

The Association, recognizing the City's need for flexibility in the hiring of both experienced police officers and Cadets for the Department's regular Training Academy program, hereby agrees to the deviations from Chapter 143 hiring procedures specifically authorized by this Article. Except as allowed by this Article, the City will comply with the hiring procedures specified in Chapter 143, and retains all prerogatives granted to it by the statutory procedures.

## Part B.  Initial Hiring Process

### Section 1.  Submission of Proper Application

a)  In order to be considered for the position of cadet, each applicant must first submit a proper application as defined by the Department.  A proper application shall include, but not be limited to, information on personal history, criminal history, driving record and age.  The information submitted shall be used by the Police Department to determine whether the applicant meets the minimum qualifications to proceed to the testing phase of the process.

b)  The Police Chief shall establish the eligibility requirements for applicants for the position of police cadet, consistent with Chapter 143 and this Agreement.

### Section 2.  Maximum Age of Applicants.

For all applicants, the maximum age for application to the cadet position shall be forty-five (45) years old.

### Section 3.  Screening and Testing of Applicants

a)  The Police Chief will develop and implement the screening and testing procedures used to determine whether an applicant will be offered a position as a police cadet in a Police Academy class.  The screening and testing procedures will include, at a minimum, a structured Oral Interview Board and a background investigation.  Nothing in this Agreement or in Chapter 143 will restrict the nature of the tests administered to applicants or the procedures used to administer those tests.

b)  Applicants who successfully complete all of the screening and testing procedures will be placed on an eligibility list in the order in which their applications were received.  Applicants on the eligibility list may be offered a position as police cadet in any upcoming Police Academy class.

c)  Each eligibility list created as a result of the process described in this Section shall remain effective for twenty-four (24) months after certification by the Civil Service Commission.

### Section 4.  Police Internship Program

The Department may create and implement a Police Internship Program for individuals who are interested in becoming Austin Police officers.  Anyone hired into the Internship Program must pass the same screening and testing procedures as applicants for the position of Police Cadet, either at the beginning or at the end of their participation in the Program.  The duration of the Police Internship Program will be at least the equivalent of a college semester.  Any intern who successfully completes the Police Internship Program shall be placed at the top of the current or next eligibility list for hire

as a Police Cadet. Up to twenty-five percent (25%) of each Police Academy class may consist of interns who successfully completed the Police Internship Program.

**Section 5. Effect on Present Cadet Classes**

It is specifically understood and agreed that the hiring process set out in this Agreement shall not apply to persons hired before the effective date of this Agreement.

**Section 6. Probationary Period**

The "at will" probationary period of individuals filling beginning positions in the police department shall begin, under this agreement, on the date the cadet receives his/her commission and shall end at the expiration of fifteen (15) months. The probationary period of any cadet that already holds a commission prior to entering the police academy shall begin on the date the officer receives their first assignment after successful completion of the academy, and shall end at the expiration of fifteen (15) months. However, any leave taken by a probationary police officer during this probationary time period, including but not limited to injury leave, FMLA leave, sick leave, shall extend this probationary period by the length of the leave taken. (Approved vacation leave other than FMLA will not so extend the probationary period.)

**Part C. Modified Hiring Process**

**Section 1. Applicability**

The Modified Hiring Process applies only to the hiring of experienced police officers who may not need to attend the Department's regular Training Academy program. Nothing in this Article applies to any PSEM law enforcement officer employed by the City's Public Safety and Emergency Management Department who enter the Austin Police Department under the provisions of Article 25 of this Agreement.

**Section 2. Eligibility Requirements**

a) The Chief of Police shall establish the eligibility requirements for applicants for the Modified Hiring Process. The requirements need not be the same as those established by Chapter 143 or those applicable to applicants for the position of Cadet in the Department's regular Training Academy. The requirements may be modified by the Chief of Police, but shall include at least the following:

    (1)    At the time of application, each applicant must be actively employed as a police officer for a municipal, county, or state law enforcement agency that handles a full array of urban police work. Each applicant must have a total of at least three years of active service as a police officer for one or more municipal, county, or state law enforcement agency. Employment by or experience with a school or university law enforcement agency is not acceptable.

2) Each applicant shall hold a current peace officer license from the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) or shall meet criteria established by the Chief for obtaining the TCLEOSE license.

3) Each applicant will be subject to a background investigation.

b) The Chief of Police or his designee may, at his or her sole discretion, deny the application of any applicant for the Modified Hiring Process and may determine whether a particular applicant meets the eligibility requirements.

**Section 3. Selection and Placement**

a) The Chief of Police shall establish the selection criteria and procedures for the Modified Hiring Process, which need not be the same as those established by Chapter 143 or those applicable to applicants for the position of Cadet in the Department's regular Training Academy. Applicants who meet the selection criteria and procedures may be hired without being placed on an eligibility list.

b) Upon hire, the applicant will be placed in the position of "Cadet Senior," regardless of any rank or position the officer previously held in another law enforcement agency, to the same extent as if they had been hired under the processes prescribed by Chapter 143. Each Cadet Senior must complete a Modified Training Academy and probationary period.

**Section 4. Training and Probation**

a) The Chief of Police shall establish the training requirements for a Modified Training Academy. All Cadet Seniors hired through the Modified Hiring Process must successfully complete the Modified Training Academy.

b) Each Cadet Senior shall successfully complete a probationary period of at least three months following completion of the Modified Training Academy, but not to exceed the probationary period for officers hired through the Department's regular hiring process.

**Section 5. Civil Service Status**

a) A Cadet Senior who successfully completes the Modified Training Academy will be placed in the Civil Service classification of Police Officer and automatically becomes a full-fledged Civil Service employee and has full Civil Service protection, subject to successfully completing probation. Until completion of probation, each officer hired through this Modified Hiring Process is an at-will employee who may be discharged by the Chief of Police at any time, without right of appeal.

b) Until completion of probation, an officer hired through the Modified Hiring Process is excluded from the coverage of Articles 17 and 18 and cannot file grievances pursuant to Article 20 regarding disciplinary actions.

### Section 6. Pay and Seniority

a) The Chief of Police may determine the pay rate for each Cadet Senior during the Modified Training Academy. Upon completion of the Academy, the Chief of Police may determine the pay rate for each Police Officer hired through this Modified Hiring Process. Any pay rate established by the Chief shall not exceed that of an officer with two years' experience in the Austin Police Department.

b) Regardless of the pay rate established for each Cadet Senior, seniority for purposes of longevity pay shall begin when the officer successfully completes the Modified Training Academy.

### Section 7. Promotional Eligibility

Officers hired through the Modified Hiring Process must meet the same promotional eligibility requirements as Austin Police Department officers hired through the Department's regular initial hiring process.

### Section 8. Implementation

The Modified Hiring Process described by this Article may be used at any time, for any number of applicants, as authorized by the Chief of Police.

### Part D. Additional Provisions

### Section 1. Benefit of the Bargain

The Association and the City share the goal of recruiting and hiring the most qualified applicants to become Austin Police Officers. The Association acknowledges the significant effort and skill of the Department's Recruiting Unit in trying to meet this goal, but recognize that the Department needs to be able to adjust hiring procedures as necessary, without having to wait until the next Meet & Confer negotiation process. The parties agree that the degree of flexibility incorporated into this Article is of benefit to both parties and that this Agreement would not have been reached without the flexibility provided by this Article.

### Section 2. Defense of Actions

**In the event an applicant files an action against the CITY and the ASSOCIATION on account of the operation of Article 14, the City agrees to jointly defend on behalf of both parties the validity of this provision adopted by both parties, with counsel of the CITY's choice. This provision does not preclude the**

ASSOCIATION from retaining its own defense counsel, at its expense and the CITY shall reasonably cooperate with counsel designated by the ASSOCIATION to participate.

**Section 3.  Effect of Contract Expiration**

The provisions of this Article shall remain in full force and effect after expiration of this Agreement as to:

a) Any hiring process which has been commenced in substantial reliance upon the provisions of this Article;

b) The length of the "at will" probationary period for individuals in that status prior to the expirations of this Agreement;

c) Any eligibility list created under the terms of this Article will remain in effect for 24 months, notwithstanding the expiration of this Agreement;

d) Any interns who are participating in the Police Internship Program at the expiration of this Agreement may be placed at the top of the first eligibility list created after expiration of this Agreement.

**Section 4.  Preemption**

It is expressly understood and agreed that all provisions of this Article and any procedures developed under the authority granted in this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Sections 143.021 through 143.027.

**ARTICLE 15**

**DRUG TESTING**

**Section 1.  Commitment to an Effective Drug Interdiction Program**

The CITY and the ASSOCIATION agree that officers may be called upon in hazardous situations without warning, and that it is imperative to the interest of the officers and the public to ensure that officers are not substance impaired. In order to further their joint interest in protecting officers and the public, the CITY and the ASSOCIATION agree to mandatory drug testing as described in this section. The CITY and the ASSOCIATION have a mutual interest in ensuring that drug impaired officers do not perform law enforcement duties. The CITY and the ASSOCIATION are committed

to the principle that the mandatory drug testing policy for officers is designed and shall be administered to result in disciplinary action only against those officers who have violated the Police Department's rules, regulations, policies and procedures.

**Section 2. Random Testing**

One hundred percent (100%) of officers at all ranks, including the Chief, shall be susceptible to mandatory testing for illegal drugs and controlled substances during each calendar year on a fair and impartial statistical basis at the CITY's expense. The fair and impartial statistical basis (in which each officer has an equal chance of being selected during a calendar year) shall be by a non-discriminatory computerized program operated and certified as non-discriminatory by an independent firm hired by the CITY, and the officer shall be tested upon being selected by the computer.

Upon notice of selection for random testing, any officer shall provide a urine sample in accordance with the policy or protocol established by the testing laboratory. Failure to provide a sample shall be equivalent to insubordination and may be the basis for suspension or indefinite suspension.

**Section 3. Assurance of Accurate Results**

Officers shall have the right to request that their urine sample be stored in case of legal disputes. The urine sample will be submitted to the designated testing facility where a sample will be maintained for the period of one year. Officers may, at their own expense, request to have a test administered at an approved physician's office accompanied by the testing personnel provided such testing is administered within eight (8) hours after notification by the Chief. Drug testing shall consist of a two-step procedure:

1. Initial screening test.
2. Confirmation test.

Should a confirmation test be required, the test procedure will be technologically different and more sensitive than the initial screening test. Officers shall be provided with a notice of the result and may obtain a copy of the actual laboratory result upon request to the Lieutenant assigned responsibility as Drug Testing Coordinator.

The CITY and the ASSOCIATION agree that only an appropriately certified laboratory should conduct drug testing. The laboratory selected shall be experienced and capable of quality control documentation, chain of custody and have a demonstrated technical expertise and proficiency in urine analysis and shall comply with all requirements of an appropriately certified laboratory. The CITY shall require any laboratory selected for collecting samples to conduct a background investigation on those laboratory personnel involved in the collecting or handling of an unsealed sample. In addition, the CITY shall require any laboratory involved in collecting samples to use only employees who have not been arrested by officers of the Austin Police Department or

convicted of a felony or misdemeanor crime involving dishonest conduct or possession of illegal drugs to be involved in collecting or handling of an unsealed sample collected from an officer. In the event that the laboratory that collects the initial samples is not the same laboratory that conducts the actual testing of those samples, only the laboratory that collects the initial samples must comply with the background and criminal history provision of this Agreement. Test results shall be inadmissible in any administrative disciplinary hearing if it is determined that the laboratory collecting samples failed to conduct a background investigation on the laboratory personnel involved in collecting or handling the unsealed sample which resulted in a positive test result.

All records pertaining to the Department-required drug tests shall remain confidential except to the extent used in a disciplinary appeal. Drug test results and records shall be stored in a locked file under the control of the Drug Coordinator, under the supervision of the Chief, will maintain original copies submitted by the laboratory. No access to these files shall be allowed without written approval of the Chief.

**Section 4.  Testing on Reasonable Suspicion**

Nothing in this Article shall be construed to prohibit the Chief from conducting a drug test on an officer, or a search of any areas in which the officer does not have a personal privacy expectation, based upon reasonable suspicion in accordance with the guidelines as set forth in Department policy for such by actions.   Such actions may be taken upon the agreement of any two supervisors that there is a reasonable basis for a suspicion that:

a)  An officer is presently using or under the influence of illegal drugs or inhalants

b)  An officer has possession of illegal drugs or inhalants

c)  An officer has been associated with or involved with others who were using or under the influence of illegal drugs or inhalants, or who were in possession of same, which association or involvement was not authorized or required in connection with any law enforcement duty,  under circumstances which reasonably indicate participation or complicity with, or protection of such other individuals

d)  Any conduct or situation described in a-c immediately above involving alcohol, while on duty, or which results in on-duty impairment.

**Section 5.  Definitions**

For the purposes of this Article:

"Drug testing" shall be defined as the compulsory production and submission of a urine sample by an officer for chemical analysis to detect the presence of prohibited drug usage, in connection with the random testing process set forth herein; and production or

submission of urine, blood, or hair sample for a required test based on the reasonable suspicion standards set forth herein.

## ARTICLE 16

### CITIZEN OVERSIGHT OF
### THE AUSTIN POLICE DEPARTMENT

**Section 1.  Citizen Oversight**

a)  Citizen Oversight means the process which incorporates citizen input into the administrative review of conduct of APD officers and the review of the Austin Police Department's policies and procedures.  The City of Austin may provide for Citizen Oversight of the Austin Police Department.  Citizen Oversight may include an Office of the Police Monitor and a Citizen Review Panel.  The City agrees that there will be no parallel process created in addition to the one contemplated by these provisions.

b)  The purpose of Citizen Oversight is:

1.  To assure timely, fair, impartial, and objective administrative review of complaints against police officers, while protecting the individual rights of officers and citizens;

2.  To provide an independent and objective review of the policies and procedures of the Austin Police Department; and

3.  To provide a primary, but not exclusive, location for accepting administrative complaints of officer misconduct.

c)  Except as otherwise provided by this Agreement, the Chief of Police retains all management rights and authority over the process of administrative investigation of alleged misconduct by APD officers that could result in disciplinary action.

d)  Except as specifically permitted in this Article the Citizen Oversight process, regardless of its name or structure, shall not be used or permitted to gather evidence, contact or interview witnesses, or otherwise independently investigate a complaint of misconduct by an officer. There shall be no legal or administrative requirement, including but not limited to subpoena power or an order from the City Manager or the Department, that an officer appear before or present evidence to any individual, panel, committee, group, or forum of any type involved in Citizen Oversight.  This provision has no application to any Independent Investigation authorized by the Chief of Police or the City Manager, regardless of whether the Independent Investigation was recommended by a Panel or Police Monitor, or to any hearing of an appeal of disciplinary action pursuant to this Agreement and/or Chapter 143 of the Texas Local Government Code.  Police officers

remain subject to orders or subpoenas to appear and provide testimony or evidence in such investigations or hearings.

**Section 2.  The Office of the Police Monitor ("OPM")**

a) The Police Monitor will have unfettered access to the Internal Affairs investigation process, except as provided herein.  The Police Monitor may inquire of the Commander of the Internal Affairs Division or the Chief of Police, or the Chief's designee, as to the status of any pending IAD investigation.

b) The OPM shall not gather evidence, contact or interview witnesses (except the complainant as provided herein), or otherwise independently investigate a complaint. The OPM shall not have the authority to subpoena witnesses.   There shall be no administrative requirement, including but not limited to an order from the City Manager or the Department, that a police officer appear or present evidence to the Police Monitor. The OPM may obtain the following information in connection with the filing of a complaint of officer misconduct:

1.  The complainant's personal information;

2.  The nature of the complaint;

3.  Witness information;

4.  The incident location, date, and time; and

5.  The APD officer(s) involved.

c)  The OPM shall digitally audio record the taking of the information provided in subsection (b).   The OPM will promptly forward the completed complaint and audio recording to IAD.  A complaint by a complainant who is not a police officer shall not be accepted unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath.   A complainant may be subsequently interviewed by the IAD investigator for purposes of clarification or to obtain additional information relevant to the investigation.

d)  Personnel from the OPM shall assist an individual in understanding the complaint process and the requirements for filing a complaint but shall not  solicit or insist upon the filing of a complaint by any individual.

e)   A representative from the OPM may attend an interview of the officer who is the subject of the investigation or administrative inquiry, as well as all witness interviews. The OPM representative may not directly question the subject of the interview.  At the conclusion of any interview, the OPM representative may take the IAD investigator aside and request that the investigator ask additional questions.  Whether such information is sought in any witness interview is within the discretion of the IAD investigator.

f) Neither the Police Monitor nor the Internal Affairs Representative(s) may remain in the Dismissal Review Hearing (or any other administrative hearing conducted for the purpose of determining whether the Department shall take disciplinary action against an officer for alleged misconduct) while the chain of command discusses the final classification and/or appropriate discipline, if any, to be imposed. The final classification of an allegation of misconduct is within the sole discretion of the Chief of Police, subject to the officer's right of appeal of any discipline imposed as provided by Chapter 143 of the Texas Local Government Code and this agreement.

g) On a quarterly basis, the Police Monitor, the Chief of Police, the Commander of the Internal Affairs Division, and the Association President shall meet to discuss issues related to the citizen oversight process, and shall endeavor to answer questions, and provide relevant information.

**Section 3. Citizen Review Panel ("Panel")**

**a) Function**

(1) The Panel shall serve to make recommendations to the Chief of Police as provided in this Article, and in addition to review individual cases of officer conduct as authorized in this Article. Panel members shall perform their duties in a fair and objective manner.

(2) The Panel shall provide a public report setting forth the basis and concerns of the Panel supporting any recommendation for an Independent Investigation. In addition, the Panel shall provide a public report setting forth the Panel's conclusions and recommendations after its review of any Independent Investigation.

**b) Qualifications**

To be eligible for appointment to the Panel, applicants must not have a felony criminal conviction, received deferred adjudication for a felony, or be under felony indictment. Prior to appointment, Panel members must submit to a criminal background investigation to determine their eligibility to serve on the Panel. A felony conviction, felony indictment, or felony deferred adjudication, after appointment, shall result in the immediate removal of the member from the Panel by the City Manager.

**c) Training**

To serve on the Panel, each member must complete the training prescribed herein prior to commencing their service on the Panel. The required training shall include: :

(1) Attend a three to four (3-4) day training by APD tailored specifically for Panel members including, at a minimum, the following:

a. Special Investigations Unit;

b. Officer Involved Shootings;
c. Response to resistance;
d. The Police Training Academy;
e. Crisis Intervention Team;
f. Firearms, including FATS training;
g. Bomb and SWAT;
h. Ride-outs on at least two shifts in different parts of the City; and
i. A presentation by the Association.

(2) Attend six (6) hours of training provided by the Internal Affairs Division.

The training requirements of Section c) shall apply only to Panel members who are appointed to the Panel after the effective date of this Agreement.

### d) Resign to Run

Any person involved in the citizen oversight process as a Panel member, who files for public elective office shall immediately resign from their position in the citizen oversight process, and failing such resignation shall be immediately removed by the City Manager.

### e) Panel Review Process

(1) Not later than thirty (30) calendar days after the mailing of the notice of the outcome of the investigation to the complainant, the complainant may request that the Police Monitor refer the complaint to the Panel.

(2) Without a complainant's request, only the following cases may be referred to the Panel:

a. A "Critical Incident" as defined this Article;

b. The appearance of a pattern of serious misconduct by the officer involved;

c. The appearance of a pattern of department-wide misconduct;

d. The appearance of serious official misconduct by one or more members of the Department;

e. The appearance of bias based misconduct; or

f. The appearance of issue(s) to be addressed by policy, procedure, or training recommendations.

## f) Nature of Proceedings

(1) The review of any case by the Panel shall not be conducted as a hearing or trial. Except for the receipt of public input/communications as provided by this Section or an Independent Investigation authorized by this Article, the Panel shall not gather evidence, contact or interview witnesses, or otherwise independently investigate a complaint. The Panel shall not have the authority to subpoena witnesses. There shall be no administrative requirement, including but not limited to an order from the City Manager or the Department, that a police officer appear or present evidence to the Panel. The Panel shall immediately forward any information or evidence of which it becomes aware to the Chief of Police through the Police Monitor.

(2) A quorum shall be established prior to beginning the review of any case by the Panel.

(3) Not less than five (5) business days prior to a Panel meeting, the OPM shall provide the Internal Affairs Division and the individual designated by the president of the Association as the Panel liaison, with a copy of the Panel meeting agenda. The Panel shall not take action upon or receive public input/communications concerning any case or issue not listed as an agenda item. The Internal Affairs Division shall promptly notify any officer who is the subject of a complaint listed as an agenda item as to the scheduled Panel meeting. Notice of special meetings shall be handled in a similar manner, unless circumstances require a shorter notice, in which case the notice shall be issued as soon as the special meeting is scheduled.

(3) By virtue of its purely advisory role, the Panel is not a governmental body and is not subject to the Open Meetings Act. Those portions of the meeting during which public input/communication is accepted shall be open to the public and recorded by video and audio cassette tape.

## g) Private Session

(1) Prior to receiving any communication from the complainant or any other public input/communications, the Panel may meet in private session to be briefed concerning the facts of the particular case to be reviewed. Either the Police Monitor or the IAD representative shall present to the Panel the information obtained from the IAD investigation. Members of the Panel may be provided with READ ONLY electronic access to all or part of the IAD files during these presentations.

(2) An APD officer designated by the president of the Association and one individual from the Internal Affairs Division shall be present during the Panel private session case briefing, including the portion of the private session described in subsection "e" below, subject to the following provisions:

    a. The Association's representative will not participate in the briefing and is present only as an observer, with the following exceptions:

(i) The Association representative may request that the Police Monitor allow the representative to present information relevant to a case before the Panel.

(ii) A Panel member may request that the Association representative present information relevant to a case before the Panel.

(iii) Any information provided by the Association representative shall be presented in a neutral manner.

b. The Association representative may not be involved in the case as a witness, investigator, relative, or officer in the chain of command.

c. Information in the possession of the Association representative as a result of participation in such briefing shall not be disclosed or revealed other than as necessary as a part of official Association business in monitoring and enforcing this agreement, or in the normal course of dispute resolution processes under this agreement.

(3) Panel members shall have full access to all administrative investigative and disciplinary files necessary to perform their functions under this agreement. Panel members may ask questions and obtain specific facts, details and information from the Police Monitor, IAD, or the Chief's office. As part of such access, the Police Monitor may permit individual Panel members to review an IAD case file for up to five (5) hours, at the Police Monitor's office and in the presence of a member of the Monitor's staff. This review opportunity may occur before the Panel's private session and/or after the Panel's public session regarding such case. The prohibitions and restrictions in Section 8 of this Article apply to any confidential information viewed by Panel members during this review opportunity. Panel members shall not copy or remove any portion of the file. The Police Monitor shall be responsible for security of the file.

(4) During any private Panel briefing, the presenter should exercise discretion and omit information from the briefing that the Police Monitor deems to be irrelevant to the citizen's complaint, as well as information of a highly personal nature that would constitute an unwarranted invasion of an individual's personal privacy interests.

(5) Upon completion of the Panel case briefing, the complainant shall be allowed to address the Panel. The police officer who is the subject of the complaint may, but is not required to attend and listen to the address by the complainant. If the complainant is anxious or intimidated by the presence of the officer, the Panel shall videotape the complainant's address to the Panel, and allow the officer to view and respond to the taped statement outside the complainant's presence. Other than the complainant and the responding police officer, only those persons authorized to attend the Panel case briefing may be present during this portion of the Panel meeting.

### h) Public Session and Comments

(1) After any address by the complainant and/or responding police officer, the Panel shall meet in public session to receive any additional public input/communications concerning the case under review. During the public session, the Police Monitor shall take precautions to prevent discussion of the facts of the particular case and to prevent the public session from being used as a forum to gather evidence, interview witnesses, or otherwise independently investigate a complaint. Any individual who indicates that he has new or additional evidence concerning the particular case shall be referred to the Chief of Police or his designee. The rules that apply to citizen communications with the City Council shall apply to the public session of the Panel meetings.

(2) The Police Monitor, in consultation with the Panel, shall set the time limits for such proceedings.

### i) Deliberations

After receiving public input, if any, the Panel shall discuss the particular case under review in private session. The Police Monitor and/or the Assistant Police Monitor may be present during such discussion. No other individual may be present unless, the panel requests further information.

### j) Action and Recommendations

(1) At the conclusion of the review process set forth above, the Panel, upon a majority vote of its total members, may make the following recommendations to Chief of Police:

a. Further investigation by the Department is warranted;

b. Department policies warrant review and/or change;

c. An "Independent Investigation" is warranted; or

d. A written, non-binding recommendation on discipline.

A recommendation on discipline is limited to cases involving a "critical incident" as defined in this Article. The Panel shall not take action or make recommendations not authorized by this Article.

(2) After the Citizen Oversight process has been completed for a "critical incident," as that phrase is defined herein, the individuals involved in the Citizen Oversight process may make non-binding disciplinary recommendations to the Chief of Police. The final decision as to appropriate discipline is within the sole discretion of the Chief of Police, subject to the officer's right of appeal of any discipline imposed as provided by Chapter 143 of the Texas Local Government Code and this agreement. The

objectives of the process being served by a written recommendation as to discipline, neither the OPM employees nor individual members of the Panel shall publicly express agreement or disagreement with the final disciplinary decision of the Chief, other than as set forth in the written recommendation. Any such recommendation shall not be publicly disclosed prior to the Chief's final decision. After the Chief of Police has made his final decision, any such citizen or internal monitor recommendations shall be subject to public disclosure to the extent permitted by law. Violation of this provision shall be subject to the dispute resolution process set forth in Section 7 of this Article, but a Panel member shall not be subject to permanent removal from the Panel except upon a second violation of this standard.

(3) For purposes of this Section, the term "Critical Incident" shall mean:

    a.  An alleged use of force or other action by an Austin Police Officer that directly results in serious bodily injury or death (The definition of "serious bodily injury" found in the Texas Penal Code, Section 1.07(a)(46) will apply.);

    b.  A death in custody; or

    c.  An officer involved shooting.

(4) Members must attend the meeting and hear the merits of the case in order to vote. The Panel's recommendations shall be reduced to writing. The Panel's written recommendations shall explain the Panel's issues(s) or concern(s).

(5) The Police Monitor shall consult with the Panel in formulating any recommendations to the Chief of Police. All recommendations to the Chief of Police by the Panel shall be made available to the public to the extent permitted by law and this Agreement.

**Section 4. Independent Investigation**

a) In this Article, "Independent Investigation" means an administrative investigation or inquiry of alleged or potential misconduct by an officer, authorized by the Chief of Police or City Manager and conducted by a person(s) who is not:

(1) An employee of the City of Austin;

(2) An employee of the Office of the Police Monitor; or

(3) A volunteer member of the Panel.

b) An "Independent Investigation" does not include attorney-client work product or privileged material related to the defense of claims or suits against the City of Austin.

c) The Chief of Police and the City Manager retain all management rights to authorize an Independent Investigation concerning police conduct.

**Section 5.  Public Report of Independent Investigation**

a) The provisions of Section 143.089(g) of the Texas Local Government Code are expressly modified to the extent necessary to permit public release of a final report prepared by an investigator who conducts an Independent Investigation authorized by the Chief of Police or City Manager concerning police conduct.

b) The public release of information authorized by this Section shall not contain or reveal evidentiary facts, or other substantive investigative information from the file, except to the extent that such information is at the time of such release no longer protected from public disclosure by law, or is already public as a matter of fact by lawful or authorized means or by the officer's own release.  For example, the names of officers in an investigation may not be released, but could be released if those officers have elected to enter the public debate and discuss their involvement, or if the public has been informed of identities by lawful or authorized means in the course of grand jury or other legal proceedings. The public statements authorized in this agreement are subject to review by the City of Austin Law Department to insure compliance with this Agreement and to determine whether the release of such information may be prohibited by any other law.

c) This Section shall apply to any Independent Investigation whether completed prior to or after the effective date of this Agreement and applies to every position and rank within the Austin Police Department.

d) Section 143.089(g) of the Texas Local Government Code is modified and superseded to the extent necessary to permit the public release of the following information only:

1. A report setting forth the basis and concerns of the Panel supporting any recommendation for an Independent Investigation.

2. A report setting forth the Panel's conclusions and recommendations after its review of any Independent Investigation.

3. A report setting forth any policy recommendations made by the Panel.

4. A final report from an Independent Investigator, whether or not recommended by the Panel.  This Section shall also apply to any Independent Investigation completed prior to ratification of this agreement.

## Section 6. Public Communication

a) Except as permitted by this Agreement, employees of the OPM and members of the Panel shall not publicly comment on the specifics of pending complaints and investigations prior to a panel decision. All public comments and communications by the OPM shall be factual and demonstrate impartiality to individual police officers, the Austin Police Department, the Austin Police Association, employees of the City of Austin, residents of the City of Austin, and community groups.

b) Should a person participating on a Panel make public statements which, to a reasonable observer, would be perceived to express or demonstrate a position, bias, or prejudgment on the merits of a particular case that is under investigation or subject to review, prior to the completion of the citizen panel process for that case, such person will not be allowed to participate in the review, deliberation, or drafting of recommendations concerning that case. This provision does not prohibit the Panel or an individual Panel member from making generic, non-case related public statements about the Austin Police Department, or from providing information about the process, which does not appear to prejudge the merits, or demonstrate a bias on the case. In the event of a violation of this standard, the Panel member shall be subject to permanent removal from the panel as set forth below.

c) No public comment or communication (including but not limited to oral or written statements, reports, newsletters, or other materials made, released, published or distributed) by the OPM or Panel members will make reference to or identify an officer by name, unless such release is then permitted by law, or the officer's name has become public as a matter of fact by lawful or authorized means, or by the officer's own release. Public comments or communications by the OPM and the Panel shall conform to state and federal law, and this Agreement regarding confidentiality, and shall not contain information that is confidential or privileged under this Agreement or state, federal or common law.

d) All OPM written publications shall be provided to the APD and the APA simultaneously with distribution to the public.

## Section 7. Dispute Resolution

a) Complaints concerning the conduct of OPM employees shall be filed with the Police Monitor, or if the complaint concerns the personal conduct of the Police Monitor, shall be filed with the City Manager. If not resolved at the first level, a fact finder shall be appointed to review relevant materials and take evidence to reach written findings of fact, which shall be expedited for final resolution within two weeks after appointment. The fact finder shall be appointed by striking an AAA list, if the parties do not otherwise agree on a fact finder. Upon conclusion of the fact finding, and after review and evaluation of the fact finder's report, the Police Monitor (or City Manager if the complaint concerns the personal conduct of the Police Monitor) shall make a decision. The final decision shall be made by the City Manager.

b) Complaints concerning the conduct of Panel members shall be filed with the City Manager. If a signed complaint is filed alleging specific comments by a Panel member that violate the standards in subparagraph 6 (b) above, the Panel's consideration shall be postponed or the particular Panel member shall not participate, until the matter is finally resolved. A complaint may not be based on statements or conduct previously raised and found insufficient for disqualification. Only one of such Panel members may be temporarily disqualified under this provision on a particular case. The City Manager shall promptly determine the complaint. The Association may appeal from the decision of the City Manager through the expedited arbitration process in this agreement. If two (2) consecutive complaints are found insufficient on a particular Panel member, subsequent complaints on that Panel member shall not result in temporary removal, but upon final determination that there has been a violation, such member shall be subject to permanent removal. Nothing shall prevent the Chief from taking disciplinary action within the statutory time frame, under the provisions of Chapter 143, as modified by this agreement.

**Section 8.   Access to Section 143.089(g) Files**

a) Information concerning the administrative review of complaints against officers, including but not limited to Internal Affairs Division files and all contents thereof, are intended solely for the Department's use pursuant to Section 143.089(g) of the Texas Local Government Code (the 143.089(g) file.). All records of the Police Monitor's Office that relate to individual case investigations and the APD 143.089(g) file, although same are not APD files or records, shall have the same statutory character in the hands of the Police Monitor, and shall not be disclosed by any person, unless otherwise authorized by law. Public access to such information is strictly governed by this agreement and Texas law. To the extent necessary to perform their duties, individuals involved in the Citizen Oversight process are granted a right of access to the information contained within the 143.089(g) files of police officers.

b) Individuals involved in the Citizen Oversight process shall not be provided with information contained within a personnel file, including the 143.089(g) file of a police officer, that is made confidential by a law other than Chapter 143 of the Texas Local Government Code, such as records concerning juveniles, sexual assault victims, and individuals who have tested positive for HIV. All persons who have access to IAD files or investigative information by virtue of this agreement shall not be provided with access to any records of criminal investigations by the APD unless those materials are a part of the IAD administrative investigation file.

c) All individuals who have access by virtue of this agreement to IAD files or investigative information, including the information contained within the 143.089(g) files of police officers, shall be bound to the same extent as the Austin Police Department and the City of Austin to comply with the confidentiality provisions of this Agreement, Chapter 143 of the Texas Local Government Code, and the Texas Public Information Act. All such individuals shall further be bound to the same extent as the Austin Police

Department and the City of Austin to respect the rights of individual police officers under the Texas Constitution and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, including not revealing information contained in a compelled statement protected by the doctrine set forth in *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Spevack v. Klein*, 385 U.S. 511 (1967).

d) A breach of the confidentiality provisions of this Agreement and/or Chapter 143 of the Texas Local Government Code by any individual involved in Citizen Oversight:

1. Shall be a basis for removal from office;

2. May subject the individual to criminal prosecution for offenses including, but not limited to Abuse of Official Capacity, Official Oppression, Misuse of Official Information, or the Texas Public Information Act; and/or

3. May subject the individual to civil liability under applicable State and Federal law.

e) The confidentiality provisions of this agreement, Chapter 143 of the Texas Local Government Code, and the Texas Public Information Act, are continuous in nature. All individuals involved in Citizen Oversight are subject to these confidentiality provisions even after their association with the Oversight process has terminated.

f) Following any review of an alleged violation of the confidentiality provisions of this Agreement, the City Manager's office will provide information about the outcome of that review to any officer(s) directly affected by the alleged violation.

**Section 9.    Use of Evidence from the Citizen Oversight Process in Disciplinary Appeals**

Opinions or recommendations from individuals involved in Citizen Oversight in a particular case may not be used by a party in connection with an appeal of any disciplinary action under the provisions of Chapter 143 of the Texas Local Government Code and this Agreement. No party to an arbitration or Civil Service proceeding may use or subpoena any member of the Citizen Review Panel or the Police Monitor (unless the Police Monitor took the complaint in the relevant case) as a witness at an arbitration or Civil Service proceeding including, but not limited to live or deposition testimony which concerns their duties or responsibilities in the oversight process or their opinions or recommendations in a particular case. This provision shall not prevent any testimony for evidentiary predicate.

**Section 10. Partial Invalidation and Severance**

In the event that a Court Order, Judgment, Texas Attorney General Opinion, or arbitration decision, which is final and non-appealable, or which is otherwise allowed to take effect, which order, judgment, opinion, or decision holds that the right of access to

the information contained within the 143.089(g) files of police officers granted by this Article or the public dissemination of information pursuant to this Article, results in "public information" status under the Texas Public Information Act of the information contained within the 143.089(g) files of a police officer, the provision or provisions resulting in such a change in the status of the 143.089(g) file shall be invalidated and severed from the balance of this Agreement.

**Section 11. Remedies**

### a) Benefit of the Bargain

The CITY expressly retains its right and ability to proceed with the determination of whether or not police misconduct occurred and the authority of the Chief to impose disciplinary action. The ASSOCIATION recognizes the fact that such reservations are essential to this Agreement. No dispute concerning the operation and function of the Police Monitor's Office or the Panel shall impair or delay the process of the Chief's investigation and determination of whether or not police misconduct occurred and the degree of discipline, if any, to impose. This includes internal dispute resolution procedures in this Agreement, any grievance process or arbitration, and any litigation over such issues. In other words, any such dispute resolution processes may proceed, as set forth in this contract or by law, but the disciplinary process may likewise and simultaneously proceed to its conclusion without delay. The statutory time period for the Chief of Police to take disciplinary action against an officer shall be tolled to the extent of any period in which a court order, injunction, or TRO, obtained by the officer involved or the Association on behalf of the officer, halts the Department's investigative or disciplinary process. In no event will the actual time exceed 180 calendar days. The parties agree that the processes in this Agreement, together with the remedies set forth and the procedural protections and rights extended to officers in this Agreement are adequate remedies at law for all disputes arising under this Article.

### b) Expedited Arbitration

The parties have agreed to expedited arbitration for all unresolved grievances related to the application or interpretation of this Article in order to achieve immediate resolution and to avoid the need for court intervention in equity. Such arbitrations shall be conducted pursuant to the Expedited Labor Arbitration Procedures established by the American Arbitration Association ("AAA"), as amended and effective December 1, 2002. To be appointed, the arbitrator must be available to hear the arbitration within thirty (30) calendar days of selection and a decision shall be made within one (1) week of the hearing. The parties agree to create a list of pre-approved arbitrators. Failing same, or in the absence of an available arbitrator from such pre-approved list, the arbitrator designated by the AAA shall be required to be licensed as an attorney in the State of Texas. The parties both agree that the arbitrator has the discretion to receive and hear issues and testimony by written submission or phone conference, but may also require live testimony where appropriate.

**Section 12. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to Section 143.089(g).

# ARTICLE 17

# PROTECTED RIGHTS OF OFFICERS

**Section 1. Effect of Article**

The following provisions shall apply to the administrative investigation of alleged misconduct by APD police officers and the process of administrative discipline. To the extent of any conflict between this Agreement and the provisions of Chapter 143 of the Texas Local Government Code, the provisions of this Agreement shall control. To the extent of any conflict between this Article and any other provision of this agreement, this Article shall control.

**Section 2. Definitions**

In this Article:

a) "Complaint" means any affidavit, administrative referral, or other document setting forth allegations or facts that may form the basis of future allegations of misconduct against an officer and which serves as the basis for initiating an investigation.

b) "Disciplinary Action" means suspension, indefinite suspension, demotion in rank, reprimand, or any combination of those actions.

c) "Investigation" means an administrative investigation of alleged misconduct by a police officer that could result in disciplinary action.

d) "Investigator" means an agent or employee of the Department or an Independent Investigator who participates in conducting an investigation.

e) "Statement" means any communication (oral or written) setting forth particulars or facts regarding the alleged misconduct under investigation.

f) "Evidence" means statements, reports, records, recordings, documents, computer data, text, graphics, videotape, photographs, or other tangible forms of information, including a "complaint".

## Section 3. Compelled Testimony

There shall be no legal or administrative requirement, including but not limited to subpoena power or an order from the City Manager or the Department, that an officer appear before or present evidence to any individual, panel, committee, group, or forum of any type involved in Citizen Oversight. This provision has no application to any Independent Investigation authorized by the Chief of Police or the City Manager, regardless of whether the Independent Investigation was recommended by the Citizen's Review Panel or the Police Monitor, or to any hearing of an appeal of disciplinary action pursuant to this Agreement and/or Chapter 143 of the Texas Local Government Code. Police officers remain subject to orders or subpoenas to appear and provide testimony or evidence in such investigations or hearings.

## Section 4. Access to Records by Officers

a) Not less than forty eight (48) hours before the officer who is the subject of an investigation provides a statement to an investigator, the officer shall be provided a copy of the complaint(s). The Department may omit the name and/or identity of the person making the complaint. In the event that the complaint(s) does not contain all allegations of misconduct under investigation, not less than forty eight (48) hours before the investigator begins the initial oral or written interrogation of the officer, the investigator must inform the officer in writing of the additional allegations being investigated.

b) Before the officer who is the subject of an investigation provides a statement to an investigator, the officer and his representative shall be provided an opportunity to review any videotape, photograph, or other recording of the operative conduct or alleged injuries, if any, which is the subject of the allegations if such recording is within the possession or control of the Department.

c) An officer is entitled to a copy of his or her statement to the Internal Affairs Division at the time when the statement is finalized and signed by the officer, but the statement remains confidential in the hands of the officer pursuant to 143.089(g), APD policy, and orders of non-communication about internal investigations, except for consultations with counsel.

d) Before the officer who is the subject of an investigation provides a statement to an investigator, the officer and his representative shall be allowed to review the portions of any document(s) in which it is alleged that the officer provided false, incomplete, inconsistent, or conflicting information, or in which it is alleged that the officer omitted information in violation of any law or Department policy.

e) Before the officer who is the subject of an investigation provides a statement to an investigator, the officer and his representative shall be allowed to review any report, supplement, use of force report, or other statement recorded or written by the officer, setting forth particulars or facts regarding the operative conduct which is the subject of the allegation(s).

f) Not less than forty eight (48) hours before a Dismissal Review Hearing (or any other administrative hearing conducted for the purpose of determining whether the Department shall take disciplinary action against an officer for alleged misconduct), the officer and his representative shall be allowed to review for five (5) hours all evidence gathered or obtained during the investigation, and not previously reviewed by the officer pursuant to this Section. The evidence available for review shall not include any investigator's summary.

g) When the Chief of Police is notified that the Panel plans to review a case involving a "critical incident" or an allegation of a civil rights violation, the officer and his representative shall be given an opportunity to meet with the Internal Affairs investigator and review witness statements and photographic or videotape evidence contained in the IA file, for a period of up to five (5) hours.

h) Neither the officer nor his representative will be permitted to make copies of any witness statements, audio tapes, photographic or videotape evidence reviewed; however, they may take written notes only, provided that they comply with the confidentiality and use provisions in Section 6.

i) Nothing in this Article shall be construed as requiring the Department to provide or make available for review by the officer or his representative any evidence from criminal investigations by the Austin Police Department unless that evidence is a part of the Internal Affairs Division administrative file. No criminal investigation material that is part of the Internal Affairs Department case file can be released if there is a pending criminal investigation or judicial proceeding.

**Section 5. Audio Taping of Dismissal Review Hearings**

When a Dismissal Review Hearing (or any other administrative hearing conducted for the purpose of determining whether the Department shall take disciplinary action against an officer for alleged misconduct), is held, the officer who is the subject of the investigation may audio tape the portion of the hearing in which the chain-of-command discusses the IAD investigation and the disciplinary decision with the officer.

**Section 6. Confidentiality of Records and Misuse of Information**

The access to records provided in Section 4 of this Article has been granted in exchange for the following agreements intended to insure confidentiality and to prevent retaliation or the threat of retaliation against any witness in an investigation:

a) Retaliation or the threat of retaliation by an officer, or by an individual at the direction of the officer, against the author of an Internal Affairs statement is strictly prohibited. A sustained violation of this subsection shall result in either a temporary or indefinite suspension.

b) If an officer is suspended pursuant to this Section, the officer shall have the right to appeal the suspension to the Civil Service Commission or to an Independent Third Party Hearing Examiner pursuant to the provisions of this Agreement and Chapter 143 of the Texas Local Government Code. The Commission or the Hearing Examiner shall decide whether the specific charge related to this Section is true. If the charge is found to be true, the Commission or Hearing Examiner must affirm the disciplinary action and cannot amend, modify, or reduce the period of disciplinary suspension.

c) Sections 143.053(e) & (f) of the Texas Local Government Code are hereby superseded to the extent of any conflict with this Section.

## Section 7. Right to Representation

An officer who is the subject of an investigation or administrative inquiry shall have the right to be represented by an attorney of the officer's choice during an interview provided the attorney complies with the Internal Affairs interview protocol. An officer shall have the right to be represented by an attorney of the officer's choice during a Dismissal Review Hearing (or other administrative hearing conducted for the purpose of determining whether the Department shall take disciplinary action against an officer for alleged misconduct.)

## Section 8. Violation of Officer's Rights

If the Department or any investigator violates any of the provisions of this Article or of Section 143.312 of the Texas Local Government Code while conducting an investigation, the Department shall reverse any punitive action which depends upon evidence resulting from a violation of this agreement; including a reprimand, and in any appeal, evidence resulting from a violation of this agreement shall be specifically excluded from introduction into evidence in any proceeding against the officer, including any disciplinary appeal hearing. The hearing examiner or arbitrator may make such other evidentiary rulings as are just and fair, after consideration of the circumstances of the violation.

# ARTICLE 18

# DISCIPLINARY ACTIONS, DEMOTIONS AND APPEALS

## Section 1. Suspensions of Three (3) Days or Less

### a) Appealable and Non-Appealable Suspensions

It is understood that most officers will make some errors during their career involving rule violations, including those who are good, professional police officers. The parties agree that short disciplinary suspensions are for the purpose of reinforcing the need for compliance with departmental standards and not necessarily as punishment.

The parties agree that when an officer is suspended for 1, 2, or 3 days the officer may choose one of two methods of dealing with the suspensions as listed below.

(1) **Suspensions that may not be appealed.** The officer may choose to use vacation or holiday time to serve the suspension with no loss of paid salary and no break in service for purposes of seniority, retirement, promotion, or any other purpose. The officer must agree that there is no right to appeal if this method of suspension is chosen.

(2) **Suspensions that may be appealed.** The officer may appeal the suspension to arbitration or the Civil Service Commission. If the officer chooses to appeal the suspension, the arbitrator or Civil Service Commission's authority is limited to ruling on whether or not the charges against the officer are true or not true. If the arbitrator or Civil Service Commission finds the charges to be true, there is no authority to mitigate the punishment. If the arbitrator or Civil Service Commission finds the charges to be not true, the officer shall be fully reinstated with no loss of pay or benefit.

b) **Arbitration Costs on Appealable Suspensions**

In the event that an officer appeals a 1, 2 or 3 day suspension to arbitration, it is agreed that the party that loses the arbitration shall be responsible for all costs of the arbitrator, including travel and lodging if necessary.

To facilitate such payment on the part of the officer he shall submit, at the time of appeal, a signed payroll deduction agreement that if the arbitrator rules in favor of the City he authorizes up to one hundred dollars ($100.00) per month to be deducted from his regular pay until such time as what would usually be the City's portion of the arbitrator's costs have been satisfied.

c) **Reductions of Suspensions of Three (3) Days or Less to a Written Reprimand**

The parties agree that temporary suspensions of 1, 2, or 3 days that were imposed on or after March 25, 2001, will be automatically reduced to a written reprimand under the following conditions:

(1) Suspensions of 1, 2, or 3 days, which are/were not appealed, shall be reduced to a written reprimand two (2) years after the date the suspension was served on the officer if:

    i. The officer does/did not have a sustained complaint for substantially similar conduct within two (2) years from the date the suspension was served on the officer.

(2) Suspensions of 1, 2, or 3 days, which are/were not appealed, shall be reduced to a written reprimand three (3) years after the date the suspension was served on the officer if:

    i. The officer has been previously disciplined for substantially similar conduct, and;

    ii. The officer does/did not have a sustained complaint for substantially similar conduct within the next three (3) years from the date the suspension was served on the officer.

(3) Any controversy over whether or not the prior conduct was substantially similar may be presented to an arbitrator under the other provisions of this Article.

(4) Suspensions of 1, 2, or 3 days that are/were appealed to the Civil Service Commission or a Hearing Examiner are not eligible for reduction to a written reprimand under this Agreement.

(5) Suspensions of 1, 2, or 3 days that are/were reduced to a written reprimand shall not be introduced, cited, or used in any manner in subsequent disciplinary suspensions or appeals as to that officer, but the original disciplinary decision is not covered by this Section as to contentions of disparate discipline by other officers.

(6) If the conditions set forth in subparts (a) or (b) are met, the Department shall notify the Civil Service Commission in writing that the temporary suspension has been reduced to a written reprimand. A copy of this document shall be included in the IAD investigative file, and the Department shall enter a notation in all disciplinary databases or records reflecting this change. The parties agree that the Department and the Civil Service Commission will not alter, destroy, conceal, or remove, any documents related to the temporary suspension, including but not limited to the letter of temporary suspension that was filed with the Commission as required by LGC 143.052(c), or the IAD investigative file itself.

**Section 2. Suspensions of Fifteen (15) Days or Less**

If the Chief determines to suspend an officer for fifteen (15) days or less, the Chief may, at his sole discretion in hardship cases, authorize use of the officer's accumulated vacation leave to cover all or part of the suspension. It is also understood and agreed that if the Chief permits the use of vacation days for suspension, such days off shall be considered as equal punishment to traditional unpaid days of suspension. In no case will sick leave be substituted for unpaid days of suspension.

**Section 3.  Mutually Agreed Temporary Suspensions of Sixteen (16) to Ninety (90) Days**

Either the Police Chief or the officer facing discipline may offer to impose or accept a suspension without pay for a period from sixteen (16) to ninety (90) days. If the officer accepts the mutually agreed suspension, there shall be no appeal either to the Police Civil Service Commission, to the District Court or to a Hearing Examiner.  It is also understood and agreed that if the Chief permits the use of vacation days for suspension, such days off shall be considered as equal punishment to traditional unpaid days of suspension. In no case will sick leave be substituted for unpaid days of suspension.

**Section 4.  Payment for Accrued Leave Upon Indefinite Suspension.**

a)  An officer who has been indefinitely suspended may, upon request, be paid in a lump sum for up to two hundred forty (240) hours of accrued vacation and up to one hundred sixty (160) hours of accrued exception vacation.

b)  If the indefinite suspension is overturned as a result of the appeal, the Civil Service Commission or a Hearing Examiner may restore such leave, but a total award of leave and backpay, if any, shall be offset by the amount paid to the officer under Section a) above.

**Section 5.  Alternative Discipline by the Police Chief**

In considering appropriate disciplinary action the Police Chief may require that an officer be evaluated by a qualified professional designated by the Police Chief.  If that professional recommends a program of counseling and/or rehabilitation for the officer, the Police Chief may, as an alternative to temporary or indefinite suspension, or in combination with a temporary suspension, require that the officer successfully complete the recommended program.  The program of counseling and/or rehabilitation will be completed on the officer's off-duty time, unless the Police Chief approves the use of accrued vacation leave or sick leave.  The officer shall be responsible for paying all costs of the program of counseling and/or rehabilitation which are not covered by the officer's health insurance plan.  If the officer's misconduct involves alcohol-related behavior, the Police Chief may require that the officer submit to mandatory alcohol testing, when ordered by the Police Chief, for a specified period of time.  If, after entering the program of counseling and/or rehabilitation, the officer fails or refuses to complete the program, the officer may be indefinitely suspended.  The officer has the right to appeal to the Police Civil Service Commission or to a third party Hearing Examiner any discipline imposed under this section by filing an appeal notice in accordance with the provisions of Chapter 143.  On appeal, the Police Civil Service Commission or Hearing Examiner shall have the same duties and powers set forth in Chapter 143, but shall not have the power to substitute a program of counseling and/or rehabilitation different from the program imposed by the Police Chief or to substitute any period of suspension for the required program of counseling and/or rehabilitation.

**Section 6. Alternative Discipline by Agreement**

In considering appropriate disciplinary action, the Police Chief may require that an officer be evaluated by a qualified professional designated by the Police Chief. If that professional recommends a program of counseling and/or rehabilitation for the officer, the Police Chief may offer the officer the opportunity to enter into an alternative disciplinary agreement under which the officer would accept a temporary suspension of up to ninety (90) days and agree to successfully complete the program of counseling and/or rehabilitation recommended by the qualified professional designated by the Police Chief. The program of counseling and/or rehabilitation will be completed on the officer's off duty time, unless the Police Chief approves the use of accrued vacation leave or sick leave. The officer shall be responsible for paying all costs of the program of counseling and/or rehabilitation, which are not covered by the officer's health insurance plan. If the officer's misconduct involved alcohol related behavior, the Police Chief may require that the officer submit to mandatory alcohol testing, when ordered by the Police Chief, for a specified period of time. If the officer accepts the opportunity for agreed alternative discipline, the officer may not appeal any terms of the Agreement. If the officer fails to successfully complete the program of counseling and/or rehabilitation, the officer may be indefinitely suspended without right of appeal.

**Section 7. Last Chance Agreement**

a) In considering appropriate disciplinary action, the Police Chief may require that an officer be evaluated by a qualified professional designated by the Police Chief. If that professional recommends a program of counseling and/or rehabilitation for the officer, the Police Chief may offer the officer, as an alternative to indefinite suspension, the opportunity to enter into a last chance agreement. The agreement may include the following provisions in addition to any other provisions agreed upon by the officer and the Police Chief.

(1) The officer will successfully complete the program of counseling and/or rehabilitation recommended by the qualified professional designated by the Police Chief.

(2) The program of counseling and/or rehabilitation will be completed on the officer's off-duty time, unless the Police Chief approves the use of accrued vacation leave or sick leave. The officer shall be responsible for paying all costs of the program of counseling and/or rehabilitation, which are not covered by the officer's health insurance plan.

(3) The officer will agree to a probationary period not to exceed one (1) year, with the additional requirement that if, during the probationary period, the officer commits the same or a similar act of misconduct, the officer will be indefinitely suspended without right of appeal.

b) If the officer's misconduct involves alcohol-related behavior, the Police Chief may require that the officer submit to mandatory alcohol testing, upon order by the Police Chief, for a specified period of time. If the officer accepts the opportunity for a last chance agreement, the officer may not appeal any terms of the agreement. If the officer fails to successfully complete the agreed upon program, the officer may be indefinitely suspended without right of appeal.

**Section 8. Extending Disciplinary Deadline by Agreement**

a) An officer and the Chief, or designee, may agree to extend any statutory deadline for imposing discipline for a period not to exceed thirty (30) days. Either the officer or the Chief may offer or request the extension. The agreement to extend the statutory deadline shall be in writing and shall be signed by both the officer and the Chief, or designee.

b) Any disciplinary action taken by the Chief before the extended deadline shall be considered timely. An agreement to extend the deadline does not affect an officer's right of appeal from the disciplinary action.

**Section 9. Hearing Examiner Retained**

The CITY recognizes that during the term of this Agreement officers have the right to an appeal of an indefinite suspension or suspension for a definite number of days (subject to the provisions herein on non-appealable suspensions of 1 to 3 days) before a Hearing Examiner as provided in Section 143.057 of the Texas Local Government Code. During the term of this Agreement, the parties specifically agree to retain this right of appeal, as modified herein, notwithstanding any change to Section 143.057 which may occur as a result of court or legislative action.

**Section 10. Hearing Examiner Provisions**

In order to be mutually accepted on the hearing examiners list, an individual must be impartial to the ASSOCIATION and the CITY, shall be a member of the American Arbitration Association (AAA), have formal training in presentation and evaluation of evidence, and have experience in deciding municipal employment issues.

**Section 11. Procedures for Hearings Before Police Civil Service Commission and Independent Hearing Examiners**

It is expressly agreed that Police Civil Service Commission hearings and hearings before Hearing Examiners under 143.057 are informal administrative hearings and are not subject to discovery or evidentiary processes. Specifically it is understood that neither the Texas Rules of Evidence (TRE) or the Texas Rules of Court (TRC) apply to such hearings. If the Department calls a witness to testify during a hearing and that witness has given a statement to Internal Affairs regarding the pending case, then the

Department will provide a copy of that statement to the officer's counsel at the time the witness is called to testify.

**Section 12. Procedures Before Hearing Examiners**

In any proceeding before a hearing examiner, the following procedures shall be followed:

a) The Department shall furnish the charge letter to the hearing examiner by delivering a copy to the AAA far enough in advance, so that the hearing examiner receives the copy at least five (5) days before the start of the hearing.

b) The officer may furnish a position statement to the hearing examiner by delivering copies to the AAA and to the Department far enough in advance, so that the hearing examiner and the Department receives the copies at least five (5) days before the start of the hearing.

c) At the close of the presentation of evidence, the hearing examiner shall conduct a post-hearing conference with counsel for the Department and the officer and advise counsel what issue(s) the hearing officer wants covered in post-hearing briefs. This does not preclude either party from briefing anything not requested by the hearing examiner.

d) Failure of the AAA to meet its obligations as set out in this Subsection does not jeopardize the hearing rights of either the City or the officer.

**Section 13. Special Appeal Process for Demotions**

a) This Section applies only to involuntary demotions based on misconduct or performance issues. It does not apply the following:

(1) Demotions related to the return from military service of another officer;
(2) Demotions caused by a reduction in force;
(3) Demotions related to the reinstatement of another officer after recovery from a disability;
(4) Demotions from the rank of Assistant Chief of Police; or
(5) Demotions related to the reinstatement of another officer after indefinite suspension.

b) If the Chief chooses to demote an officer, the Chief shall file with the Civil Service Commission a written statement giving the reasons for the demotion. A copy of the written statement shall be furnished immediately to the affected officer.

c) The officer may appeal the demotion by filing a written appeal notice with the Director of Civil Service within ten (10) days after the date of the demotion. The officer

may elect to appeal to an independent third-party Hearing Examiner selected in accordance with the provisions of Section 143.057 of the Local Government Code, as amended by this Agreement. The officer's election to appeal to a Hearing Examiner must be contained in the officer's initial notice of appeal.

d) During the pendency of the appeal, the officer's rank and pay shall not be changed but the Chief may reassign the officer to perform duties appropriate to the rank held by the officer immediately prior to the promotion. The officer's absence from his promoted position shall not create a vacancy, but the Chief may pay higher classification pay to another officer to perform the duties of the promoted position.

e) If the officer appeals to the Civil Service Commission, the decision of the Commission is final and may not be appealed further. If the officer appeals to a Hearing Examiner, the decision may be appealed only on the grounds that the Hearing Examiner was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means.

f) If the Commission or Hearing Examiner upholds the Chief's demotion, the officer shall be returned to the rank held immediately prior to the promotion, the officer's pay shall be adjusted accordingly, and the officer's name shall be permanently removed from the promotional eligibility list if the list is still in effect. The officer's time in grade in the promoted position shall not count toward eligibility for future promotion.

g) If the Commission or Hearing Examiner overturns the Chief's demotion, the officer shall be returned to the promoted rank in an assignment to be determined by the Chief.

h) In addition to the provisions listed in Section 18 *Preemption*, below, this Section shall be entitled to preemption including but not limited to Sections 143.010, 143.015, 143.054, 143.057 and all provisions of Subchapter B of the Texas Local Government Code Chapter 143.

**Section 14. Substitution of Demotion for Indefinite Suspension**

In the appeal of an indefinite suspension, the Civil Service Commission or a Hearing Examiner may substitute a demotion for the indefinite suspension imposed by the Chief.

**Section 15. Mediation**

The City shall implement a voluntary mediation process concerning citizen complaints. The Association may appoint two persons to work with the City in developing the specific operating procedure. The process shall include and be based upon the following concepts:

a) Mediation shall be an option offered to the complainant at the time the initial complaint is filed for minor nature complaints, such as rudeness.

b) For a complaint to proceed to mediation, both the officer and the complaining citizen must voluntarily agree.

c) Once mediation has been agreed to, the matter cannot be returned to the Department to be handled as a disciplinary matter.

**Section 16. Effect of Contract Expiration**

The provisions of this Agreement shall remain in full force and effect after expiration of this Agreement as to:

a) Any investigation assigned a Control Number by the Internal Affairs Division prior to the expiration of this Agreement;

b) Any disciplinary decision by the Chief prior to the expiration of this Agreement; or

c) Any appeals of such disciplinary action.

**Section 17. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Section 143.072, the provisions of Subchapter D of Chapter 143 and all specific provisions referred to in this Article.

**ARTICLE 19**

**ASSIGNMENT CHANGES**

**Section 1. Advance Notice of Assignment Changes.**

Except for normal shift rotations, for assignment changes that are determined far enough in advance, the Department will provide a twenty-eight (28) calendar-day notice to the affected officer. Advance notice of the assignment change may be waived by the Chief or his designee, if prior notice is not in the best interest of the Department or in any emergency situations. Advance notice of the assignment change may be waived by the officer. In the event of special hardship, an affected officer may appeal to the Assistant Chief of their Bureau for consideration of temporary scheduling or other adjustments to reduce or address personal hardships. The Chief shall create a joint committee with representatives appointed by the ASSOCIATION to evaluate hardship claims and to recommend action to the Assistant Chief.

## Section 2. Requested Job Assignment Transfers.

A reasonable, good faith effort shall be made to post initial assignment vacancies. It is recognized and understood that notice cannot be sent for all backfill transfers resulting from the initial vacancies. The usual process shall be to post notice and reference to the APD bulletin board and City email. This notice may be sent out to all employees on alpha pager, as near as possible to ten (10) days before closing the application process whether or not you get it. It shall be satisfactory to send an "all page" notice whether or not each individual officer receives it. Oral or written reprimands shall not affect an employee's ability to apply for a transfer to a sought after position, but may be considered along with all other factors in making a selection among applicants. Applying for a posted position shall neither jeopardize nor insure an officer's current assignment. The Chief shall establish a committee with representatives appointed by the ASSOCIATION to recommend changes or improvements in the process of posting notice of job assignment opportunities or openings.

# ARTICLE 20

## AGREEMENT GRIEVANCE PROCEDURE

### Section 1. Goals and Objectives

The parties agree that they share the interest of resolving disputes with minimum confrontation. To this end, the parties will attempt to insure that disputes are identified and resolved through a process committed to mutual respect, open communication, and joint problem solving.

### Section 2. Nature of Grievances

As used in this Article, a "grievance" is defined as any dispute, claim, or complaint involving the interpretation, application, or alleged violation of any provision of this Agreement. A grievance may be filed under this procedure by the ASSOCIATION or by any individual officer to whom this AGREEMENT applies. A grievance which does not relate to the application and/or interpretation of any provision of this Agreement shall be processed in accordance with a procedure to be established in writing by the Chief of Police. Grievances pending as of the effective date of this Agreement shall be processed under procedures in effect prior to the Agreement. Pending shall mean that the written grievance has been filed.

### Section 3. Timelines

Any timeline or deadline provided in this Article may be extended by mutual written agreement of the parties involved at the particular step of the process where the timeline

applies. If any timeline or deadline for a decision is missed by the City, the grievance automatically proceeds to the next step in the process. If any timeline or deadline for a decision is missed by the Association, the grievance is considered to be resolved and dismissed.

**Section 4. Steps of Grievance Procedure**

The steps of this grievance procedure are as follows:

<u>Step 1</u>

   a) **Filing of Grievance**

The Association President or an aggrieved officer who desires to file a grievance under this procedure must file his/her grievance with the Association Grievance Committee within thirty (30) business days after the Association President or the officer knew of or should have known of the facts or event(s) giving rise to the grievance. A copy of the grievance shall be forwarded to the Chief of Police, or designee, by the Association Grievance Committee within three (3) business days after receipt of the grievance.

   b) **Response by Association Grievance Committee**

Within fifteen (15) business days after its receipt of a grievance filed by an individual officer or filed on behalf of the Association under this procedure, the Association Grievance Committee shall determine, in its sole discretion, if a valid grievance exists. If the Association Grievance Committee determines that the grievance is valid, the grievance shall proceed to Step 2 of this procedure. If the Association determines that the grievance is not valid, the Association President will notify the Chief that no further proceedings are necessary.

<u>Step 2</u>

Any grievance found to be valid by the Association Grievance Committee shall be submitted to the Chief of Police within fifteen (15) business days of the Step 1 ruling. Each grievance shall be submitted on a form agreed to by the parties and must include:

(1) A brief statement of the grievance and the facts or events upon which it is based;

(2) The section(s) of the Agreement alleged to have been violated;

(3) The steps taken, if any, by the grievant to resolve the issue; and

(4) A proposed resolution of the grievance.

A grievance submitted in substantial compliance with this section shall not be denied on the basis of form. Within fifteen (15) business days after receipt of the Step 2 grievance, the Chief of Police shall submit a written response to the Association Grievance Committee.

## Step 3

If a grievance is not resolved at Step 2 , the Association may within fifteen (15) business days after receipt of the Chief's Step 2 response, submit the grievance to arbitration in accordance with the provisions of this Agreement. The grievance arbitration procedure shall be implemented by the Association notifying the Chief of Police in writing of its intent to submit the grievance to arbitration.

## Step 4

The arbitration hearing will be scheduled by agreement at the earliest date possible, preferably within thirty (30) business days after submitting the grievance to arbitration. The arbitrator will be selected as agreed or under the AAA process.

The hearing shall be held at a location which is convenient for all parties and the arbitrator and shall be conducted informally, without strict evidentiary or procedural rules. Unless otherwise mutually agreed, the submission to the arbitrator shall be based on the written grievance statement submitted by the Association Grievance Committee at Step 2. The arbitrator shall consider and decide only the issue(s) in the grievance statement or submitted in writing by agreement of the parties. The hearing shall be concluded as expeditiously as possible and the arbitrator's written decision shall be provided to both parties within thirty (30) calendar days after close of the hearing, unless the parties mutually agree otherwise

The parties specifically agree that the arbitrator's authority shall be strictly limited to interpreting and applying the explicit provisions of this Agreement. The arbitrator shall not have authority to modify the agreement or create additional provisions not included in the Agreement. The parties agree that neither the City nor the Association shall have *ex parte* communications with the arbitrator concerning any matter involved in the grievance submitted to the arbitrator.

Each party shall be responsible for its own expenses in preparing for and representing itself at arbitration. The fees of the arbitrator shall be borne by the losing party. In the event of a composite decision, the arbitrator shall determine the portion of such cost to be borne by each party. The written decision of the arbitrator may be appealed only on the grounds that the arbitrator was without jurisdiction or exceeded his jurisdiction; that the decision was procured by fraud, collusion, or other unlawful means; or that the arbitrator's decision is based upon a clear and manifest error of law.

## Section 5.  Election of Remedies

It is specifically and expressly understood that filing a grievance under this Article, which has as its last step final and binding arbitration, constitutes an election of remedies.

## Section 6.  Statutory Appeals and Hearings

Except as specifically provided in this Agreement, all statutory rights of appeal to the Civil Service Commission or Hearing Examiner, including disciplinary matters, promotional bypasses, and demotions will be governed by Chapter 143 and are not subject to this contract grievance procedure.

# ARTICLE 21

# TERM OF AGREEMENT

## Section 1.  Term of Agreement

a)  This Agreement shall be effective as of the date it is ratified by the City Council, except as to any provisions herein specifically made effective on any other date. It shall remain in full force and effect, subject to the provisions of this Article, until September 30, 2011.

b)  The provisions of this Agreement do not apply to any officer who separates from City employment before the effective date of this Agreement or before the effective date of any specific provisions hereof.

## Section 2.  Additional Option Year

The City may, at its option, extend this Agreement for one additional year, by notifying the Association on or before March 1, 2011, that it chooses to so extend this Agreement. All provisions of this Agreement will remain in full force and effect, subject to the provisions of this Article, during the additional year of this Agreement, which shall end on September 30, 2012.

## Section 3.  Continuing Relationship

a)  The parties acknowledge their longstanding history of successful Meet & Confer negotiations and their joint efforts to continue to build on the framework of each previous agreement. This Agreement is the product of that relationship and negotiation history. Rather than including in this agreement many of the details or the processes which were in former agreements, the parties have limited the provisions in this agreement to those that are necessary. This includes agreements on the issues which may require a contractual modification of existing civil service law (access to the 143.089(g) file, and release of defined reports from Independent Investigations), agreements to outline the

broad concepts of citizen oversight, and agreements which clarify rights which exist with or without the agreement. Other aspects of the City's implementation of citizen oversight are its prerogatives under Texas law and the City Charter, and do not require contractual provisions. Both parties recognize that the City may proceed with citizen oversight under this new agreement substantially as it has done under the prior agreement, and the City is entitled to the maintenance of those prior rights and prerogatives, although this agreement does not require the City to operate citizen oversight under the prior provisions, except to the extent now specified in this agreement. Both parties recognize that without the continued ability of the City to carry out citizen oversight, this agreement would not have been reached, either as to the economic issues or the additional provisions for the procedural protections of officer's rights.

b) In the event of any court order, judgment, Texas Attorney General's opinion or arbitration decision brought or caused by officers or the APA which substantially impairs oversight access to the 143.089(g) file, prevents release of the defined portions of reports of independent investigation, invalidates the 180 tolling provision in Article 16, or impairs the City's right to expedited arbitration as contemplated herein, the City may reopen negotiations to resolve and correct the issue or an alternate resolution. If a negotiated resolution of the issue is not achieved, the City may terminate this agreement after ninety (90) days written notice, and the parties may resume negotiations toward a successor agreement under the provisions Section 143.301 et.seq., of the Texas Local Government Code.

c) In the event of any court order, judgment, Texas Attorney General's opinion or arbitration decision brought or caused by the City of Austin or other party with standing under this agreement substantially impairs the provisions of Article 17 pertaining to officer's rights, or which would allow full access to investigative evidence of officer misconduct in the absence of a disciplinary decision imposed by the Chief, the APA may reopen negotiations to resolve and correct the issue or an alternate resolution. If a negotiated resolution of the issue is not achieved, the City may terminate this agreement after ninety (90) days written notice, and the parties may resume negotiations toward a successor agreement under the provisions Section 143.301 et.seq., of the Texas Local Government Code.

**Section 4. Notice and Renegotiation**

If either the City or the Association desires to engage in negotiation for a successor Agreement, then either or both shall give the other party written notice of its desire to negotiate for a new Agreement no less than 120 days before the expiration of the present Agreement. In the event that notice of intent to renegotiate is given by either party, the parties will begin negotiations for a new Agreement not later than sixty (60) days after notice is given, unless the parties agree otherwise.

**Section 5.  Continuation During Negotiations**

If the parties are engaged in negotiations for a successor Agreement at the time this Agreement expires, the Association's and the City's negotiating teams shall have the authority to extend this Agreement in thirty (30) calendar day increments by mutual written agreement, during any period of good faith negotiations after such termination date, not to exceed a total of six (6) months.

**Section 6.  Effect of Termination**

a)  In the event that a successor Agreement has not been ratified before the expiration date of this Agreement (the expiration date of September 30, 2011, the extended expiration date of September 30, 2012, or any extended expiration date under Section 5 above), all provisions of this Agreement, both economic and non-economic, shall expire and no longer be in full force and effect, except as to specific Articles or Sections hereof which provide that some or all of their terms will continue beyond expiration of this Agreement.

b)  In the event of any temporary expiration of the prior agreement before the legally effective approval of this Agreement, this Agreement shall nevertheless control all matters and rights defined hereunder, in spite of any such interim lapse or gap, as if this Agreement had become immediately effective upon the expiration of the prior Agreement. This provision of the Agreement shall not require exhaustion of administrative remedies by any person claiming rights relating to it or asserting its validity.

c)  After expiration/termination of this Agreement, it is expressly understood that the wages and compensation specified in this Agreement may then be placed at a level determined by the City Manager, as funds are authorized by the City Council, and this does not preclude wages and compensation being rolled back to pre-contract levels, as they existed on the day prior to the effective date of this Agreement.

**Section 7.  Funding Obligations**

The CITY presently intends to continue this Agreement each fiscal year through its term, to pay all payments due, and to fully and promptly perform all of the obligations of the CITY under this Agreement. All obligations of the CITY shall be paid only out of current revenues or any other funds lawfully available therefore and appropriated for such purpose by the City Council, in compliance with the Texas Constitution, Article XI, Sections 5 and 7. In the event that the City of Austin cannot meet its funding obligations, as provided in the State Constitution, this entire Agreement becomes null and void.

# Article 22

## Notices

### Section 1. Association Notices

Notices the Association is required to provide to the City under this Agreement or Chapter 143, unless specifically noted otherwise, will be provided in writing to the office of the Chief of Police and the designated representative of the City Attorney's Office.

### Section 2. City Notices

Notices the City is required to provide to the Association under this Agreement or Chapter 143, unless specifically noted otherwise, will be provided in writing to the Association President's office and the Association's designated attorney.

### Section 3. Designation of Notice Recipients

Within 10 calendar days after the effective date of this Agreement, both parties will provide the other written notice of the correct mailing and e-mail addresses of its designated recipients.

### Section 4. Timeliness of Mail Notice

A notice provided by mail will be deemed timely if addressed to the two correct mailing addresses for the City or the Association and postmarked no later than the date such notice is due.

### Section 5. Adequacy of Email Notice

Use of email communications under this paragraph shall be preceded by confirmed exchanges at the outset of the agreement, from the sending to receiving servers, prior to using the email option for notices under this section. Each party agrees to provide notice of any change in email addresses of any designated recipient following the initial exchange of emails. In recognition of the fact that email systems are dependent on a number of technical factors, the parties agree to confirm the receipt of email notices by sending a "read receipt" to the other party or sending a brief acknowledgment of receipt. A notice sent by e-mail will be deemed timely if addressed to the two correct e-mail addresses for the City or the Association and sent by 4:59 p.m. on the due date.

### Section 6. Notice of Address Changes

Notice of any changes of address or e-mail address must be provided in writing to the other party within 7 calendar days of the change.

# ARTICLE 23

## ENTIRE AGREEMENT

**Section 1.  Subjects and Issues**

The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to raise issues and make proposals with respect to any subject or matter not removed by law from the meet and confer process, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the CITY and the ASSOCIATION, for the duration of this Agreement, each voluntarily and unqualifiedly waive the right, and each agrees that the other shall not be obligated, to meet and confer with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement, except as provided for single issue negotiation above.

**Section 2.  Amendment of the Agreement**

a) Except as provided in Subsection b) below, this Agreement may be amended during its term by the parties only by written mutual agreement ratified in accordance with the provisions of Chapter 143.

b) The Association's Executive Board and the City Manager are expressly delegated the power to enter into Memoranda of Amendment as necessary to implement the intentions of the parties with regard to Article 25, *Consolidation of Public Safety Officers into APD.*

**Section 3.  Benefit of the Bargain**

a) In the event that the Texas Legislature amends any provision of Texas Local Government Code Chapters 141, 142 and 143 that changes wages or benefits for City of Austin Police Officers during the term of this Agreement, any such amendment shall not be applicable to the officers covered by this Agreement, unless the City Council adopts such amendment by Ordinance. Examples of wages and benefits include, but are not limited to, base salary, longevity, assignment pay, sick leave, vacation, health insurance, and weapon provision mandates.

b) During the negotiation of this Agreement, the City and the Association have agreed on the stated enhancements to employee compensation and benefits, in reliance on the cost of those enhancements. Both parties acknowledge that this Agreement would not have been reached, as reflected in this document, if the cost to the City had been higher. In the event of any proceeding in which the Association asserts the right to additional compensation or pay enhancements based on the provisions of this Agreement, the

decision-maker shall consider the cost of the contractual pay and benefits enhancements as part of the mutual agreement and meeting of the minds that resulted in approval of this Agreement by both parties.

## ARTICLE 24

## SAVINGS CLAUSES

### Section 1. Effect of Illegal Provision

If any provision of this Agreement is subsequently declared by legislative or judicial authority to be unlawful, unenforceable, or not in accordance with applicable statutes, all other provisions of this Agreement shall remain in full force and effect for the duration of this Agreement, and the parties shall meet as soon as possible to agree on a substitute provision.

### Section 2. Preemption of Local Government Code and Other Provisions

The provisions of this Agreement shall supersede and preempt the provisions of any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with any provision of this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code; Ordinances of the City of Austin, Texas; Personnel Policies of the City of Austin, and Rules and Regulations of the Police Officers' Civil Service Commission for the City of Austin, Texas. This preemption provision is authorized by Section 143.307 of the Texas Local Government Code, and the parties have expressly agreed that each and every provision involving or creating such a conflict shall have the effect of superseding the statutory standard or result which would otherwise obtain, in the absence of this agreement. This provision is of the essence to the bargain and agreement which has been reached.

### Section 3. Change in Authorized Representative

During the term of this Agreement, if there is a withdrawal of recognition of the APA pursuant to Section 143.304 of the Texas Local Government Code, then it will be the CITY's option to continue the terms of this Agreement or to cancel the contract and engage in negotiations with the successor organization, if any.

# ARTICLE 25

## CONSOLIDATION OF PUBLIC SAFETY OFFICERS INTO APD

**Section 1. Definitions**

The following definitions apply to terms used in this Article and this Agreement, unless a different definition is required by the context in which the term is used:

a) "PSEM" refers to the City of Austin Public Safety and Emergency Management Department.

b) "PSEM law enforcement officer(s)" refers to PSEM employees who are commissioned by TCLEOSE as peace officers.

c) "Transition Completion Date" refers to the date that the last PSEM law enforcement officer successfully completes the modified cadet training program designed by APD specifically for the transition process.

**Section 2. Statement of Intent**

a) The intent of this Article is to provide for the consolidation of the law enforcement functions of the City's Public Safety and Emergency Management Department into the Austin Police Department. The paramount purpose in consolidating the two law enforcement agencies is to provide unity of command and improve safety in meeting the law enforcement needs of the community.

b) The parties acknowledge that a transition period is necessary to achieve consolidation and agree that this Article is intended to provide the flexibility necessary to structure the transition and accomplish consolidation in an orderly and cost-effective manner. The parties further intend that all PSEM law enforcement officers will be under the command of the Chief of Police at the earliest possible date and that the law enforcement functions of PSEM will cease to exist when the PSEM officers become APD employees.

c) A further intent of this Article is to achieve an integration of the PSEM law enforcement officers into the APD Civil Service classifications and compensation structure and to extend to them the benefits enjoyed by APD officers under Chapter 143 of the Texas Local Government Code and the terms of this Agreement, except as otherwise provided for in this Article.

d) The parties also intend that, when the transition period is complete, the consolidation of the former PSEM law enforcement officers into APD will be fully accomplished.

## Section 3. Basic Consolidation Provisions

a) The City will commence the consolidation transition in a timely manner after the effective date of this Article and will complete the transition within a period of eighteen (18) months after commencement. The transition will be completed on the date that the last PSEM law enforcement officer successfully completes the modified cadet training program designed by APD specifically for the transition process. That date is referred to in this Article as the "Transition Completion Date."

b) The Chief of Police will determine the methods, strategies, and processes for the transition and shall have full discretion to direct the transition, subject only to any limitations specified in this Article. Nothing in this Article shall be construed to abrogate any of the City's management rights, unless specifically provided otherwise in this Article. During the transition, the Chief of Police retains full authority to determine the assignment and duties of both APD officers and the PSEM law enforcement officers.

c) Notwithstanding any provisions of Chapter 143, the Chief of Police shall assume command of all law enforcement officers employed by PSEM on the effective date of this Article. All PSEM law enforcement officers will become APD employees on the effective date of this Article, to the same extent as if they had been hired under the processes prescribed by Chapter 143. If the effective date of this Article is delayed beyond the effective date of this Agreement, the provisions of Section 11 below shall apply during any period between the effective date of the Agreement and the effective date of this Article.

## Section 4. Selection and Training

a) The Chief of Police shall establish the selection criteria and requirements for PSEM law enforcement officers who will be included in the transition, which shall include a background investigation. The Chief of Police shall not select any PSEM officer previously employed by APD whose employment was terminated or who resigned in lieu of termination, as determined by the Chief of Police.

b) PSEM law enforcement officers selected for the transition must attend and successfully complete a modified cadet training program designed by APD specifically for the transition process. Any officer who does not successfully complete the requirements of the program, as determined by the Chief of Police, will be dismissed from APD without right of appeal or grievance under Civil Service law, the grievance process in this Agreement, or the City's grievance process applicable to non-Civil Service employees.

c) PSEM law enforcement officers who successfully complete the modified cadet training program will also complete an orientation period, as determined by the Chief of Police, but shall not be on probation for any period of time after completion of the program.

**Section 5. Civil Service Status**

a) All PSEM law enforcement officers who successfully complete the modified cadet training program, as determined by the Chief, will be placed in the APD Civil Service rank of Police Officer, regardless of their previous position or rank in PSEM, and will thereafter be Civil Service employees, subject to the provisions of this Agreement.

b) Any change in rank resulting from the consolidation transition shall not be construed as a demotion under either Civil Service law or the City's Personnel Policies. A PSEM law enforcement officer whose rank changes as a result of the consolidation transition may not file a grievance regarding that change in rank under the grievance process set out in this Agreement or under the City's Personnel Policies.

**Section 6. Wages and Benefits**

a) On the effective date of this Article, the compensation of all PSEM law enforcement officers will be determined as follows:

(1) Base Salary: Each officer will be placed into the APD Base Salary Schedule at the pay step which matches the officer's base salary from PSEM for the pay period immediately prior to the effective date of this Article. If the Base Salary Schedule does not include a pay step that matches the officer's PSEM base salary, the officer will be placed at the next higher pay step on the Schedule. All placements will result in the officer receiving a step pay increase in the second year of this Agreement, except that no PSEM officer will be placed above the pay step applicable to APD officers with sixteen (16) years of service. An officer's years of service with PSEM do not affect an officer's initial placement in the Schedule. After initial placement, the officer will advance through the step pay program in sequence without regard to the officer's years of service with APD or PSEM. For example, a PSEM officer who is placed in pay step 60 (applicable to 5 years of service for an APD officer) will advance to pay step 70 (applicable to 6 years of service for an APD officer) at the beginning of the second year of this Agreement.

(2) Stipends and Special Pay Items: The stipends received by PSEM officers will be discontinued on the effective date of this Article. Thereafter, all officers are eligible to receive the special pay items in Article 7 (Field Training Officer Pay; Mental Health Certification Pay; Bilingual Pay; Shift Differential; and Education Incentive or Certification Pay) for which they qualify, in accordance with the terms of this Agreement.

(3) Longevity Pay: Each officer will receive longevity pay as provided in Article 7 of this Agreement based on the officer's cumulative years of service with both PSEM and APD.

b) No later than thirty (30) calendar days after the effective date of this Article, the City will determine whether any PSEM law enforcement officers will incur a loss in pay

as a result of placement into the APD Base Salary Schedule and special pay program provided by Article 7. If the determination reflects a loss in pay for any officer during the first year of this Agreement, the officer will receive the difference in a lump sum payment no later than forty-five (45) calendar days after the effective date of this Article. If such a loss will occur for any PSEM officer during the second year of this Agreement, the officer will receive the difference in a lump sum payment at the beginning of the second year of this Agreement.

c) Any change in compensation resulting from the consolidation transition shall not be construed as a demotion or promotion under Civil Service law, this Agreement, or the City's Personnel Policies. A PSEM law enforcement officer whose compensation changes as a result of the consolidation transition may not file a grievance regarding that change in compensation under the grievance process set out in this Agreement or under the City's Personnel Policies.

**Section 7. Transfer of Leave and Compensatory Time Balances**

a) On the effective date of this Article, each PSEM law enforcement officer will begin accruing leave at the same rate as APD officers.

b) Leave balances accrued by PSEM law enforcement officers prior to the effective date of this Article will be transferred to APD on the effective date of this Article. Special vacation balances of PSEM officers due to settlement of claims regarding vacation accrual rates shall be transferred to APD and shall remain subject to the terms of the applicable settlement agreement.

c) All compensatory time balances will be transferred to APD on the effective date of this Agreement, but must be used by the former PSEM officers within three (3) years after the effective date of this Agreement.

**Section 8. Payment of Accrued Sick Leave**

Accrued sick leave will be paid to a former PSEM law enforcement officers under the following conditions:

a) An officer who retires under both the City of Austin Employees Retirement System and the Austin Police Retirement System, will be paid for all accrued sick leave in accordance with the provisions of Article 9, except that the 10-year service requirement shall not apply.

b) An officer who was hired by the City of Austin prior to October 1, 1986, who separates from the City for any reason other than retirement will be paid for a maximum of 720 hours of accrued sick leave.

c) An officer who was hired after October 1, 1986, who separates from the City after the effective date of this Article for any reason other than retirement will be paid for

accrued sick leave in accordance with Article 9 of this Agreement, but years of service with PSEM will not be counted as years of service with APD for purposes of the 10-year service requirement.

**Section 9. Promotional Eligibility**

A PSEM law enforcement officer who successfully completes the transition and becomes an APD officer shall be eligible to take the promotional examination for the rank immediately above Police Officer upon completion of five (5) years of service. For purposes of calculating the required five (5) years of service, all service with APD after the Transition Completion Date plus up to three (3) years of continuous service in PSEM immediately prior to the effective date of this Article shall be counted toward the requirement.

**Section 10. Conditions Precedent**

To prevent impairment of retirement benefits for the PSEM law enforcement officers, Sections 2 through 10 of this Article shall not be effective unless the following conditions are met:

a) The City Council approves a resolution to support legislation in the 2009 Legislature to amend the Austin Police Retirement System (APRS) pension statute to:

(1) Increase the City's contribution rate for APRS to the amount determined by the System's actuary to fund the additional liabilities incurred by the System as a result of participating in the Proportionate Retirement Program; and

(2) Require that approximately six (6) years after the System begins participating in the Proportionate Retirement Program, the System's actuary must conduct a five-year experience study to determine whether the City's contribution rate should be increased or decreased based on utilization of the Proportionate Retirement Program during that period.

b) The City and the APRS Board of Trustees concur on a reasonable plan and schedule by which the Board of Trustees will adopt a final resolution electing to participate in the Proportionate Retirement Program. If the agreed schedule delays the adoption of the final resolution by the APRS Board of Trustees until after the effective date of this Agreement, the effective date of Sections 3 through 9 of this Article shall be delayed until the final resolution is adopted by the APRS Board of Trustees.

c) The City's increased contribution rate to the APRS to fund additional liabilities incurred as the result of participation in the Proportionate Retirement Program does not exceed 18.25%. However, the City may accept a higher contribution rate, approve the APRS election to participate in the Proportionate Retirement Program, and waive the enforcement of the condition set out in this paragraph.

**Section 11. Unified Command**

a) The parties agree that unified command of APD and PSEM law enforcement officers should be achieved at the earliest possible date. If the effective date of this Article is delayed beyond the effective date of this Agreement based on the provisions of Section 10 above, the provisions of this Section shall apply until the effective date of the remainder of this Article.

b) From the effective date of this Agreement until the effective date of this Article, the Director or Acting Director of PSEM shall temporarily report directly to the Chief of Police. The Chief of Police shall assume command of all PSEM law enforcement functions by virtue of this reporting relationship, but PSEM shall remain a separate City department during this period.

c) Notwithstanding any provisions of Civil Service law, the PSEM officers will not become APD employees until the effective date of this Article.

**Section 12. Grievances**

A grievance may be filed under this Article only on the following issues:

1)   That the City failed to properly apply the prescribed methodology of this Article in determining the proper placement of a PSEM officer in the APD Base Salary Schedule; or

2)   That a PSEM officer was placed in the APD Base Salary Schedule above the pay step applicable to APD officers with sixteen (16) years of service.

**Section 13. Preemption**

It is expressly understood and agreed that all provisions of this Article shall preempt any statute, Executive Order, local ordinance, City policy or rule, which is in conflict with this Agreement and the procedures developed hereunder, including for example and not by way of limitation, any contrary provisions of Chapters 141, 142, and 143 of the Texas Local Government Code, including but not limited to the provisions of Sections 143.003; 143.010; 143.014; 143.021(b) and (c); Sections 143.022 through 143.036; Sections 143.041; and Sections 143.051 though 143.

IN WITNESS WHEREOF, THE PARTIES HAVE CAUSED TO HAVE THIS AGREEMENT TO BE SIGNED BY THEIR DULY AUTHORIZED REPRESENTATIVES ON THIS ___30th___ DAY OF _September_, 2008.

CITY OF AUSTIN                          AUSTIN POLICE ASSOCIATION


_____                _____
Marc A. Ott                            George Vanderhule
City Manager                           President

## 40 Hour Week

| | GRADE | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PAYSTEP | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | 110 | 120 | 130 |
| | YEAR | BASE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| OFFICER | HR | 24.446 | 27.433 | 30.279 | 30.279 | 30.279 | 30.279 | 32.397 | 32.397 | 32.397 | 32.397 | 34.666 | 34.666 | 34.666 |
| 17050 | MO | 4,237 | 4,755 | 5,248 | 5,248 | 5,248 | 5,248 | 5,616 | 5,616 | 5,616 | 5,616 | 6,009 | 6,009 | 6,009 |
| P02 | YR | 50,848 | 57,061 | 62,979 | 62,979 | 62,979 | 62,979 | 67,386 | 67,386 | 67,386 | 67,386 | 72,104 | 72,104 | 72,104 |
| CORPORAL/DETECTIVE | HR | | | | | 33.003 | 33.003 | 35.313 | 35.313 | 35.313 | 35.313 | 37.786 | 37.786 | 37.786 |
| 17025 | MO | | | | | 5,721 | 5,721 | 6,121 | 6,121 | 6,121 | 6,121 | 6,550 | 6,550 | 6,550 |
| P07 | YR | | | | | 68,646 | 68,646 | 73,452 | 73,452 | 73,452 | 73,452 | 78,594 | 78,594 | 78,594 |
| SERGEANT | HR | | | | | | | | 38.491 | 38.491 | 38.491 | 41.186 | 41.186 | 41.186 |
| 17070 | MO | | | | | | | | 6,672 | 6,672 | 6,672 | 7,139 | 7,139 | 7,139 |
| P08 | YR | | | | | | | | 80,061 | 80,061 | 80,061 | 85,666 | 85,666 | 85,666 |
| LIEUTENANT | HR | | | | | | | | | | 44.265 | 47.363 | 47.363 | 47.363 |
| 17045 | MO | | | | | | | | | | 7,673 | 8,210 | 8,210 | 8,210 |
| P09 | YR | | | | | | | | | | 92,070 | 98,515 | 98,515 | 98,515 |
| COMMANDER | HR | | | | | | | | | | | | 54.768 | 54.768 |
| 17018 | MO | | | | | | | | | | | | 9,493 | 9,493 |
| P10 | YR | | | | | | | | | | | | 113,917 | 113,917 |

NOTES: MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

| Police Cadet | | | | | | 15.385 | HOURLY | | 2,667 | MONTHLY | | 32,001 | YEARLY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | GRADE | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PAYSTEP | 140 | 150 | 160 | 170 | 180 | 190 | 200 | 210 | 220 | 230 | 240 | 250 | 260 |
| | YEAR | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| OFFICER | HR | 34.666 | 37.092 | 37.092 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 | 39.689 |
| 17050 | MO | 6,009 | 6,429 | 6,429 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 | 6,879 |
| P02 | YR | 72,104 | 77,151 | 77,151 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 | 82,553 |
| CORPORAL/DETECTIVE | HR | 37.786 | 40.430 | 40.430 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 | 43.261 |
| 17025 | MO | 6,550 | 7,008 | 7,008 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 | 7,499 |
| P07 | YR | 78,594 | 84,095 | 84,095 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 | 89,983 |
| SERGEANT | HR | 41.186 | 44.068 | 44.068 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 | 47.153 |
| 17070 | MO | 7,139 | 7,638 | 7,638 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 | 8,173 |
| P08 | YR | 85,666 | 91,661 | 91,661 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 | 98,078 |
| LIEUTENANT | HR | 47.363 | 50.679 | 50.679 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 | 54.227 |
| 17045 | MO | 8,210 | 8,784 | 8,784 | 9,170 | 9,399 | 9,399 | 9,399 | 9,399 | 9,399 | 9,399 | 9,399 | 9,399 | 9,399 |
| P09 | YR | 98,515 | 105,412 | 105,412 | 110,040 | 112,791 | 112,791 | 112,791 | 112,791 | 112,791 | 112,791 | 112,791 | 112,791 | 112,791 |
| COMMANDER | HR | 54.768 | 58.601 | 58.601 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 | 62.703 |
| 17018 | MO | 9,493 | 10,158 | 10,158 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 | 10,869 |
| P10 | YR | 113,917 | 121,891 | 121,891 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 | 130,423 |

NOTES: MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

| Police Cadet | | | | | | 15.385 | HOURLY | | 2,667 | MONTHLY | | 32,001 | YEARLY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## 40 Hour Week

| GRADE | | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYSTEP | | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | 110 | 120 | 130 |
| YEAR | | BASE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| OFFICER | HR | 25.180 | 28.256 | 31.187 | 31.187 | 31.187 | 31.187 | 33.369 | 33.369 | 33.369 | 33.369 | 35.705 | 35.705 | 35.705 |
| 17050 | MO | 4,364 | 4,898 | 5,406 | 5,406 | 5,406 | 5,406 | 5,784 | 5,784 | 5,784 | 5,784 | 6,189 | 6,189 | 6,189 |
| P02 | YR | 52,374 | 58,773 | 64,869 | 64,869 | 64,869 | 64,869 | 69,408 | 69,408 | 69,408 | 69,408 | 74,267 | 74,267 | 74,267 |
| | | | | | | | | | | | | | | |
| CORPORAL/DETECTIVE | HR | | | | | 33.993 | 33.993 | 36.373 | 36.373 | 36.373 | 36.373 | 38.919 | 38.919 | 38.919 |
| 17025 | MO | | | | | 5,892 | 5,892 | 6,305 | 6,305 | 6,305 | 6,305 | 6,746 | 6,746 | 6,746 |
| P07 | YR | | | | | 70,706 | 70,706 | 75,655 | 75,655 | 75,655 | 75,655 | 80,952 | 80,952 | 80,952 |
| | | | | | | | | | | | | | | |
| SERGEANT | HR | | | | | | | | 39.646 | 39.646 | 39.646 | 42.421 | 42.421 | 42.421 |
| 17070 | MO | | | | | | | | 6,872 | 6,872 | 6,872 | 7,353 | 7,353 | 7,353 |
| P08 | YR | | | | | | | | 82,463 | 82,463 | 82,463 | 88,236 | 88,236 | 88,236 |
| | | | | | | | | | | | | | | |
| LIEUTENANT | HR | | | | | | | | | | 45.593 | 48.784 | 48.784 | 48.784 |
| 17045 | MO | | | | | | | | | | 7,903 | 8,456 | 8,456 | 8,456 |
| P09 | YR | | | | | | | | | | 94,833 | 101,471 | 101,471 | 101,471 |
| | | | | | | | | | | | | | | |
| COMMANDER | HR | | | | | | | | | | | | 56.411 | 56.411 |
| 17018 | MO | | | | | | | | | | | | 9,778 | 9,778 |
| P10 | YR | | | | | | | | | | | | 117,335 | 117,335 |

**NOTES:** MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

**Police Cadet** — 15.385 HOURLY — 2,667 MONTHLY — 32,001 YEARLY

| GRADE | | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYSTEP | | 140 | 150 | 160 | 170 | 180 | 190 | 200 | 210 | 220 | 230 | 240 | 250 | 260 |
| YEAR | | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| OFFICER | HR | 35.705 | 38.204 | 38.204 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 | 40.880 |
| 17050 | MO | 6,189 | 6,622 | 6,622 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 | 7,086 |
| P02 | YR | 74,267 | 79,465 | 79,465 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 | 85,030 |
| | | | | | | | | | | | | | | |
| CORPORAL/DETECTIVE | HR | 38.919 | 41.643 | 41.643 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 | 44.559 |
| 17025 | MO | 6,746 | 7,218 | 7,218 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 | 7,724 |
| P07 | YR | 80,952 | 86,617 | 86,617 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 | 92,683 |
| | | | | | | | | | | | | | | |
| SERGEANT | HR | 42.421 | 45.390 | 45.390 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 | 48.568 |
| 17070 | MO | 7,353 | 7,868 | 7,868 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 | 8,418 |
| P08 | YR | 88,236 | 94,411 | 94,411 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 | 101,021 |
| | | | | | | | | | | | | | | |
| LIEUTENANT | HR | 48.784 | 52.199 | 52.199 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 | 55.853 |
| 17045 | MO | 8,456 | 9,048 | 9,048 | 9,170 | 9,681 | 9,681 | 9,681 | 9,681 | 9,681 | 9,681 | 9,681 | 9,681 | 9,681 |
| P09 | YR | 101,471 | 108,575 | 108,575 | 110,040 | 116,175 | 116,175 | 116,175 | 116,175 | 116,175 | 116,175 | 116,175 | 116,175 | 116,175 |
| | | | | | | | | | | | | | | |
| COMMANDER | HR | 56.411 | 60.359 | 60.359 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 | 64.584 |
| 17018 | MO | 9,778 | 10,462 | 10,462 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 | 11,195 |
| P10 | YR | 117,335 | 125,547 | 125,547 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 | 134,336 |

**NOTES:** MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

**Police Cadet** — 15.385 HOURLY — 2,667 MONTHLY — 32,001 YEARLY

Year 2: 3.0% effective first pay period FY 2009-10, provided that if other City employees receive less than 2.5% in a base wage increase, the amount of increase for under the M&C Agreement shall be reduced to 2.75%

## 40 Hour Week

| GRADE | | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYSTEP | | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | 110 | 120 | 130 |
| YEAR | | BASE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| OFFICER | HR | 25.935 | 29.104 | 32.122 | 32.122 | 32.122 | 32.122 | 34.370 | 34.370 | 34.370 | 34.370 | 36.777 | 36.777 | 36.777 |
| 17050 | MO | 4,495 | 5,045 | 5,568 | 5,568 | 5,568 | 5,568 | 5,957 | 5,957 | 5,957 | 5,957 | 6,375 | 6,375 | 6,375 |
| P02 | YR | 53,945 | 60,536 | 66,815 | 66,815 | 66,815 | 66,815 | 71,490 | 71,490 | 71,490 | 71,490 | 76,495 | 76,495 | 76,495 |
| CORPORAL/DETECTIVE | HR | | | | | 35.013 | 35.013 | 37.464 | 37.464 | 37.464 | 37.464 | 40.087 | 40.087 | 40.087 |
| 17025 | MO | | | | | 6,069 | 6,069 | 6,494 | 6,494 | 6,494 | 6,494 | 6,948 | 6,948 | 6,948 |
| P07 | YR | | | | | 72,827 | 72,827 | 77,925 | 77,925 | 77,925 | 77,925 | 83,380 | 83,380 | 83,380 |
| SERGEANT | HR | | | | | | | | 40.835 | 40.835 | 40.835 | 43.694 | 43.694 | 43.694 |
| 17070 | MO | | | | | | | | 7,078 | 7,078 | 7,078 | 7,574 | 7,574 | 7,574 |
| P08 | YR | | | | | | | | 84,937 | 84,937 | 84,937 | 90,883 | 90,883 | 90,883 |
| LIEUTENANT | HR | | | | | | | | | | 46.960 | 50.248 | 50.248 | 50.248 |
| 17045 | MO | | | | | | | | | | 8,140 | 8,710 | 8,710 | 8,710 |
| P09 | YR | | | | | | | | | | 97,678 | 104,515 | 104,515 | 104,515 |
| COMMANDER | HR | | | | | | | | | | | | | 58.103 | 58.103 |
| 17018 | MO | | | | | | | | | | | | | 10,071 | 10,071 |
| P10 | YR | | | | | | | | | | | | | 120,855 | 120,855 |

NOTES: MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

Police Cadet — 15.385 HOURLY — 2,667 MONTHLY — 32,001 YEARLY

| GRADE | | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYSTEP | | 140 | 150 | 160 | 170 | 180 | 190 | 200 | 210 | 220 | 230 | 240 | 250 | 260 |
| YEAR | | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| OFFICER | HR | 36.777 | 39.351 | 39.351 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 | 42.106 |
| 17050 | MO | 6,375 | 6,821 | 6,821 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 | 7,298 |
| 02 | YR | 76,495 | 81,849 | 81,849 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 | 87,581 |
| CORPORAL/DETECTIVE | HR | 40.087 | 42.892 | 42.892 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 | 45.896 |
| 17025 | MO | 6,948 | 7,435 | 7,435 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 |
| 07 | YR | 83,380 | 89,216 | 89,216 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 | 95,463 |
| SERGEANT | HR | 43.694 | 46.752 | 46.752 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 | 50.025 |
| 17070 | MO | 7,574 | 8,104 | 8,104 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 | 8,671 |
| 08 | YR | 90,883 | 97,243 | 97,243 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 | 104,051 |
| LIEUTENANT | HR | 50.248 | 53.765 | 53.765 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 | 57.529 |
| 17045 | MO | 8,710 | 9,319 | 9,319 | 9,170 | 9,972 | 9,972 | 9,972 | 9,972 | 9,972 | 9,972 | 9,972 | 9,972 | 9,972 |
| 09 | YR | 104,515 | 111,832 | 111,832 | 110,040 | 119,660 | 119,660 | 119,660 | 119,660 | 119,660 | 119,660 | 119,660 | 119,660 | 119,660 |
| COMMANDER | HR | 58.103 | 62.170 | 62.170 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 | 66.522 |
| 17018 | MO | 10,071 | 10,776 | 10,776 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 | 11,530 |
| 10 | YR | 120,855 | 129,314 | 129,314 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 | 138,366 |

NOTES: MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

Police Cadet — 15.385 HOURLY — 2,667 MONTHLY — 32,001 YEARLY

Year 3: 3.0% effective first pay period FY 2010-11

## 40 Hour Week

| | GRADE | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PAYSTEP | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | 110 | 120 | 130 |
| | YEAR | BASE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| OFFICER | HR | 26.713 | 29.977 | 33.086 | 33.086 | 33.086 | 33.086 | 35.401 | 35.401 | 35.401 | 35.401 | 37.880 | 37.880 | 37.880 |
| 17050 | MO | 4,630 | 5,196 | 5,735 | 5,735 | 5,735 | 5,735 | 6,136 | 6,136 | 6,136 | 6,136 | 6,566 | 6,566 | 6,566 |
| P02 | YR | 55,563 | 62,352 | 68,819 | 68,819 | 68,819 | 68,819 | 73,635 | 73,635 | 73,635 | 73,635 | 78,790 | 78,790 | 78,790 |
| | | | | | | | | | | | | | | |
| CORPORAL/DETECTIVE | HR | | | | | 36.063 | 36.063 | 38.588 | 38.588 | 38.588 | 38.588 | 41.289 | 41.289 | 41.289 |
| 17025 | MO | | | | | 6,251 | 6,251 | 6,689 | 6,689 | 6,689 | 6,689 | 7,157 | 7,157 | 7,157 |
| P07 | YR | | | | | 75,011 | 75,011 | 80,263 | 80,263 | 80,263 | 80,263 | 85,882 | 85,882 | 85,882 |
| | | | | | | | | | | | | | | |
| SERGEANT | HR | | | | | | | | 42.060 | 42.060 | 42.060 | 45.005 | 45.005 | 45.005 |
| 17070 | MO | | | | | | | | 7,290 | 7,290 | 7,290 | 7,801 | 7,801 | 7,801 |
| P08 | YR | | | | | | | | 87,485 | 87,485 | 87,485 | 93,609 | 93,609 | 93,609 |
| | | | | | | | | | | | | | | |
| LIEUTENANT | HR | | | | | | | | | | 48.369 | 51.755 | 51.755 | 51.755 |
| 17045 | MO | | | | | | | | | | 8,384 | 8,971 | 8,971 | 8,971 |
| P09 | YR | | | | | | | | | | 100,608 | 107,650 | 107,650 | 107,650 |
| | | | | | | | | | | | | | | |
| COMMANDER | HR | | | | | | | | | | | | 59.846 | 59.846 |
| 17018 | MO | | | | | | | | | | | | 10,373 | 10,373 |
| P10 | YR | | | | | | | | | | | | 124,480 | 124,480 |

**NOTES:** MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

| Police Cadet | | | | | | 15.385 | HOURLY | | 2,667 | MONTHLY | | 32,001 | YEARLY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | GRADE | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PAYSTEP | 140 | 150 | 160 | 170 | 180 | 190 | 200 | 210 | 220 | 230 | 240 | 250 | 260 |
| | YEAR | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| OFFICER | HR | 37.880 | 40.531 | 40.531 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 | 43.369 |
| 17050 | MO | 6,566 | 7,025 | 7,025 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 | 7,517 |
| P02 | YR | 78,790 | 84,305 | 84,305 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 | 90,208 |
| | | | | | | | | | | | | | | |
| CORPORAL/DETECTIVE | HR | 41.289 | 44.179 | 44.179 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 | 47.273 |
| 17025 | MO | 7,157 | 7,658 | 7,658 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 | 8,194 |
| P07 | YR | 85,882 | 91,892 | 91,892 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 | 98,327 |
| | | | | | | | | | | | | | | |
| SERGEANT | HR | 45.005 | 48.154 | 48.154 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 | 51.525 |
| 17070 | MO | 7,801 | 8,347 | 8,347 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 | 8,931 |
| P08 | YR | 93,609 | 100,161 | 100,161 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 | 107,173 |
| | | | | | | | | | | | | | | |
| LIEUTENANT | HR | 51.755 | 55.378 | 55.378 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 | 59.255 |
| 17045 | MO | 8,971 | 9,599 | 9,599 | 9,170 | 10,271 | 10,271 | 10,271 | 10,271 | 10,271 | 10,271 | 10,271 | 10,271 | 10,271 |
| P09 | YR | 107,650 | 115,187 | 115,187 | 110,040 | 123,250 | 123,250 | 123,250 | 123,250 | 123,250 | 123,250 | 123,250 | 123,250 | 123,250 |
| | | | | | | | | | | | | | | |
| COMMANDER | HR | 59.846 | 64.035 | 64.035 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 | 68.518 |
| 17018 | MO | 10,373 | 11,099 | 11,099 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 | 11,876 |
| P10 | YR | 124,480 | 133,193 | 133,193 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 | 142,517 |

**NOTES:** MONTH & ANNUAL PAY RATES ARE APPROXIMATIONS DUE TO STATISTICAL ROUNDING.

| Police Cadet | | | | | | 15.385 | HOURLY | | 2,667 | MONTHLY | | 32,001 | YEARLY | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Year 4: The City may elect to extend the Agreement for a 4th year, under the same terms and conditions, and if that option is excercised, the pay increase will be 3% effective the first pay period FY 2011-012.